**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
CAROLINE S. EMHARDT (SBN 321222)
*cemhardt@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

*Counsel for Plaintiff*

**COVINGTON & BURLING LLP**
Cortlin H. Lannin (Bar No. 266488)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 955-6558
Email: clannin@cov.com

*Attorneys for The Procter & Gamble Company*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARA AMADO, on behalf of herself, all others similarly situated, and the general public,<br><br>               Plaintiff,<br><br>      v.<br><br>THE PROCTER & GAMBLE CO.,<br><br>           Defendant. | Case No. 3:23-cv-06308-MMC<br><br>**JOINT 26(f) REPORT AND CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>[Fed. R. Civ. P. 26(f); N.D. Cal. Civ. L.R. 16-9]<br><br>Judge:  Hon. Maxine M. Chesney<br>Date:   March 15, 2024 at 10:30 a.m. (via Zoom) |

Plaintiff Tara Amado ("Plaintiff") and Defendant The Procter & Gamble Co. ("P&G") jointly submit the following Joint Case Management Conference Statement pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9.

**1.    Jurisdiction and Service**

Plaintiff filed this action on December 6, 2023, in the District Court for the Northern District of California (Dkt. No. 1, Compl.) and P&G waived service of the summons on January 2, 2024 (Dkt. No. 13). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (Compl. ¶ 5.) To the parties' knowledge, no issues exist regarding personal jurisdiction or venue. No parties remain to be served.

**2.    Facts**

***Plaintiff's Statement.***

As alleged in her Complaint, Plaintiff purchased the Products over the past several years in reliance on P&G's health and safety messaging, which Plaintiff alleges is false and misleading because the Products' undisclosed lead content means they are the types of products whose regular consumption is likely to increase risk of bodily harm and death. Plaintiff discovered P&G's misrepresentations and omissions when "[i]ndependent laboratory testing completed in July 2023 . . . demonstrate[d] that the Metamucil Products contain . . . more than the 0.5 μg MADL (*i.e.*, daily limit [for lead consumption]) under California's Proposition 65," Dkt. No. 1, Compl. ¶ 50 (chart showing the Metamucil Products contain up to 2,724% of the Proposition 65 daily limit for lead when consumed as directed).

The principal factual issues (including what might be considered "mixed" issues of fact and law) in dispute include:

a.    Whether the challenged labeling statements that the Products are the "#1 Doctor Recommended Brand," "Sealed For Your Protection" and "Better Choices for Life," among other representations (*see* Compl. ¶¶ 13, 18, 21), convey a message that the Products are healthy and safe for consumption;

b.    Whether regular consumption of the Products would be associated with increased risk of bodily harm and death;

c.    Whether the challenged labeling statements are material to a reasonable consumer;

d.  Whether the challenged labeling statements are likely to deceive the public under the reasonable consumer standard;

e.  Whether P&G knew, or should have known, that the Products were not healthy or safe for consumption due to their toxic lead content;

f.  Whether P&G knew that the Products are not healthy or safe for consumption due to their tox lead content;

g.  Whether the Products' contain toxic lead in an amount that requires their labeling bear the disclosure required by California's Proposition 65;

h.  Whether P&G was obligated to disclose any material information; and

i.  Whether P&G deceptively omitted any material information.

P&G states it will move to stay this case "until the unsettled status of *Pellegrino* is resolved." P&G omits, however, that it has requested that if the New York District Court does not transfer *Pellegrino* to this Court, the New York court should alternatively stay *Pellegrino* "pending Judge Chesney's adjudication of *P&G's forthcoming motion to dismiss* a closely related action there." *See Pellegrino v. The Procter & Gamble Co.*, No. 23-cv-10631-KMK, Dkt. No. 13, P&G's Preconference Letter Mot. at 1 (S.D.N.Y.) (emphasis added). P&G cannot have it both ways and should not be permitted to indefinitely delay both actions by pointing to the other. Regardless, for the reasons discussed more fully below, in Section I.10 (Related Cases), *Pellegrino* is not "related" to this action and is unlikely to be transferred here. The Court should, accordingly, decline to extend or stay P&G's deadline to respond to Plaintiff's Complaint.

**_P&G's Statement._**

This case represents plaintiff Tara Amado's second attempt to challenge the labeling and marketing of P&G's Metamucil fiber supplement. As is described in more detail in P&G's Notice of Pendency of Other Action or Proceeding (ECF No. 13) and forthcoming motion to stay this case, Ms. Amado and another individual named Regina Pellegrino filed a complaint against P&G in this forum last year alleging that the inclusion of added sugar in certain Metamucil products rendered the labeling of those products false and misleading. *See Amado v. The Procter & Gamble Co.*, No. 22-cv-05427-MMC (N.D. Cal.). On June 8, 2023, this Court granted P&G's motion to dismiss that complaint on preemption grounds. *See Amado v. The*

1  *Procter & Gamble Co.*, 2023 WL 3898984 (N.D. Cal. June 8, 2023) (Chesney, J.).  Ms. Amado and Ms.

2  Pellegrino thereafter voluntarily dismissed that complaint.

3      Six months later, Ms. Amado filed the instant complaint against P&G, in which she again alleges that

4  the labeling of Metamucil is misleading—this time because it allegedly contains unsafe levels of lead.  On

5  the same day Ms. Amado filed the instant complaint, Ms. Pellegrino also filed a complaint against P&G,

6  albeit in the Southern District of New York.  *See* ECF No. 18-1 (*Pellegrino* complaint).  Ms. Pellegrino's

7  complaint also alleges that the labeling of Metamucil is misleading, and asserts two theories of deception: (i)

8  the same added-sugar theory that this Court already rejected once as a matter of law; and (ii) the same lead-

9  related theory that Ms. Amado is asserting in the instant case.  That case has been assigned to Judge Kenneth

10  Karas.  Across all three cases, plaintiffs have been represented by the same counsel.

11      Given the obvious factual and legal overlap between this case and Ms. Pellegrino's complaint in

12  S.D.N.Y., as well as the prospect that Ms. Pellegrino is engaged in forum shopping, P&G has moved in the

13  Southern District of New York to transfer the *Pellegrino* action to this Court.  Briefing on that motion will

14  be complete by May 13, 2024, and Judge Karas has deferred P&G's deadline to respond to that complaint in

15  the interim.  If Judge Karas transfers *Pellegrino* to this Court, it will need to be consolidated and/or

16  coordinated with this action.[1]

17      In the meantime, plaintiff in this case served discovery on P&G at the first possible moment—within

18  hours of the Rule 26(f) conference—and P&G's motion to dismiss her complaint is currently due by April

19  4, 2024.  As such, P&G is moving for a brief stay of this case until the unsettled status of *Pellegrino* is

20  resolved and, if it is transferred to this Court, further consolidation and/or coordination with this action

21  (including as to motions practice and discovery) can be accomplished.

22

23

24  _____

25  [1] If Judge Karas declines to transfer *Pellegrino*, P&G will need to file two motions to dismiss in two cases.
In that scenario, as Plaintiff notes, P&G has suggested that Judge Karas stay *Pellegrino* while the parties

26  brief a motion to dismiss in this case.  That would ensure Judge Karas has the benefit of this Court's
reasoning on both the added-sugar claims and the lead-related claims that are presented in *Pellegrino* when

27  he eventually takes up P&G's motion to dismiss in that case.  That is not "hav[ing] it both ways," as
Plaintiff asserts; rather, P&G is attempting to prioritize judicial economy even if Judge Karas does not

28  transfer the case.

P&G's current deadlines to respond to plaintiff's complaint and discovery occur while briefing on P&G's motion to stay will still be underway.  P&G intends to seek the Court's guidance on how to reconcile those deadlines at the CMC.

**3.** **Legal Issues**

*Plaintiff's Statement.*

The principal legal issues in dispute include:

Whether this action may proceed as a class action;

    a.  Whether P&G's labeling practices violate California's consumer protection statutes;

    b.  Whether P&G's labeling practices violate federal or state labeling laws or regulations;

    c.  Whether P&G's labeling practices breach any implied warranties;

    d.  Whether P&G was unjustly enriched;

    e.  Whether P&G intentionally or negligently misrepresented the Products; and

    f.  The nature and extent of proper and appropriate legal and equitable relief.

*P&G's Statement.*

P&G maintains that this action is not suitable for class treatment and denies that plaintiff is entitled to any relief.

**4.** **Motions**

No motions have been filed to date. Plaintiff anticipates filing a motion for class certification and may file a motion for summary judgment or partial summary judgment. Plaintiff will oppose any motion to stay this case.

P&G is moving to stay this case until the status of the related *Pellegrino* matter is resolved.  P&G's motion to dismiss plaintiff's complaint is currently due by April 4, 2024, and P&G anticipates seeking the Court's guidance on that deadline at the CMC given its forthcoming motion to stay.  P&G will oppose any motion for class certification and, if necessary, anticipates moving for summary judgment.

**5.** **Amendment of Pleadings**

*Plaintiff's Statement.*

Discovery has just begun in this case and as such, it is possible that discovery will reveal additional

parties, claims, or bases for Plaintiff's current claims. Plaintiff requests a deadline for amendment be set for six months after the commencement of discovery (*i.e.*, August 23, 2024) to allow sufficient time to gather information necessary to finally determine whether the pleadings should be amended.

*P&G's Statement*.

P&G believes that it is premature to set a deadline for amendment of the pleadings in light of its forthcoming motion to stay this case and the need for further coordination and/or consolidation (including possible amendment of the pleadings) if *Pellegrino* is transferred to this forum.

**6.    Evidence Preservation**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have taken reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

**7.    Disclosures**

*Plaintiff's Statement.*

Plaintiff served her initial disclosures on February 23, 2024. P&G's objection to serving initial disclosures—raised for the first time in this joint statement—is improper. Rule 26(a)(1)(C), on which P&G relies, provides that "[a] party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference . . . unless a party objects *during the conference* that initial disclosures are not appropriate in this action *and* states the objection in the proposed discovery plan. Fed. R. Civ. P. 26(a)(1)(C) (emphases added). Because P&G did not state during the conference that initial disclosures are inappropriate in this case, the Court should overrule its objection. Further, even in the unlikely event *Pellegrino* is transferred to this Court, P&G would only need to make the same initial disclosures at that time that it seeks to avoid making now, since the addition of Ms. Pellegrino's claims would not obviate the need for disclosures relating to Ms. Amado's claims.

*P&G's Statement*

During the parties' Rule 26(f) conference, P&G informed Plaintiff that it objects to proceeding with discovery in this case, which necessarily includes initial disclosures, given the unsettled status of *Pellegrino* and the fact it would eventually move to dismiss the entire case. In all events, pursuant to Rule 26(a)(1)(C)

and in light of its pending motion to stay this case, P&G objects to serving initial disclosures.  P&G intends to seek the Court's guidance at the CMC on if and when it must serve initial disclosures while its motion to stay is pending.

**8.    Discovery**

    a.    *Discovery Taken to Date.* Plaintiff served a first set of interrogatories and document requests on P&G on February 23, 2024. The limited requests, consisting of four interrogatories and seven requests for production, seek identification of persons and entities with information relevant to Plaintiff's claims, such as any laboratories that have tested the Metamucil products at issue (the "Products," *see* Compl. ¶ 11 n.1).

P&G has not served any discovery to date and maintains that discovery should not proceed until the status of *Pellegrino* is resolved and this Court rules on P&G's forthcoming motion to dismiss this case, which will be dispositive of the entire complaint.

    b.    *Scope of Additional Anticipated Discovery.* Plaintiff anticipates serving additional written discovery and deposing at least P&G's witness(es) designated pursuant to Fed. R. Civ. P. 30(b)(6), any trial or expert witness P&G discloses, as well as individuals primarily responsible for relevant aspects of P&G's business, such as labeling, marketing, product development, ingredient acquisition and supply, nutrition science, and pricing.

As noted, P&G believes that discovery should not proceed now.  If discovery proceeds, P&G intends to seek discovery of plaintiff on various issues, including at a minimum her purported purchase, use, and testing of Metamucil.

    c.    *Proposed Discovery Limitations.* The parties currently believe there is no need to depart from the limitations on discovery imposed under the Federal Rules of Civil Procedure and Northern District of California Local Civil Rules of Civil Procedure.

    d.    *Stipulated E-Discovery Order.* The parties anticipate filing an ESI stipulation based on the Northern District of California's model Stipulation Regarding the Electronic Storage of Information, and proposed order.

e.  *Proposed Discovery Plan (Fed. R. Civ. P. 26(f))*.

    i.  <u>Changes that should be made in the timing, form, or requirement for disclosures under Rule 26(a), and a statement of when initial disclosures were made or will be made</u>. Plaintiff served her initial disclosures on February 23, 2024. Additionally, Plaintiff maintains that P&G's objection to serving initial disclosures is improper and should be overruled. As noted above, P&G objects to serving initial disclosures in light of its pending motion to stay this case.  P&G intends to seek the Court's guidance at the CMC on if and when it must serve initial disclosures while its motion to stay is pending.

    ii.  <u>Subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues</u>.

        ***Plaintiff's Statement.***

        Plaintiff anticipates discovery may be needed on the following topics relating to the Products: formulation; ingredient sourcing and acquisition; quality assurance; marketing, including packaging, labeling, and advertising; promotion, distribution, sales, and pricing; consumer research; competitive considerations; and legal and regulatory compliance. Plaintiff anticipates discovery may also be needed regarding consumer attitudes and behaviors regarding lead generally, fiber supplements, and the Products; P&G's general advertising policies and practices since beginning to market the Products with the challenged claims; and P&G's efforts at effecting dietary supplement policy, including through communications with the FDA or other governmental bodies, and interactions with industry groups like the Dietary Supplement Trade Associations. Plaintiff further anticipates discovery will be needed regarding scientific studies relating to the consumption of lead, lead-containing foods and supplements, and the Products; P&G's participation in, sponsorship of, or other involvement in any

such studies; and P&G's knowledge of such science. Finally, Plaintiff may seek discovery regarding P&G's document and record creation, maintenance, retrieval, and retention policies and practices.

Plaintiff believes a reasonable discovery schedule would allow discovery until approximately six (6) months after a decision on Plaintiff's class certification motion, with the parties permitted to take discovery for at least twelve (12) months before the class certification motion is due (provided, however, that Plaintiff intends to file her certification motion as early as possible, once she is satisfied that she can demonstrate all requirements are met). Plaintiff believes fact discovery following a decision on class certification is warranted because while a class certification motion may entail some consideration of the merits, such consideration is cabined to considerations necessary to class certification and is necessarily narrower than a full consideration of the merits. A ruling on class certification may also establish subclasses or other relevant distinctions that may require further fact discovery.

**P&G's Statement**.

If this case proceeds, P&G intends to take discovery regarding, at a minimum, plaintiff's purchase, use, and testing of the Metamucil products.

While P&G will work in good faith with plaintiff on discovery if this case proceeds, it observes that the sweeping list of topics on which plaintiff intends to take discovery appears to implicate issues that are irrelevant to any party's claims or defenses and disproportionate to the needs of the case.

P&G believes 12 months is likely longer than is necessary to complete discovery in a case like this, and suggests nine months may be more appropriate. In all events, however, P&G strongly believes that the parties should complete fact discovery before plaintiff files her motion for class certification. This ensures that the parties have an incentive to efficiently develop the discovery they need to

prosecute or defend this case before heading into the class certification and summary judgment stages of the case.  Holding discovery open during and after class certification, as plaintiff proposes, risks needlessly prolonging this case.  Furthermore, P&G already necessarily bears the disproportionate burden and expense of discovery in this case.  Holding discovery open for months in case plaintiff belatedly determines that she needs additional discovery after class certification will only exacerbate those burdens and costs.

iii.    <u>Any issues about disclosure, discovery, or preservation of electronically stored information (ESI), including the form or forms in which it should be produced.</u> The parties are not currently aware of any issues concerning the retrieval, disclosure, or discovery of ESI.

iv.    <u>Any issues about claims of privilege or protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Fed. R. Evid. 502.</u> The parties are not currently aware of any issues about claims of privilege or protection as trial-preparation materials. The parties have not filed a stipulated Protective Order. The parties intend to enter into a protective order modeled after the Northern District's court-approved model form. Because the parties anticipate the Protective Order will include a provision governing the inadvertent production of privileged or otherwise protected material, an order under Fed. R. Evid. 502 likely will not be needed.

v.    <u>Changes that should be made in the limitations on discovery imposed under the Federal or Local Rules, and other limitations that should be imposed.</u> Currently, the parties see no need to depart from the limitations on discovery imposed under the Federal or Local Rules.

vi.    <u>Any other orders the Court should issue under Rule 26(c) or 16(b) and (c).</u> The parties are not currently aware of any other orders the Court should issue now.

1
2
3

       f.   *Current Discovery Disputes.* The parties dispute whether discovery should proceed. Additionally, P&G has objected to serving its initial disclosures in light of its pending motion to stay this case. Plaintiff maintains P&G's objection is improper and should be overruled.

4   **9.**   **Class Actions**

5       ***Plaintiff's Statement.***

6
7
8
9
10
11

      This case is pled as a class action. Given the increasing extent to which merits issues inform class certification, Plaintiff proposes that the parties take fact and expert discovery for at least twelve (12) months before Plaintiff's deadline to file a class certification motion. Presently, Plaintiff intends to seek certification under Rule 23(b)(3) but may elect to proceed also or alternatively under Rule 23(b)(2) or 23(c)(4). Plaintiff believes fact discovery should continue for several months, ideally six (6) months, following a decision on Plaintiff's motion for class certification.

12       ***P&G's Statement***.

13
14
15

      P&G maintains that this case is not suitable for class treatment and is confident plaintiff will not be able to satisfy the requirements for class certification under any clause of Rule 23.  As noted above, P&G opposes keeping fact discovery open during and after this Court's consideration of class certification.

16   **10.**   **Related Cases**

17       ***Plaintiff's Statement.***

18
19
20
21
22
23
24
25
26
27

      On February 15, 2024, P&G filed a Notice of Pendency of Other Action or Proceeding, Dkt. No. 18 ("Not."), asserting that *Pellegrino v. The Procter & Gamble Co.*, No. 23-cv-10631-KMK (S.D.N.Y.) (Karas, J.) ("*Pellegrino*") "involves 'a material part of the same subject matter' and 'substantially all of the same parties' as" this action. *See* Not. at 1. Plaintiff disagrees that *Pellegrino* is related. *Pellegrino* involves New York purchases by a New York consumer who is bringing claims only under New York's Gen. Bus. L. §§ 349-50, on behalf of a New York class, alleging P&G's marketing of Metamucil is false and misleading due to both its lead and added sugar content. At issue here, in contrast, are California purchases by a California consumer who is bringing claims under California law (including California's unique Proposition 65) on behalf of a California class, alleging P&G's marketing of Metamucil is false and misleading due only to its lead content. Further, Ms. Pellegrino challenges additional labeling claims not at issue here.

28

1

***P&G's Statement***

2      As is discussed above and in P&G's Notice of Pendency of Other Action or Proceeding (ECF No.

3  13), the *Pellegrino* matter now pending in the Southern District of New York involves "a material part of the

4  same subject matter" as this case—the allegation that Metamucil is deceptively labeled because it contains

5  lead.   Plaintiff's attempts to draw distinctions between the two cases are baseless.   For example, the

6  underlying lead-related factual allegations are identical as between the two cases, and while Ms. Amado

7  asserts California law in this case and Ms. Pellegrino asserts New York law in hers, both laws implicate the

8  same reasonable consumer standard and "contain the same three elements" of a "deceptive act, materiality,

9  and injury."  *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 427 (E.D.N.Y. 2022).  And while it is true

10  that Ms. Pellegrino is also asserting "added sugar" claims, plaintiff fails to mention that those are the *exact*

11  *same claims* this Court already dismissed.  As discussed above, P&G is seeking to transfer *Pellegrino* to this

12  Court so that it may be adjudicated in tandem with this case.

13  **11.    Relief**

14        a.   *Plaintiff's Position:* The Complaint seeks the following relief:

15              i.    An Order declaring this action to be a proper class action, appointing Plaintiff as Class

16                    Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

17              ii.   An Order requiring P&G to bear the cost of Class notice;

18              iii.  An  Order  compelling  P&G  to  destroy  all  misleading  and  deceptive  advertising

19                    materials and product labels, and to recall all offending products;

20              iv.   An Order requiring P&G to disgorge all monies, revenues, and profits obtained by

21                    means of any wrongful act or practice;

22              v.    An Order requiring P&G to pay restitution to restore all funds acquired by means of

23                    any act or practice declared by this Court to be an unlawful, unfair, or fraudulent

24                    business act or practice, or untrue or misleading advertising, plus pre-and post-

25                    judgment interest thereon;

26              vi.   An Order requiring P&G to pay compensatory, statutory, and punitive damages as

27                    permitted by law;

28

vii.    An Order assessing civil penalties pursuant to Cal. Health & Safety Code § 25249.7(b), against P&G for each violation alleged herein;

viii.    An Order, pursuant to Cal. Health & Safety Code § 25249.7(b), enjoining P&G from distributing or selling the Products in California without first providing a clear and reasonable warning that users of the Metamucil Products are exposed to the lead therein;

ix.    An award of attorneys' fees and costs; and

x.    Any other and further relief that Court deems necessary, just, or proper. Compl. ¶ 173.

Plaintiff currently believes that, if liability is established, restitution and damages should be calculated as the price premium attributable to P&G's misrepresentations and deceptive omissions. Additionally, if Plaintiff establishes P&G's violation of California's Proposition 65, civil penalties should be assessed. Documents and information that may be useful to calculate the amount more precisely are in P&G's possession, custody, and control, and in the possession, custody, and control of third parties, such as retailers. This includes, *inter alia*, unit and dollar wholesale and retail sales during the Class Period concerning both P&G's Products and competing products, related financial information including P&G's profits, information about P&G's competitors, and market research.

Other information required to calculate the amount of damages or restitution more precisely may need to be developed through survey evidence and expert testimony, which itself may require discovery from P&G. For example, designing an appropriate consumer survey may require obtaining information from P&G's own market research and other information P&G provides in written and testimonial discovery.

### P&G's Statement

P&G denies that plaintiff is entitled to any relief in any form.

## 12.    Settlement and ADR

Plaintiff is willing to discuss settlement at any stage of this case and believes private mediation most appropriate.

P&G indicated its preference to discuss ADR selection during the case management conference. *See* Dkt. Nos. 19-20.

**13.    Consent to Magistrate Judge for All Purposes**

Plaintiff declined Magistrate Judge Jurisdiction, Dkt. No. 6, and the case was reassigned to Hon. Maxine M. Chesney, Dkt. No. 11.

**14.    Other References**

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.    Narrowing of Issues**

The parties are not otherwise aware of any other issues that can be narrowed by agreement. The parties currently have no suggestions to expedite presentation of evidence at trial.

**16.    Expedited Trial Procedure**

The parties do not believe this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64, Attachment A.

**17.    Scheduling**

*Plaintiff's Statement*.

Plaintiff proposes the Court set a schedule through class certification briefing but address the remaining deadlines at a subsequent case management conference, following the Court's order on Plaintiff's anticipated motion for class certification.

| Event | Proposed Date |
|---|---|
| Deadline to File Motion to Amend Pleadings | August 23, 2024 (6 months after commencement of discovery) |
| Deadline to file Class Certification Motion, including expert declarations supporting motion | February 28, 2025 |
| Deadline for P&G to file Opposition to Class Certification Motion, including expert declarations supporting opposition | May 23, 2025 |
| Deadline for Plaintiff to file Reply in Support of Class Certification Motion, including rebuttal expert declarations | July 18, 2025 |
| Hearing on Plaintiff's | August 15, 2025 |

Plaintiff believes the fact and expert discovery cut-off, as well as merits expert report deadlines under Rule 26, should all be set after the Court's order on class certification. Accordingly, Plaintiff proposes that those and any other remaining deadlines, such as pre-trial and trial dates, be set at a later case management conference, after the Court has ruled on class certification.

**P&G's Statement**

P&G believes that it is premature to propose or set a case schedule given the unsettled status of *Pellegrino* and whether it will be transferred and consolidated with this case, as well as the pendency of P&G's related motion to stay this case until that issue is resolved. However, if the Court prefers to enter a schedule now, P&G respectfully requests the opportunity to confer further with plaintiff about an appropriate schedule. As noted above, P&G opposes keeping discovery open during and after class certification.

**18.    Trial**

Plaintiff states that legal claims under California's CLRA, and for breach of warranty will be tried to the jury, while equitable claims under California's Proposition 65, UCL, FAL, and CLRA and for unjust enrichment, and negligent and intentional misrepresentation, will be tried to the Court. Plaintiff currently expects the trial to last ten (10) court days.

P&G does not expect plaintiff's claims to survive to trial but will be better positioned to estimate a potential trial length after the case proceeds further.

**19.    Disclosure of Non-party Interested Entities or Persons**

On December 6, 2023, Plaintiff filed the Certificate of Interested Entities or Persons required by Civil Local Rule 3-15. Dkt. No. 4. Pursuant to Civil Local Rule 3-15, Plaintiff restates that, as of this date, other than the named parties, Plaintiff is aware of no entity or person with an interest to report.

On February 15, 2024, P&G filed the Certificate of Interested Entities or Persons required by Civil Local Rule 3-15. Dkt. No. 17

**20.    Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.**     <u>Other Matters as May Facilitate the Just, Speedy, and Inexpensive Disposition of the Matter</u>

The parties have entered into a stipulation permitting electronic service of documents not filed through the Court's CM/ECF system.

**II.**     **PLAINTIFF'S CASE MANAGEMENT STATEMENT IN CLASS ACTION [L.R. 16-9(b)]**

Pursuant to Local Civil Rule 16-9(b), Plaintiff provides the following additional information.

P&G notes that it does not read Local Rule 16-9(b) as requiring its response to these items, but as set forth above denies that this action is suitable for class treatment.

**1.**     <u>The Specific Paragraphs of Fed. R. Civ. P. 23 Under Which the Action is Maintainable as a Class Action</u>

Plaintiff believes this action is maintainable as a class action pursuant to Fed. R. Civ. P. 23(a)(1)-(4), and pursuant to paragraphs 23(b)(2) and 23(b)(3). Plaintiff alternatively believes the action may be maintainable as a class action with respect to particular issues, pursuant to Rule 23(c)(4).

**2.**     <u>A Description of the Class or Classes on Whose Behalf the Action is Brought</u>

Plaintiff seeks to represent a class of all persons in California who, at any time from December 6, 2019, to the time a class is notified (the "Class Period"), purchased, for personal or household use, and not for resale or distribution, any of the Metamucil Products. Depending on the results of further discovery and expert analysis, Plaintiff may seek to divide the class into product-based, time-period-based, or other subclasses, and may further narrow or expand the class definition.

**3.**     <u>Facts Showing that the Party is Entitled to Maintain the Action Under Fed. R. Civ. P. 23(a) and (b)</u>

Although certain facts demonstrating that Plaintiff is entitled to maintain the action under Fed. R. Civ. P. 23(a) and (b) remain to be discovered, Plaintiff provides below an initial summary of the facts already known, or which she expects to discover, that show she is entitled to maintain the action as a class action under Rules 23(a) and (b).

**1.**     <u>Rule 23(a)(1) – Numerosity</u>

Plaintiffs will be able to prove numerosity as the Products are sold statewide by dozens of retailers such that at least tens of thousands of consumers have purchased the Products.

### 2. Rule 23(a)(2) & (3) – Commonality & Typicality

The commonality and typicality requirements are permissive and tend to merge. The facts will demonstrate that all class (or subclass) members purchasing each Product were exposed to the same misrepresentations, omissions, and unlawful labeling claims, that the Products' formulations were substantially similar for each class (or subclass) member, and that all class members were injured in a similar manner.

### 3. Rule 23(a)(4) – Adequacy

The facts will show that Plaintiff is an adequate class representative because she relied on the challenged claims, has no conflicts with the class, and will prosecute the action vigorously in the best interests of the class.

The facts will show that Plaintiff's counsel are adequate class counsel because they are experienced in consumer protection litigation, especially in the area of the deceptive marketing of consumable goods as healthy, and because counsel have no conflicts with the class and have and will continue to prosecute the action vigorously in the best interests of the class, including by dedicating substantial time and resources identifying and investigating the claims, and representing the class.

### 4. Rule 23(b)(3) – Predominance

Facts supporting predominance include that the Products' labels contained misrepresentations and omissions that were uniform as to the class, and that the damages sought are tied to the class's theory of liability and measurable on a class-wide basis.

### 4. A Proposed Date for the Court to Consider Whether the Case can be Maintained as a Class Action

The parties proposed a schedule through class certification, set forth above. Plaintiff proposes that the Court consider certification 180 days after the motion is filed, giving the Court thirty (30) days to review the motion once fully briefed, or at such other time as the Court orders.

Dated: March 8, 2024                    Respectfully submitted,

/s/ Melanie R. Monroe

**FITZGERALD MONROE FLYNN PC**

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
CAROLINE S. EMHARDT
*cemhardt@fmfpc.com*
2341 Jefferson St., Suite 200
San Diego, California 92110
Phone: (619) 215-1741

**Counsel for Plaintiff**

/s/ Cortlin H. Lannin

**COVINGTON & BURLING LLP**

Cortlin H. Lannin

Salesforce Tower

415 Mission Street, Suite 5400

San Francisco, CA 94105

Tel.: (415) 591-6000

Email: clannin@cov.com

**Attorneys for Defendant The Procter & Gamble Co.**

1

## **SIGNATURE ATTESTATION**

2      I hereby attest that, pursuant to N.D. Cal. Civ. L.R. 5-1(i)(3), the concurrence to the filing of this

3 document has been obtained from each signatory hereto.

4

5 Dated: March 8, 2024                                    /s/ Melanie R. Monroe
6                                                         Melanie R. Monroe

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28