1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3     Before The Honorable Maxine M. Chesney, District Judge

4

5  TARA AMADO,                    )
                                  )
6           Plaintiff,            )
                                  )
7  vs.                           )    No. C 23-06308-MMC
                                  )
8  THE PROCTER & GAMBLE CO.,      )
                                  )
9           Defendant.            )
   _____)

10

11                              San Francisco, California
                                Friday, March 15, 2024
12

13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                RECORDING 2:40 - 3:31 = 51 MINUTES
14

   APPEARANCES:
15

   For Plaintiff:
16
                                Fitzgerald Monroe Flynn, PC
17                              2341 Jefferson Street
                                Suite 200
                                San Diego, California 92110
18                      BY:     MELANIE RAE MONROE, ESQ.

19  For Defendant:
                                Covington & Burling, LLP
20                              Salesforce Tower
                                415 Mission Street
21                              Suite 5400
                                San Francisco, California
22                                 94105
                        BY:     CORTLIN HALL LANNIN, ESQ.
23
   Transcribed by:             Echo Reporting, Inc.
24                              Contracted Court Reporter/
                                Transcriber
25                              echoreporting@yahoo.com

2

1 <u>Friday, March 15, 2024</u>                                    <u>2:40 p.m.</u>

2                        P-R-O-C-E-E-D-I-N-G-S

3                             --oOo--

4          THE CLERK:  Calling Civil Case Number 23-6308,

5  Tara Amado versus the Procter and Gamble Company.

6      Will counsel please state your appearances, starting

7  with Plaintiff's counsel.

8          MS. MONROE (via Zoom):  Good afternoon, your

9  Honor.  Melanie Monroe for the Plaintiff.

10          THE COURT:  Good afternoon.  Thank you.

11          MR. LANNIN (via Zoom):  Good afternoon, your

12  Honor.  Cortlin Lannin of Covington and Burling, for the

13  Defendant Procter and Gamble.

14          THE COURT:  Yeah.  I'm sorry for the delay, and

15  thank you for changing the time today.  A medical emergency

16  came up.

17      I did want to mention that whoever took the laboring

18  oar to file this statement, the statement is fine, but we

19  didn't get a chambers copy of it.  So, while you're in this

20  particular court mind, I still per my standing orders, do

21  want chambers copies of everything.  Some of the judges

22  don't.  The Local Rules don't have it as a default anymore,

23  but do say check out the standing orders.

24      So, okay.  Then I have the Plaintiff's statement about

25  Metamucil and lead, and then apparently there's a case in

3

1  New York that's got sugar and Metamucil and Metamucil and

2  lead.  I think at some point, the Plaintiff may have said

3  it.  There were some other grounds.

4      Were there any other grounds besides those two for the

5  New York case, Ms. Monroe?

6          MS. MONROE:  No.  It's just the -- the lead and

7  the sugar.

8          THE COURT:  All right.  So, when you were saying

9  there's another theory, that was the sugar one because both

10  have lead?

11          MS. MONROE:  Yes.

12          THE COURT:  Okay.  So, let me just ask a couple of

13  questions about this New York proceeding.  I haven't, of

14  course, had the chance to fully see everybody's positions on

15  the stay idea.  A lot may depend on when you think Judge

16  Karas would rule in New York.  So, I do want to talk to you

17  about that a little bit, and also I think that it's

18  currently set for a hearing on a date that's beyond the

19  deadline to respond to the complaint.  So, if I don't rule

20  on it before the hearing, you're -- you're kind of left in a

21  Catch 22.

22      So, let's take a look.  According to the Defendant, the

23  "briefing" on the motion will be complete by May 13 to 24.

24  Now, I don't really know what they do back there in terms of

25  do you have an -- you don't automatically notice it for a

4

1  hearing date, you have to ask for one or what happens?

2         MS. MONROE:  The Judge -- in his scheduling order,

3  the Judge directed the parties that once briefing is

4  complete, we should wait to hear from the Court for a --

5  regarding oral argument.

6         THE COURT:  Have either of you appeared before

7  this Judge before?

8         MS. MONROE:  I have not, your Honor.

9         MR. LANNIN:  I have not, your Honor.

10         THE COURT:  I was going to ask whether you had any

11  experience with what he might do, you know, in these

12  circumstances.  Does he usually set a hearing?  Does he

13  usually not?  How long does he take to figure out whether he

14  wants one or not.  You know, the practice for me -- and some

15  judges here may handle it differently, of course, but I let

16  the parties pick a date, and then if I don't need it, I let

17  them know you don't have to come in.  I'm going to decide it

18  on the papers or if for some reason the date doesn't work,

19  we move it.  But usually it's the date that the motion's

20  noticed for.

21      So, does anyone have any idea if you've appeared back

22  there, maybe if not in front of this judge, how long it

23  usually takes to get something resolved?

24         MS. MONROE:  I -- I don't have personal

25  experience, but I did look at some in the process of

5

1 reviewing the motion to stay in this case.  I have been

2 looking at some analytics on Judge Karas, and it does look

3 like he takes -- let's see.  It says 50 percent of the cases

4 in which people move to transfer, he takes 181 days or more

5 to issue a resolution.  So, in half the cases it takes about

6 six months or more.  And then in the other half, the

7 statistics were around -- the median was 133 days to issue a

8 decision.  That's about four and a half months.

9             THE COURT:  Okay.

10            MS. MONROE:  I will mention during the

11 teleconference with Judge Karas, he mentioned his -- his

12 docket load.  He says he has over 500 cases.

13            THE COURT:  Oh.  That's a lot.

14            MS. MONROE:  Encouraged the parties to take

15 additional time in briefing.

16            THE COURT:  Okay.  So, kind of like he isn't going

17 to get to it right away.  So, you may as well put your best

18 foot forward with it and not rush the briefing.

19      As far as these motions to transfer, the traditional

20 motion to transfer is really one of two things.  Either

21 there's no venue wherever somebody picked or there is a more

22 convenient venue, although the one chosen is legally okay.

23 As a practical matter, it doesn't really work too well, a

24 transfer for convenience, in other words.  I don't

25 understand this motion is actually predicated on that theory

6

1 but, rather, just let's save a lot of time and get one judge

2 to have all the cases that kind of alike, sort of like a

3 mini MDL.

4          MR. LANNIN:  Yeah.  Your Honor, perhaps I could

5 address that since it -- it was --

6          THE COURT:  Sure.

7          MR. LANNIN:  -- P and G's motion to transfer.  And

8 I'll note on the timing point, you know, as -- as my

9 colleague notes, Judge Karas is well aware that there is a

10 related action pending in Europe forum, your Honor.  And,

11 so, I -- I would think they'd be surprised if he took six

12 months to decide this -- this rather straightforward motion.

13 But, again, I can't predict either way.  But I -- I will

14 note, your Honor, the Eastern -- the law in the Second

15 Circuit looks to seven or eight different factors that are

16 relevant to a transfer motion in this -- in this context,

17 and I think P and G's motion leans into the notion that the

18 -- the -- what appears to be forum shopping in this case,

19 the attempt to bring sugar claims that your Honor already

20 dismissed under New York law in a New York court is a factor

21 that can strongly way in favor of forum.  And, according --

22 on the flip side, in that setting, the -- the Plaintiff's

23 choice of forum is given less deference than it otherwise

24 might because it's motivated by strategic reasons.

25      And then the other -- the other major bucket of issues,

7

1  your Honor, are convenience factors and judicial economy.

2  And, to that point, as you've seen in our statement, it's P

3  and G's views that adjudicating two essentially identical

4  cases, one -- one set of claims that you've heard before and

5  -- and one set of claims that you have now, you know, we

6  should -- we should do those in one place with one court,

7  and it's our view that should be your Honor.

8        THE COURT:  Well, that's a little bit different

9  than a traditional convenience motion which usually is based

10  on all our witnesses or somewhere else, okay, or all of your

11  witnesses or somewhere else.  Everybody's witnesses are

12  somewhere else.  So, we're not just dividing up the

13  witnesses and we ought to go to this more convenient place.

14  Evidence in this day and age is less significant because so

15  much is, you know, online.  And, generally, when one looks

16  at those, of the -- what I'll just call a traditional

17  convenience motion, you're looking at the nonparty

18  witnesses.  So, who doesn't have a dog in the fight that's

19  getting dragged halfway across the country or not.  That

20  doesn't seem to be the factor here.  I don't know where

21  these witnesses might testify.  I'm assuming they're going

22  to be experts of some sort.  They're talking about lead.

23  They could be anywhere and show up anywhere.

24        MR. LANNIN:  I think that's right, your Honor.  I

25  think the -- if I had to guess, I think the witnesses here

8

1  will be mostly P and G employees who are mostly in Ohio and,

2  as between New York and -- and your court in San Francisco,

3  I think they're perfectly happy to go to San Francisco.

4  You're -- you're absolutely correct there will be experts,

5  and I -- I have no guess at this point where they'll be,

6  but, you know --

7          THE COURT:  It isn't like --

8          MR. LANNIN:  -- they'll be paid well to go

9  wherever they're told to.

10         THE COURT:  Exactly.

11         MR. LANNIN:  And then as to nonparties, again, I

12  -- I don't suspect there will be any distinction between the

13  New York court and -- and your Honor's court in San

14  Francisco.

15         THE COURT:  It probably won't be much.  So, I

16  think it's more a question if Judge Karas says, Oh, half

17  this has already been heard already, and, you know, I may as

18  well just send it out there.  If he felt that way, fine.  OR

19  if he says, Oh, wait a minute, you know, I should hear this

20  case and whatever, then you're going to be in New York.  So,

21  a little bit just what his personal feeling is about the

22  case.

23     The idea of if he does not transfer, then -- and then

24  Ms. Monroe brought this up.  So, okay, if he doesn't

25  transfer, you want him to stay that case pending this case,

9

1  but you want this case to then stay pending that case, and
2  nobody will get anywhere. But I guess there's a sequence to
3  this in a way. In other words, stay this until he makes up
4  his mind, and then once he does, then at that point, I think
5  if he doesn't transfer it or if he does, either way, we're
6  going to go forward, you know, with our case and move it.
7      The Plaintiff may be concerned that this is just too
8  much up in the air. I could consider a stay that is not
9  dependent on an event in the first instance but, rather, on
10 a time frame that might seem fair, and then at that point,
11 the parties can advise me as to what's going on, have you
12 heard anything from him, is it, you know, just a big Bermuda
13 Triangle you're in, what's going on, and try and make some
14 decision as to whether it should be held up.
15     Is anyone being prejudiced by the delay? We're not
16 going to probably lose witnesses or things of that nature.
17 So, I think maybe a short one because if we can at least get
18 everybody together, we may as well get everybody together.
19 That won't necessarily come to me you understand. If he
20 transfers it, it's just coming out to California -- well,
21 San Francisco, our District, and then I guess if it landed
22 in one of the many other, you know, judge's calendars, you
23 would have to make a motion under our Local Rules, a related
24 case motion, and they do seem significantly to overlap.
25 Related cases, you can be through with the case and still

1 have a related case.  It doesn't have to be active in other

2 words.

3      So, well, but I'm not going to rule unless everybody

4 wants me to, but right now I -- if you want me to say

5 briefing on it, I can give you an idea of at least a

6 possible pragmatic solution or I can just wait until the

7 whole thing gets briefed and try and give you an order

8 before you have to fish or cut bait on the response.

9           MS. MONROE:  The Plaintiff's position would be we

10 would prefer to be full -- be able to fully brief the --

11           THE COURT:  That's fine.  That's fine.  I'll do

12 that.

13           MR. LANNIN:  Your Honor --

14           THE COURT:  You were going to say, Mr. Lannin?

15           MR. LANNIN:  Yeah.  I apologize, your Honor.  I

16 think the issue is that we do run into the fish or cut bait

17 problem because we've -- we've noticed the  motion for soon

18 as we could in light of your Honor's unavailability for the

19 first available date.  But, as a result, the hearing --

20 noticed hearing on this motion wouldn't be until April 19th.

21 And our deadline both to answer discovery in this case and

22 to move to dismiss the complaint both elapse before you'd

23 even have a hearing on the motion to stay, which we filed,

24 of course, for belt and suspenders because that's the relief

25 we're seeking.

11

1     So, my only concern is that waiting for your Honor to
2  take up the motion to stay at the hearing or thereafter --
3          THE COURT:  Well, let's --
4          MR. LANNIN:  -- the ship has sailed at that point.
5          THE COURT:  All right.  Let's look at it from an
6  equitable standpoint for a second.  When was the motion to
7  stay filed again?  I thought -- I took a look at it, but I
8  don't know that I have a chambers copy on that yet.  I'm so
9  -- again, chambers copy, Mr. Lannin.
10         MR. LANNIN:  You -- if you do not, your Honor,
11 please let me know, because I talked to my --
12         THE COURT:  I'm --
13         MR. LANNIN:  -- paralegal about that point.
14         THE COURT:  I don't believe we have one yet.  I'm
15 letting you know now.
16         MR. LANNIN:  Okay.  I appreciate that.
17         THE COURT:  Okay.  All right.  So, you need to get
18 that to me.  Now, what date was it noticed -- I'm sorry.
19 What was the date it was filed on?
20         MR. LANNIN:  It was filed a week ago today, your
21 Honor, so March 8th.
22         THE COURT:  All right.  So, let's go back for a
23 second, a week ago today.  So, we're at the 15th.  So, you
24 filed on the 8th, is that right?
25         MR. LANNIN:  That's correct, your Honor.

12

1          THE COURT:  Okay.  And, ordinarily, if you had

2  used a 35-day briefing schedule, in other words, you were

3  trying to move it along, as you say -- okay.  Just a second.

4  One, two, three, four, five -- ordinarily -- no.  If you did

5  it on 35 days, your day for a hearing -- oh, no.  The 5th is

6  the 12th I guess.

7       Is that right, Ms. Geiger, on 35 days?

8          THE CLERK:  Yes.  The -- it would be --

9          THE COURT:  So, that's when I'm away.

10          THE CLERK:  Correct.

11          THE COURT:  All right.  But when -- and when's

12  your deadline to respond?

13          MR. LANNIN:  Our deadline to respond to

14  Plaintiff's discovery is March --

15          THE COURT:  Well, forget discovery for a minute.

16  I'm talking about the complaint.

17          MR. LANNIN:  Okay.

18          THE COURT:  We'll get -- discovery is a whole

19  separate issue.

20          MR. LANNIN:  Understood, your Honor.  The deadline

21  to respond to the complaint is April 3rd.

22          THE COURT:  Okay.  So, even with that original --

23  in other words, when you filed that motion to stay, you were

24  already dead on this -- you know, you were already passed.

25  It isn't just because I'm away for a week.  It's -- and I --

1 you're still ex post facto.

2          MR. LANNIN:  Exactly, your Honor, and that's why

3 we were keen to speak with you today, even in the afternoon,

4 because I -- I recognize there's this issue --

5          THE COURT:  No.

6          MR. LANNIN:  -- timing.

7          THE COURT:  Well, all right.  There's that

8 question, whether I should extend the date, the response

9 date to, for example, a couple of weeks whenever my ruling

10 is on the motion to stay, okay.  And when is it noticed for

11 again, given that I'm away, or when's it set for given that

12 I'm away?

13          MR. LANNIN:  April 19th, your Honor.

14          THE COURT:  The 19th.  So, just seven days later.

15          MR. LANNIN:  Correct.

16          THE COURT:  Okay.  All right.  So, okay.  Whether

17 I would rule on it that day at a hearing, whether I'd rule

18 on it before, you can't -- you know, and you can't know

19 really.  Okay.  So, yeah.  I'll consider that.  Just -- but

20 why did you wait to when you waited to?  Why not move

21 earlier?

22          MR. LANNIN:  Well, your Honor, there's -- there's

23 a convoluted story.  We -- Judge Karas requires a pre-motion

24 conference with letters exchanged before you get permission

25 to file a brief.  And, so, we had to go through that.  And

14

1  on the conference, he granted permission to move to transfer

2  the action.  In the meantime, the Plaintiff had agreed with

3  us to extend our response deadline by 30 days without your

4  Honor's blessing as we don't need in the first instance.

5  But even with that 30-day extension, we're now with this --

6  this April 3rd date, and it's --

7          THE COURT:  Okay.

8          MR. LANNIN:  It's just run into the -- to the New

9  York action in other words.

10         THE COURT:  All right.  Well, it was nice of them

11  to give you the -- you know, the 30 days, and now they're

12  not happy you're moving.

13         MR. LANNIN:  I -- well, I suspect you're right,

14  although I -- I will say we did preview that this would

15  happen.

16         THE COURT:  Okay.  So, all right.  Let's say that

17  I -- and I'll hear from you, Ms. Monroe, before I make this

18  order, but I'm inclined to give the -- otherwise, it's a

19  moot -- you'll be opposing for no good point because it's

20  going to moot out here.

21      So, I would be inclined -- is -- is like two weeks a

22  reasonable amount of time after I rule on the stay for them

23  to file their response?

24         MS. MONROE:  I think that's -- I think that's

25  reasonable, your Honor.  I think we're more concerned with

15

1 whether discovery is going to be stayed because we -- we
2 tried to start very narrow discovery aimed at things like
3 where the witnesses and the relevant parties are going to
4 be, like testing labs and ingredient suppliers, you know,
5 for the purpose of deciding where it is best to have this
6 case in part among, you know, other things.  But, so, I
7 think we're okay with the -- extending that a little bit,
8 but we would be less okay with a discovery stay.
9           THE COURT:  Ordinarily, we don't -- don't
10 necessarily have discovery start until the pleadings are,
11 you know, kind of settled.  If somebody is -- goes -- is
12 going forward on Claim A and Claim B is up in the air,
13 that's one thing.  But if everything's up in the air, it's a
14 little different.
15      In the same light, I understand your position.  Let's
16 say you want to respond to his motion with perhaps a
17 response that the -- it's more convenient to the -- you
18 know, the non-direct players that the case stay in New York.
19 Let's say you want to say that but you don't really know
20 where some of these people are because you haven't had a
21 chance to get that basic, let's say, information.  There
22 might be some way to bridge that a little bit.  Their
23 concern, they don't want to go full blown discovery and
24 spend a lot of money dealing with it, only to find out they
25 managed to get another, you know, dismissal.  And I have no

1  idea where this case is going.  All I know is the last time

2  that I went to fill a prescription, it was -- the line

3  waiting to get up there or pick up whatever it was was right

4  next to the Metamucil, and it was just like giant bottles

5  screaming Metamucil at me.  And I thought, oh, boy, you

6  know, I've got this case.  They're coming back, you know.

7  Here's a preview, Metamucil on the shelf.  Fortunately, I

8  haven't been taking it.  I don't know if that would be

9  grounds for recusal.

10          MR. LANNIN:  I hope not, your Honor.

11          THE COURT:  So, let me ask you if -- if there

12  could be very limited, maybe less -- you know, less broad

13  than is immediately asked for in the discovery request but

14  something that would go to the -- the heart of your motion

15  to transfer, where a legitimate argument might be made, what

16  do you have in mind?  What witnesses are you looking for

17  that you don't have at the moment?  You know who your own

18  people are, Ms. Monroe, but if you wanted to say, Okay,

19  we're not just trying to split our people and their people.

20  Even their people are better off in New York, who would that

21  be that you would want (Zoom glitch)?

22          MS. MONROE:  So, I think mostly it would be the

23  supplier of the ingredients and then any laboratories that

24  are doing testing and then like manufacturing locations as

25  well, because I think every step of those, each step in the

17

1  process could introduce lead, and we're trying to figure out

2  where that's coming from.

3          THE COURT:  Okay.  Now, let me ask Mr. Lannin a

4  question.  I'm doubting there's just one supplier, you know.

5          MR. LANNIN:  Your Honor, I -- I think that's

6  right.  I -- I want to be clear.  We haven't dug into the

7  facts yet.  So, I hope this won't be read as a stipulation,

8  but I -- I think one of the principal sources of the product

9  is overseas.  So, I don't know it will be germane to the

10  transfer piece.  And I'll -- I'll introduce just for one

11  additional wrinkle one complexity that occurs to me, which

12  is it's not clear to me how discovery -- how Plaintiff could

13  even use even limited discovery taken in this case in a

14  motion pending an entirely separate case in New York.

15          THE COURT:  They overlap to a certain extent

16  because the claims overlap.  That's why you want it out

17  here.

18          MR. LANNIN:  I agree.  We -- we'd have to figure

19  out, you know, between protective orders and whatever else

20  some way that -- that any material could be used in a

21  different case, but I -- I -- I just am having a very hard

22  time seeing how any of that information would be relevant to

23  -- to the transfer analysis, which really does hinge on the

24  forum shopping angle and the fact that P and G's witnesses,

25  for example, are in Ohio.

18

1          THE COURT:  Well, that's your -- in other words,
2  that's your -- your position.  But from what little Ms.
3  Monroe said, and I've just -- maybe I'm running with more
4  than she said, but it sounded like she might want to defend
5  that against that motion on a slightly different ground and
6  say, Look, what you usually like -- look at is where are the
7  witnesses.  They've got this aberrant idea here.  What's an
8  -- you know, where are the witnesses.  And you say where --
9  you've told me where some of your people are.  And, so,
10  where is the rest of them?
11      So, if we could narrow this to, for example, suppliers
12  -- what was your second one?  The last one was
13  manufacturers.  We'll get to that in a minute, but what was
14  -- where is --
15          MS. MONROE:  Laboratories to the extent there are
16  any.
17          THE COURT:  What was the second one?
18          MS. MONROE:  Testing.
19          THE COURT:  Oh, testing.  If you have any labs
20  that have done testing already, where are they.  And I guess
21  if you're planning on using the lab, that might come under
22  just even disclosures in some way.  I mean, I could hold up
23  disclosures too.  Plaintiff has done theirs apparently
24  already.  So, but that could be one.
25      And then what about this manufacturing?  Where does

1 that fit in?  You think that it could come in in a

2 particular -- in other words, your Plaintiff could have

3 bought it at -- let's see, where are they located?  Ms.

4 Amado, where is she?

5         MS. MONROE:  She's in -- pardon me.

6         THE COURT:  Anybody know?

7         MS. MONROE:  San Francisco County, but I'm not

8 sure exactly.

9         THE COURT:  Somewhere -- okay, she's on the west

10 coast?

11         MS. MONROE:  Yes.

12         THE COURT:  Okay.  So, I don't know where she

13 bought this thing, and whether or not one can even determine

14 whether -- I don't know.  Let's say she got it at Walgreens,

15 okay, just for discussion.  I don't even know if it's

16 possible to trace from a particular plant, if that's what

17 you're looking for, whether something got to Walgreens in

18 San Francisco or whether it went somewhere else.  It's

19 possible.  You know, they have those supply lies, but then

20 what do you do like if the rest of the class doesn't -- you

21 know, you've got an aberrant plant out here somewhere and

22 all the rest of them are hunky dory and what's going on.  I

23 -- okay.  But if -- do we have any idea even how many plants

24 -- if we weren't looking for class cert and were just

25 looking at her, that might be one -- one plant or two.

1 Might not be -- you know, that -- if it can be determined,

2 you know, without extreme work on it.

3　　I could see those -- those few things but not talking

4 to the Plaintiff except you know where she bought it.  You

5 can tell them, and then you want to know wherever -- you

6 know, who supplied that -- that store, if she bought it at

7 two different stores, who -- who bought it at -- you know,

8 who supplied those different stores.  You know, maybe they

9 had a sale at CVS.  I don't know.

10　　So, I could make a very brief order to that effect.  I

11 could do it today, you know.  But then I don't know -- I

12 can't remember how broad or if I even was told exactly how

13 broad the rest of the discovery request was.  I'd like to

14 hold it up to the extent that it's at all, you know, kind of

15 just typical discovery, talking to the Plaintiff, getting

16 the most knowledgeable person at P and G, ,whatever.

17　　　　MR. LANNIN:  Yeah, the discovery, your Honor, is

18 -- we -- it's a set of interrogatories and requests for

19 production, and they are attached, for what it's worth, to

20 our opening motion to stay so that if your Honor was

21 inclined to look, you certainly could.  But, needless to say

22 we agree with you to the extent your Honor's inclined to

23 hold up, you know, most of that discovery perhaps but for

24 this limited, you know, identification of location type of

25 thing that might in Plaintiff's view -- I don't agree with

21

1 it, but, nonetheless, in Plaintiff's view might be relevant

2 to the transfer question in -- in New York.

3          THE COURT:  It may inure to your benefit.  I mean,

4 why would a New York plant be shipping out here if there are

5 multiple plants across the country.  That costs money, you

6 know, but, you know, I'm not in the business.  So --

7          MR. LANNIN:  I -- I am -- I'm reticent to make a

8 any predictions, your Honor, but that may well be right,

9 that the locations are either abroad or don't -- are

10 immaterial to the transfer piece.  That -- that could be

11 possible.

12          THE COURT:  Okay.  So, and then what do we do if

13 all these witnesses are in -- where are they?  Taiwan,

14 Mainland China?

15          MR. LANNIN:  I -- I genuinely do not know, your

16 Honor.  I know -- what I do know is that the individuals at

17 the company with responsibility for kind of overseeing the

18 manufacturing marketing of Metamucil are in Ohio.  That --

19 that is very clear to me.  But in terms of the supply chain,

20 I -- I generally have not yet done --

21          THE COURT:  Okay.  Lead probably is not a

22 byproduct of any ingredient that your client wants in

23 Metamucil, unlike sugar, let's say, or some other food

24 product.  So, it will be interesting to see if it's there

25 and if somebody can figure out why, and is it bad for you at

22

1 whatever amount there is?  You know, do you have to be a lab

2 rat to have it really be bad or can it, you know, just be

3 ordinary consumption.

4      Okay.  So, all right.  What else is in here?  Give me a

5 second to go back to your statement.  This has been, for

6 lack of a better word, a very crazy day with me bouncing

7 around between medical practitioners.  Okay.  Just one

8 moment.

9      (Pause.)

10          THE COURT:  Oh, you had a kind of a fight over how

11 long it would take to move for certification, but before you

12 would have a motion for class cert, from what I'm sort of

13 gathering is the Defendant is going to try and throw out the

14 individual case.  Is that right, Mr Lannin?

15          MR. LANNIN:  We will -- your Honor, we will

16 certainly move to dismiss the complaint, and I -- I -- we

17 have good grounds in my view to -- to completely dispose of

18 the complaint, multiple grounds, both on standing and -- and

19 12(b)(6) grounds.

20          THE COURT:  Okay.

21          MR. LANNIN:  If -- if your Honor let any piece of

22 the case survive, I can assure you that we would oppose

23 class certification, which I think is the next step in -- in

24 that case.

25          THE COURT:  Okay.

1          MR. LANNIN:  And I -- I think, your Honor, there

2 -- the major point of dispute, to the extent there is one --

3 it seems a bit premature to me, but, you know, P and G isn't

4 keen to set a schedule for the case until we have more

5 clarity on these issues we've been discussing, you know,

6 when we'll be moving, if the Pellegrino case will be out

7 here consolidated, et cetera.  You know, if -- if we got to

8 class cert, it's P and G's views that we should conduct all

9 discovery, close the record, and then move to class

10 certification, whereas I understand Plaintiff prefers to

11 keep discovery open during and after class certification in

12 case she needs additional discovery for some reason.  Again,

13 it -- it feels a little premature to me to be worrying about

14 that, but that -- that issue, was, nonetheless, presented in

15 the -- in the paper.

16          THE COURT:  Well, to start with, the Plaintiff is

17 just proposing a briefing schedule for class cert, and the

18 only question is whether we should do that before we know

19 who's going to be even in the case  I mean, I could set

20 dates.  The Defendant says, oh, you don't need that much

21 time.  You could use fewer months.  It's not going to be

22 that complicated, et cetera.

23          But -- and then you're giving each other like --

24 the Plaintiff would file and then giving the Defendant three

25 months to respond and then they're giving themselves two

24

1  months to reply and me one month to decide the thing, okay,

2  before the hearing or at least get ready for the hearing.

3      Why is that so expansive, Ms. Monroe?  Just curious.

4        MS. MONROE:  It's our -- usually our practice to

5  file expert declarations in support of class certification.

6  That usually prompts the Defendant wanting to depose all of

7  them and file Daubert motions.  So, we generally build in

8  enough time to depose experts, and then they'll want to have

9  their opposing experts.  So, the opposing experts will need

10  time to write their reports, and that sometimes involves

11  even running surveys.  And then same thing with the reply.

12  Once we get the opposing experts, we'll want to depose them

13  and then do rebuttal -- rebuttal declarations.

14        THE COURT:  I see.

15        MS. MONROE:  For reasons -- although I -- I do say

16  I think it's less important to have a class certification

17  schedule.  If discovery's not going forward, generally we

18  like to have a schedule so that we have goal -- goalposts,

19  and we can say to the Defendant, you know, you have to give

20  us by X day because we have these deadlines.  It just helps

21  move the case forward.  But if we're not going to be

22  actively doing discovery, I -- I think it's okay to wait on

23  also setting the class certificate -- class certification

24  schedule.

25        THE COURT:  Is the idea of staying -- is the --

1  the stay motion going to be like stay everything or is there

2  this pocket of even if you don't stay -- I mean, the

3  discovery, if I don't stay the case, it seems like discovery

4  probably should go forward in some way, but I'm not sure.  I

5  don't want to rule on something that's actually briefed in

6  that motion, but it just struck me that I might at least put

7  some of this discovery stuff to -- to rest just by doing a

8  sort of intermediate order here and then have the extension

9  on the deadline to respond, you know.

10          MR. LANNIN:  Yeah.  Your Honor, what we have

11  suggested in the opening motion, which, again, Plaintiff has

12  not opposed.  She'll -- she'll oppose next week -- was that

13  we -- we report back to your Honor within two weeks of Judge

14  Karas making a decision about what's going to happen in New

15  York with the proposal -- if he transfers, a proposal about

16  how to work the two cases together out here with your Honor.

17  If he doesn't transfer the case, as -- as your Honor has now

18  alluded to, it's -- it's P and G's view that we'll move full

19  steam ahead in this case and, you know, move to dismiss this

20  complaint in its entirety.

21      In the meantime, we have moved to stay everything,

22  including the answer or the motion to dismiss and the

23  discovery because it's our view we're looking at, you know,

24  a few months likely, I mean, perhaps a bit longer defending

25  on the judge, but I -- I will say this, and forgive me for

1 not saying it earlier.  You know, I would be perfectly

2 comfortable submitting a notice to Judge Karas that, you

3 know, your Honor would like to -- to have some reasonable

4 clarity about what's happening, so if your Honor, you know,

5 had set a deadline to report back to -- to you about what's

6 going on in that case, June 1, for example, we could

7 certainly convey that to -- to Judge Karas and let him know

8 that, you know, that's now a -- you know, in a role then in

9 this case as well.

10          THE COURT:  Well, I wouldn't want him to think

11 that I was, you know, trying to dictate to him how he should

12 rule.  I don't know.  That might just have him say, What?

13 I'm not sending it out there.  They can't tell me what to

14 do.  So --

15          MR. LANNIN:  I don't -- I don't profess to know my

16 Article III judges quite --

17          THE COURT:  You never know.  Okay.  So, maybe, you

18 know, we put the cattle prod aside for a minute.

19     Okay.  But apropos of what you just said in thinking

20 about this, if I were to set a deadline to respond to this

21 complaint just, you know, two weeks after I rule on the

22 motion to stay, we still won't have heard from him, but I

23 don't know where the deadlines are there.  Is he staying

24 your deadlines back there while he's hearing the stay

25 motion?

27

1          MR. LANNIN:  Yes, your Honor, yes.  The only --

2    the only -- the only live activity in the New York case is

3    that motion to transfer.

4          THE COURT:  Rather motion to transfer.  I'm sorry.

5    Yeah.  Well, does it make sense to say two weeks after I

6    rule on the motion to stay, which will probably be in

7    advance of whatever he does from -- certainly from what Ms.

8    Monroe has said and even your understanding of how things

9    work back there.  So, does that make sense to have at least

10   an answer to this complaint, which only has the -- the lead

11   charge.  The other one -- your -- your office is involved in

12   both cases or not, Mr. Lannin?

13         MR. LANNIN:  Yes, your Honor, we're defending P

14   and G in both cases.

15         THE COURT:  And they're -- they're in both?

16         MR. LANNIN:  Correct.

17         THE COURT:  Okay.

18         MR. LANNIN:  So -- so, am I understanding your

19   Honor correctly the proposition would be that if your Honor

20   denies the motion for a stay in this case, two weeks

21   thereafter, P and G would move to dismiss this complaint?

22   If your Honor grants the stay motion, then we'll wait and

23   see what happens in New York, and if he -- if he transfers

24   it out here, then we'll figure that out as well.

25         THE COURT:  I think so.  Although, whether he

28

1  transfers it or not, you're going to have to answer in two

2  separate cases, right?  I --

3           MR. LANNIN:  It was our hope, your Honor, that if

4  this case comes out here, if the Pellegrino New York case

5  comes out here, at that point we have a set of sugar claims

6  in the New York case that are identical to what you've heard

7  before and then two cases that present the same lead claims.

8  It was my hope that we would be able to reach an

9  accommodation with Plaintiff to kind of consolidate or

10  somehow coordinate so that we'd only be filing one motion to

11  dismiss instead of what would be largely overlapping

12  motions.  That's -- that's in large part why we've moved for

13  the stay is so that if Pellegrino, the other case, comes out

14  here, we can try to reduce the amount of briefing that's

15  happening around it.

16           THE COURT:  Okay.  Well, okay.  I don't understand

17  the discovery stay idea is actually going to be a separately

18  briefed motion, right?

19           MR. LANNIN:  That's right, your Honor.

20           THE COURT:  Is it --

21           MR. LANNIN:  We've --

22           THE COURT:  Is it a subpart of the bigger stay or

23  is it just kind of encompassed in the bigger stay?

24           MR. LANNIN:  It's encompassed, your Honor.  The --

25  this is more than you want to know, but as I understand it,

29

1   a stand-alone motion to stay discovery pending a motion to

2   dismiss looks to the motion to dismiss and whether it will

3   be dispositive of the entire complaint and that sort of

4   thing.  That's the standard the courts use.  We, of course,

5   have not yet filed a motion to dismiss in this case.  So, we

6   -- we framed it as a stay of both the answer deadline and

7   the discovery.

8            THE COURT:  Right.

9            MR. LANNIN:  I can assure your Honor, as I said

10  earlier, our motion to dismiss will seek to dispose of the

11  entire complaint.  And, so, you know, I -- that's why I feel

12  we have good grounds for staying --

13           THE COURT:  Okay.

14           MR. LANNIN:  -- discovery.

15           THE COURT:  So, let me go back for a second on

16  this discovery idea.  The motion to transfer is actually

17  before Judge Cherish -- Karas.  And any discovery that they

18  need is for that case, not this one.  But he has stayed any

19  possibility to discovery, Ms. Monroe, back there?

20           MS. MONROE:  Correct.

21           THE COURT:  All right.  Okay.  Here's what I'm

22  going to do.  Okay.  I am extending the deadline to respond

23  to the complaint to two weeks after the Court's ruling on

24  the motion to stay if the motion is denied.  And if it is

25  granted, then it will be stayed until further order, okay,

30

1 of the Court.

2      Then on the discovery, now, you are in a little bit of

3 a Catch 22.  I will grant very limited discovery while the

4 motion to stay is pending, and that will cover the -- I want

5 to make sure I've got this right -- the identify of the

6 suppliers for Metamucil.  Is that one way to say it or do

7 you have a better phrase for that, Ms. Monroe?

8           MS. MONROE:  I would -- well, I would say as long

9 as identity includes location, you know, information enough

10 that we can identify where they're at as well as --

11           THE COURT:  Yeah, the identity and location of the

12 companies that have supplied or the ingredients for

13 metamucil.

14           MS. MONROE:  Yes.

15           THE COURT:  The plants that -- and the location --

16 so, the -- the identity and location of the plants that

17 supplied the places where the Plaintiff bought Metamucil,

18 that's Ms. -- now, that's a little bit of a problem because

19 you've got Ms. Amado here, but she's not part of your case

20 back there.  Is your other Plaintiff in New York?

21           MS. MONROE:  Yes.

22           THE COURT:  Hmm.  Were you trying to get discovery

23 in this case regarding her or just the discovery in this

24 case?

25           MS. MONROE:  Well, the discovery we served was

31

1 just like identify your suppliers of the accused products.

2 And the accused products are the same in both cases. We

3 didn't say like only in California. It's -- it was

4 basically just like whoever's supplying.

5          THE COURT: But if they didn't get the product

6 from a supplier, then I don't know if those suppliers are

7 relevant. That's all I'm thinking.

8      Well, I'm going to say whoever supplied Ms. Amado, and

9 if you can think of some way where you could get Ms.

10 Pellegrino -- or is he a -- is it a man or a woman?

11          MS. MONROE: Woman.

12          THE COURT: Pellegrino, woman?

13          MS. MONROE: Yes.

14          THE COURT: All right. Ms. Pellegrino into it in

15 some way, I'll consider it, but right now I'll stay with

16 just our case. And the -- okay. So, we had the companies

17 that supplied the ingredients, the companies who made it and

18 supplied it then to the businesses where Ms. Amado purchased

19 Metamucil, and the last category is?

20          MS. MONROE: Any testing laboratories.

21          THE COURT: All right. The name and location of

22 any laboratories that the Plaintiff has -- I'm sorry -- the

23 Defendant has engaged or knows as of this time that they are

24 planning to use.

25          MS. MONROE: Yes.

1          THE COURT:  And that will be the limitation on

2   discovery while the motion to stay is pending.  Okay.

3      If the stay is not granted, I might -- I'm sorry.  If

4   the stay is not granted, I might still stay discovery

5   pending the motion to dismiss in ruling on it since, you

6   know, somebody ought to really have their case before they

7   file it, not try and discover it in the middle.  So, that

8   might still be the order on that.

9      All right.  I think that makes sense.  But, as I say,

10  it's been a weird day.  So, if anything doesn't sound

11  logical or you want to deal with that more on just those

12  subjects, let me know.  Otherwise, I -- I think that from

13  what Ms. Monroe says, she's not wedded to the idea of

14  setting a class cert briefing schedule at the moment because

15  things are held up, and you're going to come up on that

16  February date sooner than maybe otherwise you -- you might.

17  So, I think we can defer on that, as well as a deadline to

18  amend because, you know, we don't even know what's happening

19  here.

20      Ordinarily, I would set an amendment deadline in

21  conjunction with a pretrial order.  It may come sooner if

22  you're dealing with class cert, so that you have some idea

23  of what your case is that you're trying to certify, but this

24  may be a little early still.  So, I don't think we have to

25  do that yet.

33

1    How about other subjects?  The Plaintiff said they
2  would be interested in private mediation.  I do not -- and
3  not necessarily now, but -- well, they say at any stage.  I
4  will not refer a case to private mediation unless both sides
5  want to go because you have to pay for it, and we have some
6  free modalities.

7    You actually think from what you know as of now, Ms.
8  Monroe, that you could actually, you know, engage a private
9  mediator and that money would be potentially well spent,
10 wouldn't just be down the drain?

11         MS. MONROE:  Likely not until after the  motion to
12 just --

13         THE COURT:  You know, I would say it's a little
14 early still.  What's your view on private mediation, by the
15 way, Mr. Lannin, at -- at an appropriate time to be probably
16 selected by the parties since you'd know the best time to
17 make that expenditure?

18         MR. LANNIN:  I think, your Honor, when and if the
19 time came -- which I agree with everyone it's not now -- I
20 think P and G would be open to private mediation.

21         THE COURT:  Okay.  So, that you'll -- you'll
22 decide and let me know.  The question is should we then set
23 some kind of a status conference in this case.  We have a
24 motion already on file -- it hasn't been fully briefed, of
25 course -- to stay the action pending the case before Judge

34

1  Karas being either transferred or not.  Dismissal motion

2  doesn't have to be filed yet.  Is it enough that I though

3  that motion already on trial to to stay to act as kind of a

4  tickler or should we pick a date now that you both know you

5  could be available and then if it turns out to be premature

6  or just not a workable date after things develop a bit, you

7  can always give me a stipulation on good cause just to

8  adjust that, move it, do something with it?  But I don't

9  want you to fall off the face of the Earth where I somehow

10 kind of, you know, lose track of you.

11      So, the trouble is Judge Karas could -- could take six

12 months to --

13          MS. MONROE:  Yeah, I --

14          THE COURT:  -- figure out what he's doing.

15          MS. MONROE:  I think I would prefer to have a CMC

16 at least on calendar for sometime after that motion is fully

17 briefed, because I know we're meeting with you on the motion

18 to stay before that will be fully briefed in New York.  So,

19 it may be good to have a check-in after we've allowed Judge

20 Karas a little bit of time, and then we can, you know, come

21 together and see if we have an idea of where he might be at.

22          THE COURT:  All right.  Right now April 19 is when

23 your hearing is on the motion to stay.

24          MR. LANNIN:  Correct.

25          THE COURT:  I -- I don't think it's productive to

35

1  make that in some way concurrent with the status conference

2  because, I mean, I'd rule on it then, and then you don't

3  know where you are.  It's better that you at least have some

4  idea of what's going on, and so using that as no sooner than

5  that obviously, how much after that should be doing this?

6  You know, are we talking a couple of months after?  You

7  know, what -- what's a ballpark here?

8      (Simultaneous speaking.)

9      MS. MONROE:  I'm sorry, your Honor.  I think Judge

10 Karas -- I think the briefing there is supposed to be

11 complete in like mid May, May 13th I believe.  So, maybe we

12 could do a month after that, mid June, and that way, you

13 know, we can -- if he's ruled quickly, we'll know and, if

14 not, then we'll know that there might be some longer delay.

15     THE COURT:  All right  Let's take a somewhat --

16 let's use later June because you're going to have to file a

17 statement beforehand, and also I may be away in part of May

18 that -- the April thing is just a vacation.  May there's a

19 conference that I was on a wait list for, and I may go to

20 it.  It's only a few days.  But, anyways, let's say June 28

21 with a statement by the 21st unless you're going to be away

22 then.  There's no magic to those dates.  I just kind of

23 pulled them out of the air.

24     MS. MONROE:  Those work for me, your Honor.

25     MR. LANNIN:  I -- I wonder -- I hate to beg the

1  Court's indulgence.  There's a possibility I too will be at

2  conference --

3          THE COURT:  Okay.

4          MR. LANNIN:  -- of -- of that week, the 28th.  So,

5  if we could do --

6          THE COURT:  Well, do you want to do the 21st with

7  a statement by the 14th or do you want to go forward to July

8  5 with a statement sometime before that?  If I said the

9  28th, you could still file it before then if you're going to

10  be away.

11          MR. LANNIN:  You know, I'm mindful, your Honor,

12  that the 5th is the day after Independence Day.

13          THE COURT:  It would be right after the 4th.

14          MR. LANNIN:  And there's a chance --

15          THE COURT:  You'd probably --

16          MR. LANNIN:  -- that both your Honor and others

17  may want to be not working that day.  So --

18          THE COURT:  Well --

19          MR. LANNIN:  -- if we want to stick with June

20  28th, that is fine.  I am happy to --

21          THE COURT:  No, we -- you're going to be away.

22          MR. LANNIN:  Well, if it will be remote, your

23  Honor, that -- that shouldn't be a problem.

24          THE COURT:  I mean, if you're at a conference, the

25  conference is going to be at least in the morning.

1        MR. LANNIN:  Your Honor, I am used to odd hours

2  for accommodating a judge's calendar.  So, and I'm looking

3  at the rest of my June is challenging.  So, the 28th may

4  well work best.

5        THE COURT:  Well, is that too soon or do you -- I

6  mean, the six months is just a ballpark anyway.  We don't

7  know what he's going to do.  So, I mean, if you wanted to go

8  into July, that's fine.  If you want to stick with the end

9  of June, that's fine.  And then if something comes up where

10 you look at that date and you say this is going to be really

11 hard or I really wanted to hear this lecture and it's at

12 10:30, you know, okay.  I don't know.  I mean --

13       MR. LANNIN:  I --

14       THE COURT:  Now, if it was a ski seminar, I'd say

15 that you were, you know, there in the morning or ski in the

16 morning and out in the afternoon or something, but okay.

17       MR. LANNIN:  Then I would tell you that, your

18 Honor.  It's about criminal cartel antitrust conduct.

19       THE COURT:  All right.  Okay.

20       MR. LANNIN:  So, there you have it.

21       THE COURT:  Okay.  So, June 28 for the -- the

22 further case management conference.  Need a statement and a

23 chambers copy of it by the 21st.  Don't forget we still nee

24 the chambers copy of your motion to stay.

25       MR. LANNIN:  I will -- I will let my associate

38

1  know, your Honor.

2          THE COURT:  All right.

3          MS. MONROE:  Does your Honor still want a chambers

4  copy of the CMC statement or --

5          THE COURT:  No, no, no, no.  That -- I printed it

6  out here in chambers so that I would have it available, and

7  then I just take the opportunity to tell you we need one in

8  the future.  So, okay.  All right.

9      Anything further before you lose me?

10         MS. MONROE:  Not from me, your Honor.

11         THE COURT:  No.

12         MR. LANNIN:  No, your Honor.  I hope you're well.

13  I'm sorry you've had a crazy day.

14         THE COURT:  Oh.  Thank you, yeah.  It's been --

15  it's -- yeah, that's enough said.  It's not been great.

16  Okay.  So, I hope you all have a very nice weekend, and that

17  will conclude our conference and, Ms. Geiger.

18         THE CLERK:  Court is in recess.

19      (Proceedings adjourned at 3:31 p.m.)

20

21

22

23

24

25

39

<u>CERTIFICATE OF TRANSCRIBER</u>

    I certify that the foregoing is a true and correct
transcript, to the best of my ability, of the above pages of
the official electronic sound recording provided to me by
the U.S. District Court, Northern District of California, of
the proceedings taken on the date and time previously stated
in the above matter.

    I further certify that I am neither counsel for,
related to, nor employed by any of the parties to the action
in which this hearing was taken; and, further, that I am not
financially nor otherwise interested in the outcome of the
action.


        Echo Reporting, Inc., Transcriber
            Thursday, March 21, 2024