**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
CAROLINE S. EMHARDT (SBN 321222)
*cemhardt@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARA AMADO, on behalf of herself, all others similarly situated, and the general public,<br><br>      Plaintiff,<br><br>              v.<br><br>THE PROCTER & GAMBLE CO.,<br><br>      Defendant. | Case No. 3:23-cv-06308-MMC<br><br>**PLAINTIFF'S OPPOSITION TO PROCTER & GAMBLE'S MOTION TO STAY CASE**<br><br>**[DKT. NO. 23]**<br><br>Date:         April 19, 2024<br>Time:        9:00 a.m.<br>Courtroom:  7, 19th Floor<br>Judge:      Hon. Maxine M. Chesney |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION .................................................................................................................... 1

ISSUE TO BE DECIDED ........................................................................................................ 2

BACKGROUND ...................................................................................................................... 2

LEGAL STANDARD............................................................................................................... 5

ARGUMENT ........................................................................................................................... 6

    I.       P&G's Proposed Indefinite Stay will Prejudice Plaintiff and the Putative Class
            Members ................................................................................................................ 6

    II.      P&G Will Suffer No Hardship or Inequity in Being Required to Litigate Ms.
            Amado's Claims Now............................................................................................. 10

    III.     A Stay Will Not Promote Judicial Economy ......................................................... 11

CONCLUSION......................................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abante Rooter & Plumbing Inc. v. Nationwide Mut. Ins. Co.*,
  2018 WL 573576 (N.D. Cal. Jan. 26, 2018) ................................................ 7, 10, 11, 12

*AK Futures LLC v. Boyd St. Distro, LLC*,
  35 F.4th 682 (9th Cir. 2022) .............................................................................. 10

*Amado v. The Procter & Gamble Co.*,
  No. 22-cv-05427-MMC (N.D. Cal.) .............................................................. 2, 3, 4

*Bohac v. Gen. Mills, Inc.*,
  2013 WL 5587924 (N.D. Cal. Oct. 10, 2013) ...................................................... 5

*Cabiness v. Educ. Fin. Sols., LLC*,
  2017 WL 167678 (N.D. Cal. Jan. 17, 2017) .................................................... 7, 10

*Cal. by & through Harrison v. Express Scripts, Inc.*,
  2024 WL 841197 (C.D. Cal. Feb. 28, 2024) ...................................................... 10

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ................................................................................. 6

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007) ............................................................................... 6

*Freemont v. City of San Diego*,
  2011 WL 13161228 (S.D. Cal. Nov. 18, 2011) ................................................. 7, 8

*Fuller v. Amerigas Propane, Inc.*,
  2009 WL 2390358 (N.D. Cal. Aug. 3, 2009) ......................................................... 9

*Greenberg v. Target Corp.*,
  985 F.3d 650 (9th Cir. 2021) ................................................................................. 3

*Grundstrom v. Wilco Life Ins. Co.*,
  2023 WL 8429789 (N.D. Cal. Dec. 4, 2023) ..................................................... 6, 9

*Holt v. Noble House Hotels & Resort, Ltd.*,
  2018 WL 2011031 (S.D. Cal. Apr. 30, 2018) ....................................................... 9

*Jimenez v. Menzies Aviation Inc*,
  2015 WL 5591722 (N.D. Cal. Sept. 23, 2015) ................................................... 10

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .............................................................................................. 6

ii

*Lathrop v. Uber Techs., Inc.*,
    2016 WL 97511 (N.D. Cal. Jan. 8, 2016) .................................................. 7, 8, 10, 12

*Montegna v. Ocwen Loan Servicing, LLC*,
    2017 WL 4680168 (S.D. Cal. Oct. 18, 2017) ............................................................ 8

*Neodron, Ltd. v. Lenovo Group, Ltd.*,
    2019 WL 6912333 (N.D. Cal. Dec. 19, 2019) ........................................................ 11

*Pascal v. Concentra, Inc.*,
    2019 WL 5458282 (N.D. Cal. Oct. 24, 2019) .......................................................... 7

*Pellegrino v. The Procter & Gamble Co.*,
    No. 23-cv-10631 (KMK) (S.D.N.Y.) ............................................................... passim

*Quintero v. Campbell*,
    2024 WL 476655 (E.D. Cal. Jan. 8, 2024) ............................................................ 11

*United States v. Approximately $104,770 in U.S. Currency*,
    2011 WL 2472573 (N.D. Cal. June 22, 2011) .......................................................... 6

*Van De Streek v. Nat'l R.R. Passenger Corp.*,
    2014 WL 2186802 (N.D. Cal. May 23, 2014) .......................................................... 6

*Yong v. I.N.S.*,
    208 F.3d 1116 (9th Cir. 2000) ............................................................................... 6

**Statutes**

N.Y. Gen. Bus. L. §§ 349-50 ............................................................................................ 4

**Rules**

Fed. R. Civ. P. 12(g)(2) .................................................................................................. 11

Fed. R. Civ. P. 41(a)(1)(A)(i) ........................................................................................... 3

*Amado v. The Procter & Gamble Co.*, No. 3:23-cv-06308-MMC
PLAINTIFF'S OPPOSITION TO P&G'S MOTION TO STAY CASE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Plaintiff Tara Amado brings this class action on behalf of a class of California purchasers of six varieties of Metamucil. Dkt. No. 1, Compl. ¶ 1 n.1. Ms. Amado alleges P&G falsely and misleadingly markets these products as healthy and safe for consumption when they actually contain dangerous amounts of toxic lead, which she learned from testing completed in July 2023 by an independent ISO-accredited laboratory. *See id.* ¶¶ 1-4, 50. Defendant The Procter & Gamble Company ("P&G") now moves to stay this case in its entirety pending a decision on an as-of-yet unfiled but anticipated motion to transfer in another action against P&G, *Pellegrino v. The Procter & Gamble Co.*, No. 23-cv-10631 (KMK) (S.D.N.Y.) ["*Pellegrino*"]. *See generally* Dkt. No. 23, P&G's Mot. to Stay Case ("Mot."). Notably, P&G intends to ask the New York court, if it declines to transfer *Pellegrino*, to stay *that* case "while the parties brief a motion to dismiss in this [instant] case," *see* Mot. at 7 n.1. Thus, not only does P&G suggest this case should proceed before *Pellegrino*, but its requested relief could result in each case being stayed pending action in the other.

P&G's Motion should be denied because all three factors courts consider in deciding whether to grant a stay weigh in favor of proceeding with the litigation, rather than staying this case. ***First***, Plaintiff and putative class members will be damaged by any length of stay due to the destruction or spoliation of relevant evidence in the possession of P&G and third parties, which will make it more difficult for Plaintiff to contact class members, test the products for lead, and identify relevant sales. These preservation issues are only made worse by the indefinite length of the stay P&G requests, since there is no deadline for Judge Karas' decision on the unfiled transfer motion, briefing will not be complete until mid-May, the parties must then wait for Judge Karas to set oral argument, and it is likely to be another six months or more before the motion is resolved.

***Second***, P&G will suffer no real hardship or inequity in being required to litigate this case now because, as it concedes, regardless of the outcome of its transfer motion in *Pellegrino*, this Court will need to decide Ms. Amado's lead-related claims under California law. The hypothetical possibility of briefing successive motions to dismiss is not sufficient to establish hardship, since parties and courts routinely do so when pleadings are amended and there are mechanisms in place to protect against redundancies.

***Third***, the orderly course of justice will be best served by allowing this case to go forward because a decision on the *Pellegrino* transfer motion will in no way narrow the issues the Court must decide. Rather,

the reverse is true: to the extent there is some factual overlap since both cases involve the lead content of Metamucil products, development of the record here would—if *Pellegrino* is transferred here—aid in narrowing the issues and allow for a more streamlined application of New York law to the facts. If *Pellegrino* is *not* transferred here, which is more likely given its many differences and Pellegrino's residence in New York, P&G concedes this action should proceed first, providing further reason to proceed now rather than delay the inevitable.

## ISSUE TO BE DECIDED

Whether this case should be stayed in its entirety pending P&G's as-of-yet unfiled but anticipated motion to transfer or in the alternative stay *Pellegrino*, when any such stay is likely to cause significant delay, substantially harm Plaintiff and putative class members, and unlikely to serve judicial economy, whereas requiring P&G to respond to Plaintiff's Complaint now will not cause P&G any hardship or inequity.

## BACKGROUND

In September 2022, California citizen Tara Amado filed in this district a class action against P&G for misleadingly marketing a single variety of Metamucil, Made With Real Sugar ("MWRS"), which is available in several flavors. *Amado v. The Procter & Gamble Co.*, No. 22-cv-05427-MMC (N.D. Cal.) ["*Amado I*"], Dkt. No. 1, Compl. ¶¶ 1-3, 11 & n.1. Ms. Amado challenged P&G's statements that Metamucil MWRS "help[s] support 'Appetite Control,' 'Heart Health by Lowering Cholesterol,'[] 'Healthy Blood Sugar Levels,' and 'Digestive Health,'" and is the "#1 Doctor Recommended Brand." *Id.* ¶¶ 11-12. The *Amado I* Complaint alleged these claims are false or misleading because, due to Metamucil MWRS's high added sugar content, its regular consumption is likely to increase risk of disease, decrease appetite control, and harm heart and digestive health. *See generally id.* ¶¶ 21-91.

P&G moved to dismiss in November 2022, *Amado I* Dkt. No. 17, and Plaintiff amended as a matter of course, *id.*, Dkt. No. 21. Only thereafter was Ms. Amado's counsel "retained by a citizen of New York," Regina Pellegrino, "for the purpose of filing a class action lawsuit against P&G for claims relating to the marketing and sale of the Metamucil [MWRS] products," *id.*, Dkt. No. 22, Joint Stipulated Request at 1. Given the pendency of *Amado I*, the parties stipulated to plaintiff requesting leave "to add this New York citizen as a plaintiff and class representative," *see generally id.*, which the Court granted, *id.*, Dkt. No. 23. A Second Amended Complaint was filed shortly thereafter, *id.*, Dkt. No. 24 ("SAC"), which P&G moved to

dismiss, *see id.*, Dkt. No. 25, P&G's Mot. to Dismiss SAC ("MTD SAC").

P&G argued that pursuant to the Ninth Circuit's decision in *Greenberg v. Target Corp.*, 985 F.3d 650 (9th Cir. 2021), Metamucil MWRS's "helps support" statements were preempted structure/function claims about fiber. MTD SAC at 7-9. In opposition, Plaintiff argued that *Greenberg* was distinguishable, and that P&G had not shown the "helps support" statements were structure/function claims in the first place. *Amado I* Dkt. No. 27, Pls.' Opp. to P&G's Mot. to Dismiss SAC at 4-10. The Court agreed with P&G, finding the statements to be preempted structure/function claims under *Greenberg*. *Id.* Dkt. No. 38, Order at 7-12. It also found plaintiffs "alleged no facts plausibly establishing [the] falsity" of the "#1 Doctor Recommended" statement "as a standalone misrepresentation," *id.* at 17. The Court thus granted P&G's motion to dismiss, "afforded [plaintiffs] leave to amend" by June 30, 2023. *Id.* at 18. In light of the Ninth Circuit's position on structure function claims as articulated in *Greenberg* and its progeny, however, *see* 985 F.3d at 656 ("state law claims challenging [a product's] efficacy are preempted because the statute only requires substantiation for *the ingredient's* function . . . not the health impact of the product as a whole"), any attempt at amendment seemed futile. On June 19, 2023, Plaintiffs therefore exercised their rights—arguably their duty—under Fed. R. Civ. P. 41(a)(1)(A)(i) to voluntarily dismiss their claims without prejudice. *Amado I* Dkt. No. 39.

Shortly after dismissal, "[i]ndependent laboratory testing completed in July 2023 by an ISO-accredited laboratory demonstrate[d] that [six different] Metamucil Products"—only one of which is Metamucil MWRS, *see* Compl. ¶ 11 n.1—"contain high levels of lead, with each serving of each Metamucil Product containing, for example, more than the 0.5 μg MADL (*i.e.*, daily limit) under California's Proposition 65," *id.* ¶ 50 (table showing Metamucil Products contain up to 2,724% of the Proposition 65 daily limit for lead when consumed as directed). P&G misleadingly omits the Products' harmful lead content from the Metamucil products' packaging while affirmatively misrepresenting them as healthy and safe for consumption through statements such as "sealed for your protection," "Better Choices for Life," "add to your daily health routine," and "traps and removes waste that weighs you down," among others. *Id.* ¶¶ 12-24.

Because Ms. Amado and Ms. Pellegrino were, as previously alleged, "looking for a healthy and safe fiber supplement" they "paid more for the Metamucil Products, and would only have been willing to pay less, or unwilling to purchase them at all, absent [P&G's] false and misleading [health and safety] labeling," *id.* ¶¶ 78, 84; *see also Pellegrino* Dkt. No. 1, Compl. ¶ 169 (Ms. Pellegrino "was looking for a healthy, safe,

option"); *compare Amado I* SAC ¶ 130 ("In purchasing the Metamucil Powders, Plaintiffs were exposed to, read, and relied on P&G's representations that its consumption would promote appetite control, healthy blood sugar levels, and digestive health, which communicated to them that it would provide these benefits *and was generally healthy to consume and would not detriment their overall health with regular consumption*." (emphasis added)).

Both Ms. Amado and Ms. Pellegrino wished to bring additional claims against P&G due to Metamucil's toxic lead content. They also believe the Ninth Circuit's holding in *Greenberg* is erroneous, but appealing *Amado I* to the Ninth Circuit would almost certainly be fruitless in light of *Greenberg*, as either an *en banc* panel of the Ninth Circuit or the United States Supreme Court would need to overrule *Greenberg*. But the chance of either Court taking up review absent a circuit split is so slim as to be essentially non-existent. The only viable way to challenge the structure/function claims on Metamucil, therefore, is to file in a district that lacks binding authority analogous to *Greenberg*—such as a court in the Second Circuit, where Ms. Pellegrino resides and made her Metamucil purchases. If such a court then rules similarly to *Greenberg* and *Amado I*, there is at least the potential to appeal the decision and create a circuit split that would be more likely to get the Supreme Court's attention. Ultimately, two separate actions were filed: Ms. Amado's in this Court, and Ms. Pellegrino's in in the Southern District of New York, which is assigned to Judge Karas.

Here, California resident Ms. Amado brings claims for California purchases under California law (including California's unique Proposition 65) on behalf of a California class, alleging P&G's marketing of Metamucil is false and misleading due only to its lead content. *See generally* Compl. In *Pellegrino*, by contrast, New York resident Ms. Pellegrino brings claims for New York purchases only under New York's Gen. Bus. L. §§ 349-50, on behalf of a New York class, alleging P&G's marketing of Metamucil is false and misleading due to the Products' lead content and, for Metamucil MWRS, its added sugar content, as well. *See generally Pellegrino* Compl. Unrestrained by *Greenberg* in her home forum, Ms. Pellegrino thus challenges structure/function claims not at issue here. *See id.* ¶ 10.

In *Pellegrino*, P&G requested and Judge Karas granted a pre-motion teleconference regarding its anticipated motion to transfer the case to this district or, in the alternative, stay it pending this Court's resolution of a motion to dismiss the instant action. *See Pellegrino* Dkt. No. 13, P&G's Letter Mot.; *id.*, Dkt. No. 16, Order Setting Premotion Conference. During the February 27 teleconference, Judge Karas asked the

parties' preference on a briefing schedule and, in light of his busy docket, encouraged them to take additional time in briefing the motion. Monroe Decl. ¶ 2. P&G then requested 30 days to file its motion, rather than the two weeks it initially sought. *Id.* ¶ 3. In deference to Judge Karas' request, Ms. Pellegrino requested the same 30 days for her response, and Judge Karas set the briefing schedule accordingly. *Id.* ¶ 4. P&G's deadline to file its transfer motion is thus set for March 29, Ms. Pellegrino's opposition is due April 29, and P&G's reply, May 13. *Pellegrino* Dkt. No. 19, Scheduling Order. Judge Karas' Scheduling Order states that "[i]f oral argument is requested, it may be scheduled by the Court," and the parties should "wait to hear from the Court to schedule argument." *Id.*

On March 15, this Court held a Case Management Conference. Dkt. No. 25. The parties discussed scheduling and discovery issues across both this case and *Pellegrino. See generally* Monroe Decl. Ex. 1, Mar. 15, 2024 CMC Tr. During the CMC, the Court acknowledged the difficulty of opposing a motion to transfer in *Pellegrino* while this case, including discovery, was stayed. *See id.* at 29:15-30:03. Thus, although the Court noted its usual practice is to stay discovery until the pleadings are settled, *id.* at 15:09-11, it ordered some limited discovery while P&G's motion to stay *Pellegrino* is pending. *See id.* at 30:3-32:02; Dkt. No. 25. This was a subset of what Plaintiff requested in her first set of requests, *see* Dkt. Nos. 23-2 & 23-3.

Specifically, the Court Ordered P&G to produce the "[i]dentification and location of suppliers," "plants that supplied stores at which plaintiff Amado bought Metamucil," and "testing laboratories defendant used or plans to use for this case." Dkt. No. 25. Plaintiff has requested but has not yet received a date certain for P&G's production. Monroe Decl. ¶ 6. Finally, the Court "extended" P&G's "[d]eadline . . . to file [a] response to [Plaintiff's] complaint . . . to two weeks after the Court's ruling on defendant's motion to stay if motion is denied," and "if [the] stay [is] granted . . . until further order of the Court." Dkt. No. 25.

## **LEGAL STANDARD**

"Federal Rule of Civil Procedure 1 emphasizes the importance of the 'just, speedy, and inexpensive determination of every action and proceeding,'" *Bohac v. Gen. Mills, Inc.*, 2013 WL 5587924, at *5 (N.D. Cal. Oct. 10, 2013). Requests to stay proceedings should thus be denied where they are "more likely to delay justice, slow the resolution of the matter, and make th[e] litigation more expensive in the long run than simply moving forward with it." *See id.*

In determining whether to stay an action, district courts weigh the following "competing

5

interests," or "*Landis* factors": (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law."

*Grundstrom v. Wilco Life Ins. Co.*, 2023 WL 8429789, at \*2 (N.D. Cal. Dec. 4, 2023) (Chesney, J.) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). "Further, a party seeking a stay of proceedings 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [he/she] prays will work damage to someone else.'" *Van De Streek v. Nat'l R.R. Passenger Corp.*, 2014 WL 2186802, at \*1 (N.D. Cal. May 23, 2014) (Chesney, J.) (quoting *Landis*, 299 U.S. at 255).

## <u>ARGUMENT</u>

Because the balance of the *Landis* factors weighs against staying this case, the Court should deny P&G's Motion.

## I.    P&G's Proposed Indefinite Stay will Prejudice Plaintiff and the Putative Class Members

P&G asserts several times but offers no support for its claim that the stay it requests from this Court will be "short" or "brief." *See* Mot. at 2, 5, 6. In truth, because there is no deadline for the New York court to decide P&G's as-of-yet unfiled motion to transfer—or alternatively stay—*Pellegrino*, P&G is requesting this case be stayed *indefinitely*. "Indefinite stays, however, may not be granted." *See United States v. Approximately $104,770 in U.S. Currency*, 2011 WL 2472573, at \*2 (N.D. Cal. June 22, 2011) (Chesney, J.) (citing *Landis*, 299 U.S. at 257); *see also Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("Generally, stays should not be indefinite in nature." (citing *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000))). Because P&G "seeks a stay for an indefinite period of time," its Motion should be denied. *See Van De Streek*, 2014 WL 2186802, at \*1. At minimum, P&G must be "require[d] [to make] a greater showing to justify [the stay]." *Id.* (quoting *Yong*, 208 F.3d at 1119).

Although Judge Karas has no set deadline for deciding P&G's motion to transfer—making P&G's requested stay here indefinite—circumstances indicate his decision is unlikely to be quickly forthcoming. To the contrary, Judge Karas said during the February 27 teleconference that he was quite busy with his

docket of over 500 cases,[1] and encouraged the parties to take additional time to brief P&G's anticipated motion to transfer. Monroe Decl. ¶ 2. Further, P&G's motion to transfer will not even be fully briefed until May 13, 2024—nearly two months from now—and then the parties have been directed to "wait to hear from the Court to schedule oral argument." *Pellegrino* Dkt. No. 19, Scheduling Order at 1. Thus, "while the briefing schedule is set in the [*Pellegrino*] case, oral argument has not yet been scheduled and neither the parties and nor the Court can forecast when the [Southern District of New York] will ultimately issue a decision." *See Lathrop v. Uber Techs., Inc.*, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016). Therefore, "a stay in favor of the [Southern District of New York's] decision in [*Pellegrino*] is not appropriate." *See id.*

Further, although it is impossible to predict the timing of the *Pellegrino* court's decision, litigation analytics also indicate P&G's requested stay is likely to cause significant delay. The median number of days Judge Karas has taken to rule on a motion to transfer venue is 133 days—or about 4.5 months—but for half the transfer motions he decides, he takes 181 days (approximately 6 months) or more to issue a decision. *See* Monroe Decl. ¶ 8. Accordingly, P&G's requested stay here "could result in significant delay" of *at least* six months and should therefore be denied. *See Freemont v. City of San Diego*, 2011 WL 13161228, at *3 (S.D. Cal. Nov. 18, 2011) (where it "could result in significant delay" of "anywhere between six months and two years," finding "this factor weighs in favor of denying [the other party's] motion to stay").

Additionally, "there is a fair likelihood that Plaintiffs will be damaged because of the length of the stay, which is indeterminate." *See Pascal v. Concentra, Inc.*, 2019 WL 5458282, at *3 (N.D. Cal. Oct. 24, 2019) (collecting cases). P&G is a global multi-billion dollar company that employs over 100,000 people. *See* Monroe Decl. ¶ 9 & Ex. 2. Employment statistics show employees stay with the company only 5.7 years on average, *see id.* ¶ 10 & Ex. 3, and that P&G has a "high staff turnover," *id.* ¶ 11 & Ex. 4 at 13. Such "turnover of employees at [P&G] may result in diminished access to material witnesses . . . as time lapses." *See Abante Rooter & Plumbing Inc. v. Nationwide Mut. Ins. Co.*, 2018 WL 573576, at *3 (N.D. Cal. Jan. 26, 2018) ["*Abante*"]. Even for employees that remain, "memories may fade," *see id.* And these issues are only "exacerbated by the unknown duration of [the requested] stay," *see id.*; *see also Cabiness v. Educ. Fin. Sols., LLC*, 2017 WL 167678, at *3 (N.D. Cal. Jan. 17, 2017) ("Such an extended stay would prejudice the

---

[1] According to Thomas Reuters' Docket Analytics, Judge Karas currently has 509 open cases. Monroe Decl. ¶ 7.

Plaintiff because the passage of time will make it more difficult to reach class members and will increase the likelihood that relevant evidence will dissipate." (citation omitted)).

Product samples are also likely to expire during a stay, depriving Plaintiff of the ability to test them for lead. In fact, "Metamucil has a two- to three-year shelf life" because "research . . . show[s] that" is the time period during which "the ingredients are stable . . . ."[2] The spoiling of such relevant evidence further weighs against a stay here. *See Freemont*, 2011 WL 13161228, at *3 ("[a] lengthy delay" that "would prejudice [a party] by increasing the costs of litigation and risking spoiled third-party evidence. . . . weighs in favor of denying [the other party's] motion to stay").

Further, P&G requires its third-party suppliers to retain various categories of relevant information for as little as "30 days maximum." *See* Monroe Decl. ¶ 12 & Ex. 5 ¶¶ 1 (P&G's "Retention Schedules for Consumer Personal Data" showing "Marketing Campaigns via Email and SMS[]") & 9 (Delivery of Items/Fulfillment[]"); *see generally id.* Ex. 5. Notably, highly relevant "Ratings & Reviews[]" and "Consumer Contact Handling & Complaint Investigation[]" information need only be retained for a "Maximum 2 years." *See id.* ¶¶ 3, 11. Thus, even a short delay here could result in the loss of significant evidence.

Even for categories of information like "Consumer Data Management Platform[s]," which P&G requires third party suppliers to maintain for a "Maximum 50 months," delay will result in the loss of relevant information. Plaintiff's proposed class period begins on December 6, 2019, Compl. ¶ 11, more than 50 months ago already. Accordingly, "the grant of a stay may cause Plaintiff to lose evidence currently in the dominion and control of others not joined in this suit." *See Montegna v. Ocwen Loan Servicing, LLC*, 2017 WL 4680168, at *6 (S.D. Cal. Oct. 18, 2017) (citations omitted). The Court should thus "conclude[] a delay of proceedings will likely prejudice Plaintiff," which "weighs against granting Defendant's motion to stay." *See id.*; *see also Lathrop*, 2016 WL 97511, at *4 (denying motion to stay where "Plaintiffs argue[d] persuasively that they would suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will

---

[2] Metamucil FAQs, *available at* https://www.metamucil.com.au/en-au/articles/about-metamucil/metamucil-faq (response to "Can Metamucil be used past the expiry date?").

dissipate" (record citation omitted)).[3]

Additionally, while some portion of retail sales data is captured and available for purchase from third-party data collectors, not all retailers opt in to those tracking procedures, leaving gaps in the retail sales data that may need to be filled in through the use of third-party subpoenas. Monroe Decl. ¶ 13. Thus, if an indefinite stay is granted, it may be difficult for Plaintiff to obtain relevant sales information from third-party retailers with potentially short retention periods. This also weighs against a stay. *See Holt v. Noble House Hotels & Resort, Ltd.*, 2018 WL 2011031, at *3 (S.D. Cal. Apr. 30, 2018) (stay was "inappropriate" where "if the Court grant[ed] a stay" plaintiff "may struggle to obtain receipts or credit-card related information from third-party vendors with potentially short retention periods" (citations omitted)).

Finally, this case should proceed expeditiously because it implicates issues of public health. Consumers shopping for fiber supplements are not being informed about Metamucil's harmful lead content prior to purchase, as the law demands. Compl. ¶ 74. Like Plaintiff, many consumers "would have avoided any Metamucil Product . . . kn[own] [to] contain[ ] toxic heavy metals, like lead," which can "increase [the] risk of inhibited neurological function, anemia, kidney damage, a compromised immune system, seizures, coma, and death." *See id.* ¶ 78. The public health risk is worsened by the fact that other psyllium fiber products lower in lead than Metamucil, such as Yerba Prima Psyllium Whole Husks, "place[] the warning required by Proposition 65 on . . . its psyllium husks." *Id.* ¶ 53. Consumers shopping for psyllium may therefore see the warning on such products and pass them up in favor of Metamucil, mistakenly believing it to be free of harmful adulterants because its labeling lacks a similar warning. Because the risk to the public increases with every sale of Metamucil, the Court should decline to stay this case. *Cf. Cal. by & through*

---

[3] Unlike in *Grundstrom*, where this Court found *Lathrop* inapplicable because the plaintiff had "not explain[ed] how a delay would make it more difficult to access evidence," 2023 WL 8429789, at *4, here Plaintiff details the difficulties she will face in that regard if the case is stayed indefinitely, or for any amount of time, really. Further, in contrast to the defendant in *Grundstrom*, there is no indication P&G has "ret[ained] . . . extensive records pertaining to the identities of class members." *See id.* (record citation omitted). That Plaintiff has demonstrated "meaningful prejudice that a stay would cause to [her]" also distinguishes this case from *Fuller*, on which P&G relies. *See* Mot. at 5 (quoting *Fuller v. Amerigas Propane, Inc.*, 2009 WL 2390358, at *1 (N.D. Cal. Aug. 3, 2009)); *see id.* at 6 (same). *Fuller* is further distinguishable because, unlike here, that court was deciding whether to stay a case that was *itself* subject to a motion to transfer to another court for consolidation through Multidistrict Litigation treatment. *See Fuller*, 2009 WL 2390358, at *1. Unremarkably, the court concluded "[t]here [wa]s simply no reason . . . to expend its time and energy on these cases until the pending motion before the MDL Panel is resolved," *id.*, at *2 (citation omitted).

9

*Harrison v. Express Scripts, Inc.*, 2024 WL 841197, at *1, *5-6 (C.D. Cal. Feb. 28, 2024) (after deciding to remand case alleging defendants had "contributed to the opioid epidemic in California," denying defendants' "request that the Court stay execution of the remand order . . . for at least thirty days" in part because 'the harm to the public interest from the delay is great, since the 'public nuisance the People seek to abate is an ongoing public health crisis'" (record quotation omitted)); *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 695 (9th Cir. 2022) ("Keeping heavy metals and pesticides out of consumer smoking products unquestionably serves the public health.").

**II.    P&G Will Suffer No Hardship or Inequity in Being Required to Litigate Amado's Claims Now**

P&G will suffer no hardship in having to respond to Plaintiff's Complaint now rather than after the New York court has decided P&G's motion to transfer (or stay) *Pellegrino*. Regardless of whether *Pellegrino* is transferred to this district, P&G will still need to respond to Ms. Amado's claims pending before this Court. Indeed, P&G argues that if its motion to transfer *Pellegrino* is denied, "Judge Karas [should] stay *Pellegrino* while the parties brief a motion to dismiss in this case," to give "Judge Karas . . . the benefit of this Court's reasoning on both the added-sugar claims and the lead-related claims that are presented in *Pellegrino* . . . ." Mot. at 7 n.1.[4] In other words, P&G concedes it is merely delaying the inevitable. In such circumstances, courts routinely decline to stay the case. *See Lathrop*, 2016 WL 97511, at *4 (denying motion to stay where "[e]ven if the D.C. Circuit were to modify or vacate the 2015 FCC Order, factual disputes . . . will remain here"); *Abante*, 2018 WL 573576, at *2 (denying motion to stay where "[r]egardless of the outcome of [the other pending action], a factual record will need to be developed on [various] issues"); *Cabiness*, 2017 WL 167678, at *3 (denying motion to stay where "Defendant does not explain how" the other pending case "might narrow the scope of discovery that would otherwise be necessary in this case").

Because the parties and Court will need to address Ms. Amado's lead-related claims under California law on behalf of a California class regardless of whether *Pellegrino* is transferred to this district, P&G cannot show hardship in being required to go forward with this case now. *See Jimenez v. Menzies Aviation Inc*, 2015 WL 5591722, at *4 (N.D. Cal. Sept. 23, 2015) (defendant "has not made a sufficient enough showing

---

[4] This assertion is ironic given P&G's repeated attacks on Ms. Pellegrino—who is not even before this Court—for supposedly forum shopping.

of irreparable harm" to warrant a stay where "[r]egardless of the outcome of its appeal, [defendant] must continue to litigate the remaining claims" and thus will "still incur the potential costs" of litigation); *Abante*, 2018 WL 573576, at \*2 (defendant "has not demonstrated undue prejudice in the absence of a stay" where other pending action will not resolve all issues in the case); *Quintero v. Campbell*, 2024 WL 476655, at \*2 (E.D. Cal. Jan. 8, 2024) (petitioner had "not satisfied his burden of establishing that a stay is warranted" where "[t]he state resentencing proceeding will only affect [his] manslaughter conviction and thus, will not simplify or extinguish [his] federal habeas claims").

## III.    A Stay Will Not Promote Judicial Economy

P&G argues a stay would "promote 'the orderly course of justice' by permitting the efficient consolidation or at least coordination of *Pellegrino* with this case." Mot. at 6. But P&G acknowledges that even if *Pellegrino* is transferred to this District, while "the two cases *could be* consolidated," there is no guarantee that will happen. *See id.* (emphasis added). If it does not, there is no gain in judicial economy whether discovery is coordinated between two courts in this district, or between this Court and one in the Southern District of New York. Either way, the parties can agree to reasonable parameters that avoid any duplicative efforts to the extent any exist given the differences between the two actions. *Cf. Neodron, Ltd. v. Lenovo Group, Ltd.*, 2019 WL 6912333, at \*2 (N.D. Cal. Dec. 19, 2019) (denying stay where "[a]lthough defendants may face hardship in conducting duplicative discovery, a cross-use agreement could serve as a remedy" and "encourag[ing] the parties to negotiate an agreement to share discovery across all cases").

P&G argues a stay is nevertheless warranted to prevent this Court from "consider[ing] successive motions to dismiss that will raise substantially similar issues when those arguments can be consolidated in a single motion." Mot. at 6. Given the liberal standard for amending pleadings, however, Courts often decide successive motions to dismiss. And, to the extent any issue is truly duplicative, Rule 12(g)(2) exists to prevent the Court from having to consider "a defense or objection that was available to the party but omitted from its earlier motion." *See* Fed. R. Civ. P. 12(g)(2).

In any event, P&G does not and cannot explain how any efforts will be duplicated by separately deciding on the one hand, the application of California law to Ms. Amado's California causes of action and, on the other hand, the application of New York law to Ms. Pellegrino's New York causes of action. Even if the *facts* relating to the lead content of Metamucil may overlap to some extent, contrary to P&G, *see* Mot.

11

at 6, "[t]he orderly course of justice will be *enhanced*" by allowing this case to proceed "because development of the record on key facts may expedite and facilitate the application of law" if *Pellegrino* is transferred here. *See Abante*, 2018 WL 573576, at *3 (emphasis added); *see also Lathrop*, 2016 WL 97511, at *4 (where certain factual issues would need to be decided regardless, the fact that defendant "may suffer hardship, in the form of additional discovery . . . d[id] not merit a stay"). And if *Pellegrino* remains in New York, P&G agrees this case should proceed first, *see* Mot. at 7 n.1; Dkt. No. 22, Joint 26(f) Report at 3 n.1, further undermining its request to delay litigating Ms. Amado's claims. Of course, any discovery taken and accomplished here will likely be relevant and useful in the *Pellegrino* action, wherever it is pending.

## <u>CONCLUSION</u>

The Court should deny P&G's Motion to Stay.

Dated: March 22, 2024                                     Respectfully Submitted,

                                                         /s/  Melanie R. Monroe
                                                         **FITZGERALD MONROE FLYNN PC**
                                                         JACK FITZGERALD
                                                         *jfitzgerald@fmfpc.com*
                                                         MELANIE R. MONROE
                                                         *mmonroe@fmfpc.com*
                                                         TREVOR FLYNN
                                                         *tflynn@fmfpc.com*
                                                         CAROLINE S. EMHARDT
                                                         *cemhardt@fmfpc.com*
                                                         2341 Jefferson Street, Suite 200
                                                         San Diego, California 92110
                                                         Phone: (619) 215-1741

                                                         ***Counsel for Plaintiff***