CORTLIN H. LANNIN (SBN 266488)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 955-6558
Email: clannin@cov.com

MEGAN L. RODGERS (SBN 310344)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Email: mrodgers@cov.com

*Attorneys for Defendant The Procter & Gamble Company*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| TARA AMADO, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>THE PROCTER & GAMBLE CO.,<br><br>Defendant. | Civil Case No.: 3:23-cv-06308-MMC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     April 18, 2025<br>Time:     9:00 AM<br>Location:  Courtroom 7 - 19th Floor<br>Judge:    Hon. Maxine M. Chesney |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION .................................................................................................. 1

I.    INTRODUCTION ............................................................................................................................ 1

II.    BACKGROUND .............................................................................................................................. 3

    A.    Procedural Background .......................................................................................................... 3

    B.    Plaintiff's Complaint ............................................................................................................. 3

III.    LEGAL STANDARD ..................................................................................................................... 6

IV.    ARGUMENT .................................................................................................................................. 7

    A.    Plaintiff Lacks Standing To Challenge Most of the Allegedly Deceptive
        Representations. ..................................................................................................................... 7

    B.    Plaintiff's Challenge to Structure/Function Claims Are Expressly Preempted. .............. 9

    C.    Plaintiff Has Failed To Plausibly Allege That Any of the Challenged Products
        Contain Dangerous Amounts of Lead. ............................................................................. 11

    D.    Plaintiff Has Failed To Plead a Plausible Misrepresentation Theory. .......................... 13

    E.    Plaintiff Has Failed To Plead a Plausible Omissions Theory. ...................................... 17

    F.    Plaintiff's Claims Fail for Additional Reasons. ........................................................... 20

CONCLUSION ....................................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Amado v. Procter & Gamble Co.*,
    2023 WL 3898984 (N.D. Cal. June 8, 2023) ........................................................*passim*

*Andrade-Heymsfield v. Danone US, Inc.*,
    2019 WL 3817948 (S.D. Cal. Aug. 14, 2019) ................................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................... 6

*Balistreri v. McCormick & Co., Inc.*,
    2023 WL 5988600 (N.D. Cal. Sept. 13, 2023) ................................................ 13

*In re Bang Energy Drink Mktg. Litig.*,
    2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) ................................................... 11

*Barton v. Procter & Gamble Co.*,
    2025 WL 486180 (S.D. Cal. Feb. 13, 2025) ................................................... 12

*Bates v. Abbott Lab'ys*,
    727 F. Supp. 3d 194 (N.D.N.Y. 2024) .......................................................... 14

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) .................................................................... 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................... 6

*Bem v. Stryker Corp.*,
    2015 WL 6089819 (N.D. Cal. Oct. 16, 2015) ................................................ 22

*Bowen v. Energizer Holdings, Inc.*,
    2022 WL 18142508 (C.D. Cal. Aug. 29, 2022) .............................................. 12

*Broussard v. Dole Packaged Foods, LLC*,
    2024 WL 1540221 (N.D. Cal. Apr. 8, 2024) ............................................ 17, 23

*Brown v. Google LLC*,
    525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........................................................ 16

*Carroll v. Myriad Genetics, Inc.*,
    2022 WL 16860013 (N.D. Cal. Nov. 9, 2022) ................................................. 5

*Cheslow v. Ghirardelli Chocolate Co.*,
    472 F. Supp. 3d 686 (N.D. Cal. 2020) ......................................................... 16

*Clevenger v. Welch Foods Inc.*,
    2022 WL 18228288 (C.D. Cal. Dec. 14, 2022)................................................................21

*Consumer Advoc. Grp., Inc. v. ExxonMobil Corp.*,
    168 Cal. App. 4th 675 (2008)................................................................................................24

*Dachauer v. NBTY, Inc.*,
    913 F.3d 844 (9th Cir. 2019)...................................................................................................9

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018).................................................................................................21

*Eidmann v. Walgreen Co.*,
    522 F. Supp. 3d 634 (N.D. Cal. 2021).....................................................................................5

*Env't Rsch. Ctr. v. Heartland Prods.*,
    29 F. Supp. 3d 1281 (C.D. Cal. 2014).............................................................................24, 25

*Ferrari v. Vitamin Shoppe, Inc.*,
    2022 WL 974048 (D. Mass. Mar. 31, 2022) .........................................................................10

*Gamez v. Summit Naturals, Inc.*,
    2022 WL 17886027 (C.D. Cal. Oct. 24, 2022) .......................................................................7

*Grausz v. Hershey Co.*,
    2023 WL 6206449 (S.D. Cal. Sept. 11, 2023) .....................................................................12

*Grausz v. Hershey Co.*,
    2024 WL 312688 (S.D. Cal. Jan. 25, 2024) .........................................................................13

*Greenberg v. Target*,
    985 F.3d 650 (9th Cir. 2021).................................................................................................9

*Greer v. Strange Honey Farm, LLC*,
    114 F.4th 605 (6th Cir. 2024)..............................................................................................12

*Grundstrom v. Wilco Life Ins. Co.*,
    2022 WL 2390992 (N.D. Cal. July 1, 2022) .......................................................................21

*Gudgel v. Clorox Co.*,
    514 F. Supp. 3d 1177 (N.D. Cal. 2021)...............................................................................23

*Guzman v. Polaris Indus. Inc.*,
    49 F.4th 1308 (9th Cir. 2022)..............................................................................................21

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022)...............................................................18, 19, 23

*Hanscom v. Reynolds Consumer Prods. LLC*,
    2022 WL 591466 (N.D. Cal. Jan. 21, 2022) .......................................................................21

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) ................................................................ *passim*

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ................................................................ 19

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ................................................................ 18, 19

*Horti v. Nestle Healthcare Nutrition, Inc.*,
2022 WL 2441560 (N.D. Cal. July 5, 2022) ................................................................ 13

*Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*,
2013 WL 3974537 (N.D. Cal. July 31, 2013) ................................................................ 23

*Kane v. Chobani, Inc.*,
2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ................................................................ 8

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ................................................................ 6, 11

*Keep Am. Safe & Beautiful v. Taylor Made Grp., LLC*,
2024 WL 2853973 (N.D. Cal. May 7, 2024) ................................................................ 24

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ................................................................ 5, 15

*Kim v. Blue Triton Brands*,
2022 WL 17061085 (C.D. Cal. Nov. 1, 2022) ................................................................ 5

*Krakauer v. Recreational Equip., Inc.*,
2024 WL 1494489 (W.D. Wash. Mar. 29, 2024) ................................................................ 12

*Krystofiak v. BellRing Brands, Inc.*,
737 F. Supp. 3d 782 (N.D. Cal. 2024) ................................................................ 13

*Lazar v. Super. Ct.*,
909 P.2d 981 (Cal. 1996) ................................................................ 23

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) ................................................................ 18, 20

*Lowe v. Edgewell Personal Care Co.*
711 F. Supp. 3d 1097 (N.D. Cal. 2024) ................................................................ 11, 12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ................................................................ 24

*M.S. v. Brown*,
902 F.3d 1076, 1083 (9th Cir. 2018) ................................................................ 25

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ................................................................................................... 14

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ................................................................................................................. 24

*Musgrave v. Taylor Farms Pac., Inc.*,
    2019 WL 8230850 (N.D. Cal. 2019) ........................................................................................ 8

*Nacarino v. KSF Acquisition Corp.*,
    642 F. Supp. 3d 1074 (N.D. Cal. 2022) .................................................................................... 7

*Otto v. Abbott Lab'ys, Inc.*,
    2013 WL 12132064 (C.D. Cal. Mar. 15, 2013) ...................................................................... 14

*Phillips v. Brooklyn Bedding LLC*,
    2024 WL 2830663 (N.D. Cal. Mar. 28, 2024) ........................................................................ 21

*In re Plum Baby Food Litig.*,
    2024 WL 1354447 (N.D. Cal. Mar. 28, 2024) .................................................................. 19, 23

*In re Plum Baby Food Litig.*,
    637 F. Supp. 3d 210 (D.N.J. 2022) ......................................................................................... 17

*Red v. Kraft Foods Inc.*,
    2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ......................................................................... 17

*Renn v. Otay Lakes Brewery, LLC*,
    2024 WL 331616 (S.D. Cal. Jan. 29, 2024) ............................................................................ 22

*Rodriguez v. Equal Exch. Inc.*,
    2024 WL 1421971 (S.D. Cal. Mar. 31, 2024) ......................................................................... 17

*Sharpe v. Puritan's Pride, Inc.*,
    466 F. Supp. 3d 1066 (N.D. Cal. 2020) .................................................................................. 21

*Smith v. GSK Consumer Healthcare Holdings (US) LLC*,
    660 F. Supp. 3d 863 (N.D. Cal. 2023) .................................................................................... 11

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .................................................................................................. 21

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ................................................................................................ 16

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................................... 23

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................................................................................. 25

*Sud v. Costco Wholesale Corp.*,
  229 F. Supp. 3d 1075 (N.D. Cal. 2017)................................................................8

*In re Theos Dark Chocolate Litig.*,
  2024 WL 4336631 (N.D. Cal. Sept. 27, 2024).............................................20, 22

*In re Trader Joe's Co. Dark Chocolate Litig.*,
  726 F. Supp. 3d 1150 (S.D. Cal. 2024) ............................................................18

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ...........................................................................................6

*Valiente v. Simpson Imports, Ltd.*,
  717 F. Supp. 3d 888 (N.D. Cal. 2024) ...............................................................8

*Viggiano v. Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ..............................................................16

*Werbel ex rel. v. Pepsico, Inc.*,
  2010 WL 2673860 (N.D. Cal. July 2, 2010) .....................................................13

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) .............................................................................6

*Whiteside v. Kimberly Clark Corp.*,
  108 F.4th 771 (9th Cir. 2024)......................................................................13, 14

*Zakikhani v. Hyundai Motor Co.*,
  2022 WL 1740034 (C.D. Cal. Jan. 25, 2022).....................................................7

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022)................................................................7

*Zimmerman v. L'Oreal USA, Inc.*,
  2023 WL 4564552 (N.D. Cal. July 17, 2023) ....................................................8

**Statutes**

21 U.S.C. § 343(r)(6)(A) .............................................................................................9

Cal. Health & Safety Code § 25249.7(b)(1)..............................................................24

**Other Authorities**

65 Fed. Reg. 1000-01 (Jan. 6, 2000) .........................................................................10

Federal Rule of Civil Procedure 9(b) ......................................................1, 6, 10, 11, 22

Federal Rules of Civil Procedure 12(b)(1) ............................................................1, 6

Federal Rules of Civil Procedure 12(b)(6) ................................................................................................ 1, 11

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 18, 2025, at 9:00 AM, or as soon thereafter as the matter may be heard, before the Honorable Maxine M. Chesney, in Courtroom 7 of the United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, Defendant The Procter & Gamble Company ("P&G") will and hereby does move to dismiss pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) Plaintiff Tara Amado's Complaint for lack of standing and failure to state a claim upon which relief may be granted. The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, documents that are incorporated by reference into the Complaint or are judicially noticeable, documents on file with the Court, and further evidence and argument as the Court may permit.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Tara Amado returns to this Court to once again challenge the labeling of Metamucil, a dietary fiber supplement that has been used by consumers for more than ninety years. In her first lawsuit, Plaintiff alleged that certain Metamucil products were deceptively labeled because they included added sugar. This Court dismissed that lawsuit, holding that Plaintiff's claims were preempted and that she had failed to allege that P&G made any false or misleading statements. *Amado v. Procter & Gamble Co.*, 2023 WL 3898984 (N.D. Cal. June 8, 2023) ("*Amado I*"). In this new case, Plaintiff again alleges that the labeling of certain Metamucil products is deceptive—this time because they supposedly contain "dangerous" and "unsafe" amounts of lead. Plaintiff's second bite at the apple fares no better than her first, and her claims suffer from multiple defects that require dismissal.

As a threshold matter, Plaintiff's claims focus on a variety of label statements and instructions that appear on some (but not all) of six different Metamucil Products (hereafter, the "Products"). She claims these statements are deceptive because they convey the impression that the Products "are generally healthy and safe for consumption" when they allegedly are not. However, Plaintiff only bought two of the six Metamucil Products at issue in this case, and she is purporting to challenge several statements that appear only on Products she did not purchase. Because Plaintiff was not exposed to those statements, did not

rely on them, and certainly was not injured by them, she lacks standing to base any of her claims on those statements. Those label statements, in short, should be out of this case.

Even if Plaintiff did have standing to challenge all the label statements identified in the Complaint, her claims suffer from a variety of other problems. To start, two of the allegedly deceptive statements are structure/function claims that are permitted by the Federal Food, Drug, and Cosmetic Act (the "FDCA"). Because these claims are narrowly focused—in that they describe the role of fiber in the human body—and meet the other requirements to qualify as structure/function claims, Plaintiff's attempt to attack them as misleading under state law is preempted. If all this sounds familiar, it should: Plaintiff challenged several *different* structure/function claims in her first lawsuit, and this Court found those claims preempted. *Amado I,* 2023 WL 3898984, at *3–7. The Court should reach the same result here.

Next, all of Plaintiff's claims necessarily rest on the proposition that the six Metamucil products contain lead, and at "dangerous" levels. However, Plaintiff points to nothing but the supposed results of a *single* test to support her case, and omits critical details about the testing—including which laboratory performed the tests, how they were performed, and where, when, how, and by whom the samples were obtained. Her vague testing allegations do not suffice to state a claim. And even if this Court credited Plaintiff's test results—and it should not—there are no factual allegations to suggest the detected lead levels are "dangerous" or "unsafe," as Plaintiff repeatedly claims. She relies heavily on an allegation that the alleged amounts exceed Proposition 65 ("Prop 65") levels, for example, but courts have repeatedly rejected the proposition that Prop 65 establishes a benchmark for assessing safety.

Plaintiff also has not plausibly alleged that P&G misrepresented anything. Her theory that the challenged statements convey an implied meaning that goes far beyond their plain language is implausible as a matter of law. Nor can Plaintiff pursue an omission theory of deception, because (among other reasons) she has not plausibly alleged that the alleged presence of lead constitutes an unreasonable safety hazard or impairs the central function of Metamucil.

Finally, Plaintiff cannot proceed with her claims for equitable relief because she has an adequate remedy at law, and she lacks standing to seek injunctive relief or to pursue her claim under Prop 65. She has also failed to allege the elements of her warranty and misrepresentation claims. For these and the additional reasons set forth below, Plaintiff's Complaint should be dismissed in its entirety.

## II.    BACKGROUND

### A.    Procedural Background

More than two years ago, Plaintiffs Tara Amado and Regina Pellegrino filed a lawsuit against P&G in this Court challenging the labeling of certain Metamucil fiber supplements.  Those plaintiffs alleged that representations that the products "Help[] Support: Appetite Control[;] ... Healthy Blood Sugar Levels[;] and Digestive Health" were false or misleading because the inclusion of added sugar allegedly served to "decrease appetite control, harm blood sugar levels, and damage digestive health."  *Amado I*, 2023 WL 3898984, at *2.  This Court dismissed the complaint, holding that those representations were permissible "structure/function" claims and that plaintiffs' challenges to those representations under state law were accordingly preempted by the FDCA.  *Id.* at *4–7.  In addition, the Court concluded plaintiffs had failed to plead any of the challenged statements were either false or misleading.  *Id.* at *7–10.  Plaintiffs declined the opportunity to amend and voluntarily dismissed their complaint.  Six months later, however, Plaintiff Amado filed this new Complaint, this time alleging that the labeling of several Metamucil products is misleading because the products allegedly contains unsafe levels of lead.  *See* Compl. ¶ 2.[1]

### B.    Plaintiff's Complaint

#### 1.    The Challenged Metamucil Products and Representations

This case concerns six different varieties of Metamucil.  *See* Compl. ¶ 11 n.1.  Plaintiff challenges a hodge-podge of representations and instructions that appear on some (but not always all) of the six Product labels, which she collectively deems general "health and safety representations."  *Id.* ¶¶ 2, 13, 18, 21.  The specific challenged statements that appear on each of the six Products is reflected in the table below.  She alleges that these representations convey the impression that the Products "are generally healthy and safe for consumption" and are thus false or misleading because the Products allegedly contain

---

[1] On the same day Ms. Amado filed the instant case, Ms. Pellegrino filed an analogous lawsuit in the Southern District of New York.  *See Pellegrino v. Procter & Gamble Co.*, Civil Case No. 7:23-cv-10631-KMK (S.D.N.Y.).  P&G is also moving to dismiss that complaint.

"dangerous amounts of lead." *Id.* ¶¶ 2, 12.  None of the challenged statements say anything about lead, and none of the Product labels include any other representations about lead.  *See id.* ¶ 25.

| Metamucil Product | Purchased by Plaintiff? | Challenged Representations |
|---|---|---|
| Metamucil Made with Real Sugar | Yes | • "#1 Doctor Recommended Brand"<br>• Tamper-Evident Instructions[2] |
| Metamucil on-the-go! | Yes | • "#1 Doctor Recommended Brand"<br>• Tamper-Evident Instructions |
| Metamucil Sugar Free | No | • "#1 Doctor Recommended Brand"<br>• Tamper-Evident Instructions<br>• "Better Choices for Life" |
| Metamucil No Added Sweeteners | No | • "#1 Doctor Recommended Brand"<br>• Tamper-Evident Instructions |
| Metamucil Premium Blend | No | • "#1 Doctor Recommended Brand"<br>• Tamper-Evident Instructions<br>• "Premium Blend"<br>• "Better Choices for Life" |
| Metamucil Fiber + Collagen Peptides | No | • "#1 Doctor Recommended Brand"<br>• Tamper-Evident Instructions<br>• "Rejuvenation Blend For Daily Digestive Health*"<br>• "Metamucil's plant-based psyllium fiber traps and removes the waste that weighs you down, so you'll feel lighter, more energetic, and rejuvenated*"[3]<br>• "We infused our signature fiber with premium collagen peptides, for an ultra-smooth and delicious drink you can add to your daily health routine."[4] |

---

[2] This refers to multiple instructions that, according to Plaintiff, convey that the products are "sealed for safety against adulterants."  Compl. ¶ 18.  Specifically, the "tamper-evident instructions" are: (i) "Do Not Use If Printed Seal Is Broken Or Missing," (ii) "Do Not Use If Printed Inner Seal is Broken or Missing," (iii) "Tamper Evident: Do not use if printed seal under cap is missing or damaged," (iv) "Individual Packets Sealed For Your Protection," and (v) "Do Not Use If Package Is Torn."  *Id.*

[3] As discussed below (at 8–9), Plaintiff focuses only on the second half of this challenged claim and ignores the first part ("Metamucil's plant-based psyllium fiber…").  *See* Compl. ¶ 21.

[4] Here again, Plaintiff focuses only on part of the challenged claim—"add to your daily health routine"—and ignores the rest.  *See* Compl. ¶ 21.

Plaintiff purchased only two of the six Products—Metamucil Made With Real Sugar and Metamucil on-the-go!—and did so "in approximately late 2017 or early 2018, with her last purchase in early 2022." *Id.* ¶ 76.

### 2.    Alleged Test Results

Metamucil is made from plant-based psyllium husk, which is a dietary fiber from the plantago ovata plant.  Declaration of Megan Rodgers ("Rodgers Decl.") Ex. 1 at 3 (cited at Compl. ¶ 32 n.23).[5] Plaintiff does not allege (nor could she) that P&G adds lead to Metamucil.  Instead, Plaintiff's cited sources acknowledge that lead is naturally occurring and that there is "widespread occurrence of lead in the environment." *Id.* Ex. 2 at 1 (cited at Compl. ¶ 42 n.31).  Given its natural presence in the environment, lead can naturally transfer from soil to plants.  *Id.* at 2.

Plaintiff does not allege that she tested any of the Products she herself purchased for lead.  Instead, she cites to the results of "independent" tests that were allegedly conducted by an unidentified laboratory in July 2023—six years after Plaintiff's first purchase of Metamucil and approximately 18 months after her last.  Those results purportedly show that the tested Products contained lead at levels that exceed Proposition 65's "daily limit."  Compl. ¶ 50.  The Complaint does not provide details regarding, among other things: (i) which laboratory performed the testing; (ii) how the Products were tested; (iii) where and when the Products were obtained and how many products were tested; or (iv) whether there was any variation in the results.

---

[5] The Court may take judicial notice of and consider the articles and studies cited in the Complaint because they are incorporated by reference and because Plaintiff's claims rely on these studies and articles.  *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (articles cited and quoted in complaint were incorporated by reference); *Amado I*, 2023 WL 3898984, at *8 n.13 (considering studies cited by Plaintiff as incorporated by reference); *Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013, at *2 (N.D. Cal. Nov. 9, 2022) (incorporating by reference "studies and articles cited and referenced" in complaint).  In addition, Courts routinely consider product labels incorporated by reference in cases alleging the label is false or misleading—as this Court did in *Amado I*.  *See, e.g.*, *Kim v. Blue Triton Brands*, 2022 WL 17061085, at *2 (C.D. Cal. Nov. 1, 2022) (finding product labels incorporated by reference); *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 642 (N.D. Cal. 2021) (same); *Amado I*, 2023 WL 3898984, at *1 n.4 (same).

### 3. Alleged Injury and Relief Sought

Plaintiff does not allege that she suffered any physical injury from consuming Metamucil.  Instead, she alleges that she "suffered economic injury" by paying too much for Metamucil, yet fails to specify how much she paid for the Products or the frequency of her purchases.  Compl. ¶ 97.

Plaintiff asserts claims on behalf of a putative class of California consumers who purchased the six challenged Metamucil Products.  *Id.* ¶ 93.  The Complaint asserts claims under California's (i) UCL (*id.* ¶¶ 102–116 ); (ii) FAL (*id.* ¶¶ 117–126); CLRA (*id.* ¶¶ 127–134); for breach of the implied warranty of merchantability (*id.* ¶¶ 135–141); unjust enrichment (*id.* ¶¶ 142–146); negligent misrepresentation (*id.* ¶¶ 147–156); intentional misrepresentation (*id.* ¶¶ 157–163); and violation of Prop 65 (*id.* ¶¶ 164–172). The Complaint seeks declaratory and injunctive relief, as well as damages.  *Id.* ¶ 173.

## III.    LEGAL STANDARD

"[P]laintiffs must demonstrate [Article III] standing for each claim that they press and for each form of relief that they seek."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  When a plaintiff lacks Article III standing, their claims must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A complaint must also "state[] a plausible claim for relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Mere "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough.  *Id.* at 678.  Instead, a plaintiff must allege "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Claims of the type asserted here that "sound in fraud" must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  A plaintiff thus must allege with particularity "the who, what, when, where, and how" of the misconduct charged, as well as explain why any allegedly false statements are false.  *Id.* at 1124.

## IV.    ARGUMENT

### A.    Plaintiff Lacks Standing To Challenge Most of the Allegedly Deceptive Representations.

Plaintiff alleges that she purchased only two of the six Products at issue in this case: Metamucil Made With Sugar and Metamucil-on-the-go!.  Compl. ¶ 76.  As shown in the table above (at 4), the only challenged representations that appear on these products are "#1 Doctor Recommended Brand" and "tamper-evident" instructions.  *Id.* ¶¶ 13, 18.  Plaintiff, however, also purports to challenge five other representations that appear solely on Products she did not purchase—and accordingly to which she was not exposed, on which she could not have relied, and that could not have injured her.[6]  Plaintiff thus lacks both statutory and Article III standing to assert any claims premised on those representations.

To assert claims under the UCL, FAL, and CLRA, Plaintiff must allege that she has "lost money or property as a result of" the challenged representations (UCL and FAL), or "suffered some kind of damage" (CLRA).  *Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1080–81 (N.D. Cal. 2022).  Moreover, all three statutes require "actual reliance."  *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 765 (C.D. Cal. 2022) (citation omitted).  To establish actual reliance, a plaintiff must allege that "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct."  *Id.*  Thus, each of these statutory claims requires Plaintiff to allege that she relied on the allegedly deceptive statement to her detriment.  She cannot do so as to the representations that appear solely on products she never purchased and on which she does not allege reliance.  *See, e.g.*, *Gamez v. Summit Naturals, Inc.*, 2022 WL 17886027, at *6–7 (C.D. Cal. Oct. 24, 2022) (dismissing UCL, FAL, and CLRA claims for lack of statutory standing as to unpurchased products); *Zakikhani v. Hyundai Motor Co.*, 2022 WL 1740034, at *4 (C.D. Cal. Jan. 25, 2022) (similar);

---

[6] Those five representations are "Better Choices for Life", "Premium Blend", "Rejuvenation Blend For Daily Digestive Health*", "We infused our signature fiber with premium collagen peptides, for an ultra-smooth and delicious drink you can add to your daily health routine add to your daily health routine", and "Metamucil's plant-based psyllium fiber traps and removes the waste that weighs you down, so you'll feel lighter, more energetic, and rejuvenated*".

1  *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *11 (N.D. Cal. Sept. 19, 2013) (dismissing UCL, FAL, and

2  CLRA claims in part because plaintiffs could not show reliance for unpurchased products).[7]

3        Article III standing similarly requires an injury-in-fact, which compels the same result.  *See, e.g.*,

4  *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1081–82 (N.D. Cal. 2017) (dismissing claims under

5  Article III where challenged products were not purchased).  While this Court has previously reasoned that

6  a plaintiff may have Article III standing to assert claims based on unpurchased products that are

7  "substantially similar" to the purchased products, that principle has no application here.  The "critical

8  issue" for substantial similarity is whether the "products are substantially similar with respect *to the

9  alleged mislabeling*."  *Valiente v. Simpson Imports, Ltd.*, 717 F. Supp. 3d 888, 896 (N.D. Cal. 2024)

10  (emphasis added).  In this regard, the two Metamucil Products Plaintiff allegedly purchased are

11  substantially *dissimilar* from the four she did not, which uniquely include several of the challenged

12  representations.  In short, the substantial similarity test does not provide a backdoor for Plaintiff to

13  challenge representations that appear nowhere on the two Products she did purchase.  *See, e.g.*,

14  *Zimmerman v. L'Oreal USA, Inc.*, 2023 WL 4564552, at *3 (N.D. Cal. July 17, 2023) (dismissing for lack

15  of standing and finding that unpurchased products were not "substantially similar" because the challenged

16  label claims did not appear on the unpurchased products and therefore "the allegedly misleading

17  statements are different").

18        Because Plaintiff could not have relied upon or been injured by the challenged statements that

19  appear only on Products she did not purchase, she lacks both statutory and Article III standing to challenge

20  those five statements.  All claims based on those representations must be dismissed.

---

[7] The same is true for any allegedly deceptive statements on P&G's website.  Compl. ¶¶ 26–34.  Plaintiff does not allege that she read or relied on any of the website statements, *see id.* ¶¶ 77, 79–80 (alleging that Plaintiff relied only on certain "labels" and "labeling claims," and not any website statements), and so those statements likewise cannot form the basis of any claim.  *See, e.g.*, *Musgrave v. Taylor Farms Pac., Inc.*, 2019 WL 8230850, at *7 (N.D. Cal. 2019) (dismissing UCL, FAL, and CLRA claims with respect to statements on website where plaintiff failed to "allege[] facts to show he relied on any statements made" on defendant's website).

**B.    Plaintiff's Challenge to Structure/Function Claims Are Expressly Preempted.**

Even if Plaintiff had standing to challenge all of the representations identified in the Complaint—and she does not—two of those representations are structure/function claims, and her attempt to attack them under state law is thus expressly preempted by the FDCA.

In *Amado I*, this Court found preempted Plaintiff's attempt to challenge several structure/function claims that appear on certain Metamucil products. *See id.* at *4–7. In this new Complaint, Plaintiff abandons any challenge to those claims, but now targets two *different* structure/function claims that appear only on the label of the Metamucil Fiber + Collagen Peptides Product (that she did not purchase): "Rejuvenation Blend For Daily Digestive Health*" on the front label and, on the back label, "*Metamucil's plant-based psyllium fiber* traps and removes the waste that weighs you down, so you'll feel lighter, more energetic, and rejuvenated.*" Compl. ¶¶ 21–24 (emphasis added). (Notably, Paragraph 21 of the Complaint omits the italicized part of the latter representation.) Plaintiff alleges that the presence of lead in the *product* renders these otherwise accurate "structure/function" claims about *psyllium fiber* false or misleading. *See id.* ¶ 68. The Court squarely rejected such a theory as preempted in *Amado I* and should do so again here.

The FDCA contains an express preemption provision that serves to "preempt[] state-law requirements for claims about dietary supplements that differ from the FDCA's requirements." *Amado I*, 2023 WL 3898984, at *3 (citing *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 848 (9th Cir. 2019)). The FDCA permits "structure/function" claims on dietary supplements, which "describe[] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans," or "characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function." *Id.* at *4 (citing 21 U.S.C. § 343(r)(6)(A)). Such claims must be "narrowly focused" in that they "refer[] to [an] ingredient's general role in the human body, not the product's impact on a person's health." *Id.* (citing *Greenberg v. Target*, 985 F.3d 650, 654–55 (9th Cir. 2021)). Where a manufacturer has "substantiation that the statement is truthful and not misleading," the statement contains a disclaimer required by the FDA, and the statement does not "claim to diagnose, mitigate, treat, cure, or prevent disease," a manufacturer may include structure/function claims on the label without pre-approval from a federal agency. *See id.*

1    Applying that legal framework, this Court held in *Amado I* that the claims challenged in that case

2    referred to the benefits of *psyllium fiber* on the human body and not the benefits of Metamucil "as a

3    whole." 2023 WL 3898984, at *4–5. "Read in the context of the Products' labels," this Court concluded

4    the challenged statements were "'limited in scope and tone,' in that they 'describe generally the potential

5    impact of a specific ingredient,' namely, fiber, and 'make no promises about the supplement's actual

6    efficacy in the product.'" *Id.* (citing *Ferrari v. Vitamin Shoppe, Inc.*, 2022 WL 974048, at *4 (D. Mass.

7    Mar. 31, 2022)). Because the claims were also accompanied by the required disclaimer and were

8    substantiated, this Court concluded that plaintiffs' challenge to the statements were preempted. *Id.*

9    There is no principled basis to depart from this Court's reasoning in *Amado I* as to the two similar

10    structure/function claims challenged here. The first claim—"Rejuvenation Blend For Daily Digestive

11    Health*"—is positioned directly beneath a larger heading in white font stating "Fiber + Collagen

12    Peptides," which establishes that this challenged claim refers to the benefits of fiber (and collagen), not

13    the product as a whole. *See* Rodgers Decl. Ex. 6; *Amado I*, 2023 WL 3898984, at *5 (conducting similar

14    analysis of placement of challenged label statement). Similarly, the second claim—that "Metamucil's

15    plant-based psyllium fiber traps and removes the waste that weighs you down, so you'll feel lighter, more

16    energetic, and rejuvenated*"—explicitly refers to fiber. *See* Rodgers Decl. Ex. 6. As in *Amado I*, these

17    claims are "limited in scope and tone" in that they "describe generally the potential impact of a specific

18    ingredient"—fiber. *See* 2023 WL 3898984, at *5. In other words, these claims are "statements of a

19    property of [fiber or collagen] generally, not of the offered product." *Ferrari*, 2022 WL 974048, at *4,

20    *aff'd* 70 F.4th 64 (1st Cir. 2023). Moreover, the FDA has already identified terms like "energizer" and

21    "rejuvenative" as "acceptable structure/function claims." *See* Regulations on Statements Made for Dietary

22    Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg.

23    1000-01, 1026 (Jan. 6, 2000). In addition, Plaintiff does not allege that these claims are unaccompanied

24    by the FDA's required disclosure (they are[8]), or that these statements lack substantiation (they do not).

25

26

27

28

---

[8] As the label clearly shows, *see* Rodgers Decl. Ex. 6, each of the challenged structure/function claims has an asterisk that links directly to the required FDA disclaimer.

As in *Amado I*, Plaintiff's claims based on these two structure/function claims should accordingly be dismissed as preempted.

### C.    Plaintiff Has Failed To Plausibly Allege That Any of the Challenged Products Contain Dangerous Amounts of Lead.

All of Plaintiff's claims rest on a core theory that the challenged statements are deceptive because the six Metamucil Products contain "dangerous amounts of lead." Compl. ¶ 2. As such, Plaintiff cannot state *any* of her claims unless she alleges sufficient facts to make it plausible that (i) the six Products actually contain lead, and (ii) the amounts they contain is "dangerous." Further, given that all but her breach of warranty and Prop 65 claims "sound[] in fraud," Plaintiff's allegations on these points must also satisfy the heightened pleading requirements of Rule 9(b). *See Kearns*, 567 F.3d at 1125; *see also In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916, at *4 (N.D. Cal. Feb. 6, 2020) (Rule 9(b) applies to claims "premised on misleading advertising or labeling"); *Smith v. GSK Consumer Healthcare Holdings (US) LLC*, 660 F. Supp. 3d 863, 875 (N.D. Cal. 2023) (similar for misrepresentation and unjust enrichment claims). Accordingly, Plaintiff must allege with particularity the "who, what, when, where, and how" of the misconduct charged, as well as explain *why* she believes any statements are allegedly false or misleading. *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). She has not done so.

#### 1.    Plaintiff Has Not Plausibly Alleged That the Products Contain Lead.

Plaintiff's case is based on results from an unidentified "independent" laboratory that allegedly tested certain Metamucil Products at some point in July 2023—six years after Plaintiff purchased her first Metamucil Product and approximately 18 months after her last. *See* Compl. ¶ 50. She provides no further details about the testing, including which laboratory performed the testing; how the Products were tested; where, how, and when the Products were obtained; how many Products were tested; and any variability in the results. By omitting these details, she fails to plausibly allege with the requisite specificity that the six Products challenged in this case contain lead.

Courts addressing similarly vague testing allegations have dismissed analogous claims, under both Rule 12(b)(6) and Rule 9(b). For example, in *Lowe v. Edgewell Personal Care Co.*, the court found that cursory allegations of testing by unidentified laboratories did not make it plausible that the tampons

plaintiffs purchased contained the allegedly offending contaminant. 711 F. Supp. 3d 1097, 1102–05 (N.D. Cal. 2024) (dismissing case). And in another case against P&G, the court dismissed misrepresentation claims under Rule 9(b) because plaintiffs failed to "provide sufficient detail regarding the testing" that was allegedly performed, omitting any "further information as to the laboratory that performed the testing." *Barton v. Procter & Gamble Co.*, 2025 WL 486180, at *8 (S.D. Cal. Feb. 13, 2025); *see also Krakauer v. Recreational Equip., Inc.*, 2024 WL 1494489, at *4–6, 10 (W.D. Wash. Mar. 29, 2024) (dismissing similar claims for failure to plausibly allege the presence of PFAS and rejecting insufficient testing allegations); *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614–15 (6th Cir. 2024) (affirming dismissal of misrepresentation claims under Rule 9(b) where the complaint gave "no explanation of what this alleged 'testing' entailed," did "not explain how these samples were tested, who conducted the testing, how many samples were tested, when or where the samples were purchased," or that the product purchased by the plaintiffs were even the ones tested).[9]

### 2. Plaintiff Has Not Plausibly Alleged That Any Lead Is Present at "Dangerous" Levels.

Plaintiff peppers her Complaint with allegations that the six Metamucil Products contain "dangerous" and "unsafe" levels of lead. *See, e.g.*, Compl. ¶¶ 52, 69. Even if Plaintiff had adequately alleged that the Products contain any lead—and she has not—she has not established that the amounts allegedly detected are "dangerous," as her theory of liability requires. That is because none of the sources cited by Plaintiff establish a plausible standard for determining what level of lead would be "dangerous" or "unsafe."

Plaintiff first tries to sidestep this issue altogether by alleging that "[t]here is no known safe blood lead concentration," and "[t]here is no level of exposure to lead that is known to be without harmful effects." Compl. ¶ 47. However, courts routinely reject vague allegations of this type as insufficient to plead a safety hazard. *See, e.g.*, *Grausz v. Hershey Co.*, 2023 WL 6206449, at *10 (S.D. Cal. Sept. 11, 2023) (allegations that "[n]o amount of lead is known to be safe" are insufficient to "plead that the amounts

---

[9] Other courts have reached the same result for lack of standing. *See, e.g.*, *Bowen v. Energizer Holdings, Inc.*, 2022 WL 18142508, at *3–4 (C.D. Cal. Aug. 29, 2022) (dismissing for lack of Article III standing where plaintiff did not allege that the sunscreen she bought had specifically been tested).

of the substances in Hershey's Products have caused harm or create an unreasonable safety hazard"); *Grausz v. Hershey Co.*, 2024 WL 312688, at *5 (S.D. Cal. Jan. 25, 2024) (allegations that "lead and cadmium are carcinogens, that "[t]here may be no safe level of exposure to a carcinogen," and that [defendant's] products contain some amount of these substances" insufficient to show an unreasonable safety hazard); *see also Balistreri v. McCormick & Co., Inc.*, 2023 WL 5988600, at *11 (N.D. Cal. Sept. 13, 2023) (similar).

Plaintiff's reliance on Proposition 65's maximum allowable dose level ("MADL") to establish such a threshold is also unavailing. *See* Compl. ¶ 50. Prop 65 MADLs are set at a level 1,000 times lower than the "No Observable Effect Level." *See Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at *8 (N.D. Cal. Apr. 16, 2024). Because MADLs are set 1,000 times lower than the level of exposure at which a chemical would have an observable effect, courts have repeatedly rejected attempts to use a MADL as a safety benchmark. *See id.* (dismissing misrepresentation claims where plaintiff failed to "explain why the MADL is the right reference point if [her] concern is healthfulness, as opposed to Proposition 65 compliance," and why "the MADLs for *labeling* purposes [should] be understood as equivalent with a [contaminant] cut-off for *health* purposes") (emphasis in original); *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 800 (N.D. Cal. 2024) (rejecting plaintiffs' "curious[]" reliance on the "Prop 65 MADL to support the proposition that the Products 'contain high levels of lead'").

In short, Plaintiff has failed to allege facts that would suggest there is *any* lead in the six Metamucil Products, much less at "dangerous" or "unsafe" levels. All her claims should be dismissed as a result.

### D.  Plaintiff Has Failed To Plead a Plausible Misrepresentation Theory.

All but Plaintiff's claim under Prop 65 require her to plead that the challenged representations are deceptive. *See, e.g.*, *Horti v. Nestle Healthcare Nutrition, Inc.*, 2022 WL 2441560, at *7–9 (N.D. Cal. July 5, 2022) (dismissing FAL, UCL, CLRA, and warranty claims where the complaint did not plausibly allege any false or misleading representation); *Werbel ex rel. v. Pepsico, Inc.*, 2010 WL 2673860, at *5 (N.D. Cal. July 2, 2010) (same for intentional misrepresentation). Moreover, her statutory claims are governed by the reasonable consumer test, which "requires more than a mere possibility that the label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024) (quotation omitted). Rather, the

test requires "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (quotation omitted). "Where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882–83 (9th Cir. 2021).

Plaintiff's theory of deception is that a reasonable consumer would interpret the various challenged statements as "suggest[ing] [the Metamucil Products] are generally healthy and safe for consumption," Compl. ¶ 12, when in fact the Products allegedly contain "dangerous amounts of lead." *Id.* ¶ 2. This theory is implausible as a matter of law, because "allegations of deception must be assessed according to what the advertisement or label depicts and *actually says*, and not allegations of implied meaning." *Andrade-Heymsfield v. Danone US, Inc.*, 2019 WL 3817948, at *7 (S.D. Cal. Aug. 14, 2019) (emphasis added). The Court should reject Plaintiff's attempt to infuse the challenged representations, each of which is discussed below, with implied meaning that goes far beyond their plain language.

**#1 Doctor Recommended Brand**. As in *Amado I*, Plaintiff challenges the "#1 Doctor Recommended Brand" statement and, as before, Plaintiff has "alleged no facts plausibly establishing [the] falsity" of this statement. *Amado I*, 2023 WL 3898984, at *9 (dismissing claims based on "#1 Doctor Recommended Brand" representation). In addition, it is not plausible that a reasonable consumer would interpret this marketing claim about the *brand* in the very detailed way Plaintiff alleges: that a "substantial number of doctors, after receiving professional education on the potential uses, proven benefits and proper administration of the Metamucil Products, endorsed them as healthy and safe at the recommended intake levels." Compl. ¶ 17; *see, e.g.*, *Bates v. Abbott Lab'ys*, 727 F. Supp. 3d 194, 214 (N.D.N.Y. 2024), *aff'd*, 2025 WL 65668 (2d Cir. Jan. 10, 2025) (dismissing false advertising claim based on "#1 Doctor Recommended Brand" claim because "Plaintiff does not allege that the statement is false and because in a general sense the Court has found that claims about the health effects of the drinks are not materially misleading despite the presence of added sugar in the products"); *Otto v. Abbott Lab'ys, Inc.*, 2013 WL

12132064, at *1 n.2, *7 (C.D. Cal. Mar. 15, 2013) (dismissing false advertising claims involving "doctor recommended" because plaintiff failed to plausibly allege "statement was misleading").[10]

**Tamper-Evident Instructions**.  Plaintiff targets a variety of instructions that appear on the Metamucil Products: (i) "Do Not Use If Printed Seal Is Broken Or Missing," (ii) "Do Not Use If Printed Inner Seal is Broken or Missing," (iii) "Tamper Evident: Do not use if printed seal under cap is missing or damaged," (iv) "Do Not Use If Package Is Torn," and (v) "Individual Packets Sealed For Your Protection."  Plaintiff alleges that these instructions are somehow misleading because "[r]esearch shows [that] reasonable consumers view such tamper-evident packaging as reassurance that a product is free from toxic adulterants like lead."  Compl. ¶ 19.  However, the source she cites for this allegation says nothing of the sort.[11]  As that source confirms, a reasonable consumer understands these instructions to mean they should not use a product that appears to have been tampered with *after* it was manufactured and packaged—not, as Plaintiff's theory requires, as somehow implicating the manufacturing process itself, which is when Plaintiff alleges lead is introduced into the Metamucil Products.  *See* Compl. ¶ 57.[12]

**Better Choices for Life**.  Plaintiff also challenges a "Better Choices for Life" logo that appears only on the Metamucil Sugar Free and Premium Blend Products.  *See id.* ¶¶ 21–22.  As the source cited in the Complaint confirms, this logo is part of a program by the American Diabetes Association ("ADA") (whose logo also appears on the label) to help consumers "identify products and services that are suitable for people with or at risk for diabetes."[13]  As the ADA further explains on its website, the mark indicates

---

[10]  In addition, the article Plaintiff cites to support her argument—which is incorporated into the Complaint—is inapposite.  *See* Compl. ¶ 17 n.5; *Khoja*, 899 F.3d at 1004–05.  That article merely states that a doctor's recommendation of a product is effective in generating usage of that product.  *See* Rodgers Decl. Ex. 3 at 2–3.

[11]  *See* Rodgers Decl. Ex. 4 at 1 (cited in Compl. ¶ 19 n.6) ("The main objective of such [tamper-evident] packaging is to deter tampering and unauthorized entry and, in the event that tampering occurs, provide clear, irreversible evidence that the product's integrity has been compromised.").

[12]  In addition, because these are simply instructions for use, Plaintiff does not (and could not) allege that they are literally false.

[13]  *See* Rodgers Decl. Ex. 5 at 61 (2022 IRS Form 990 American Diabetes Association cited in Compl. ¶ 22 n.13).

to consumers that "[a]ny claims made by the product *related to diabetes management* are evaluated to ensure the claims are supported by scientific evidence."[14]  Plaintiff's theory of deception, however, strips the logo of its diabetes-specific context: she alleges that a reasonable consumer would interpret the mark to mean "scientific evidence would not support daily consumption of an unhealthy or unsafe product." Plaintiff's attempt to redefine a diabetes logo into a broad statement about safety is unavailing.

**Premium Blend**: Looking to the dictionary, Plaintiff alleges that the "Premium Blend" representation that appears only on the Metamucil Premium Blend Product conveys that it is "of exceptional quality," which a reasonable consumer would purportedly understand to mean the Product is "not unhealthy, unsafe, or contaminated with toxic substances like lead." Compl. ¶ 23.  Plaintiff's attenuated theory of deception is not only implausible but also squarely inconsistent with the label, which confirms "Premium Blend" refers to the fact this version of Metamucil is uniquely "sweetened with plant-based stevia" and "made with natural flavors and colors."  *See* Rodgers Decl. Ex. 7.

Even were that not the case, "Premium Blend" is a "vague and highly subjective" statement that is non-actionable puffery.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997); *see also Cheslow v. Ghirardelli Chocolate Co.*, 472 F. Supp. 3d 686, 692 (N.D. Cal. 2020) ("[T]he word 'premium' in the phrase 'Premium Baking Chips' constituted puffery and was not actionable."); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013) (concluding that "premium" "is mere puffery" with no "concrete, discernable meaning"); *see also Hayden*, 2024 WL 1643696, at *7 (similar).

**Rejuvenation Blend For Daily Digestive Health\***, **Metamucil's plant-based psyllium fiber traps and removes the waste that weighs you down, so you'll feel lighter, more energetic, and rejuvenated\*,** and **We infused our signature fiber with premium collagen peptides, for an ultra-smooth and delicious drink you can add to your daily health routine.**  As discussed above (at 8–10), the first two of these statements are permissible structure/function claims, and Plaintiff's challenge to them is accordingly preempted.  And in all events, it is not plausible that a reasonable consumer would

---

[14]  *See* American Diabetes Association, https://diabetes.org/health-wellness/better-choices-for-life (emphasis added).  The Court may take judicial notice of the contents of this website.  *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (collecting cases taking judicial notice of information on "publicly available websites").

interpret any of these very specific representations as conveying something about the product's overall safety.

* * *

In the end, Plaintiff cobbles together a variety of statements and instructions across six different Products and alleges that they convey an implied meaning about healthiness and safety that is quite different from what the statements actually say. But a reasonable consumer would not read a statement and then "assume things about the products *other than* what the statement actually says." *Red v. Kraft Foods Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (collecting cases) (emphasis in original).

Courts in other cases have rejected similar attempts to infuse specific claims with broad implied meaning. In *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at *7 (N.D. Cal. Apr. 16, 2024), plaintiffs challenged representations that flaxseed meal was "Non-GMO," "Gluten-Free," and "Organic," notwithstanding the presence of lead. The plaintiffs in *Hayden* argued that the statements were deceptive because they "contribute[d] to an overall imprimatur of healthiness," but the court dismissed the misrepresentation claims, holding that plaintiffs' strained "reading of the[] discrete, factual claims [was] implausibly extrapolated." *Id.*; *see also Broussard v. Dole Packaged Foods, LLC*, 2024 WL 1540221, at *11–12 (N.D. Cal. Apr. 8, 2024) (dismissing misrepresentation claims for failure to plausibly allege deception and rejecting plaintiffs' attempt to "extrapolat[e] an affirmative representation of 'healthiness' from the 'good nutrition' and 'goodness and nutrition'" representations); *Rodriguez v. Equal Exch. Inc.*, 2024 WL 1421971, at *10 (S.D. Cal. Mar. 31, 2024) (dismissing misrepresentation claim where it "was not plausible that the words 'sourced from small farmer organizations' or 'always small farmer grown' are misrepresentations about toxin levels"); *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 224–25 (D.N.J. 2022) (rejecting argument that presence of lead made label's representations of "perfect," "nutritious," and "packed with essential vitamins and minerals" false and deceptive because "[n]one of those descriptors relate to heavy metals" and plaintiffs did not allege "that any of these specific claims are not true"). The same is true of Plaintiff's theory here.

### E.    Plaintiff Has Failed To Plead a Plausible Omissions Theory.

In an implicit concession that none of the representations challenged by Plaintiff support a plausible theory of deception, she also alleges that P&G has omitted "material information regarding the

presence and countervailing detrimental health effects of the high levels of lead."  Compl. ¶ 61.  This omission claim fails.

An alleged omission is actionable when it is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018).  Plaintiff has not and cannot allege that the purported omission is contrary to a representation actually made by P&G, for the simple reason that there are no representations about lead on any of the Products.  That means Plaintiff must allege a duty to disclose, which arises only where either "(1) the defect at issue relates to an unreasonable safety hazard or (2) is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors."  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022).  Plaintiff has not stated a claim under either of these duty-to-disclose standards.

### 1. Plaintiff Fails To Allege An Unreasonable Safety Hazard.

To plead an "unreasonable safety hazard," Plaintiff must plausibly allege that the purported lead in the products is "unreasonably hazardous *at the particular levels* in the *specific* Products at issue in this case."  *Hayden*, 2024 WL 1643696, at *8 (emphasis added).  Plaintiff fails to do so.  As discussed above (at 10–13), she has failed to plausibly allege how much lead (if any) is in these Products; and in any event none of Plaintiff's sources establish a plausible standard for assessing how much lead would constitute an "unreasonable" safety hazard.  Her reliance on Proposition 65 MADL levels, for example, is unavailing.  As the cases cited above confirm, her failure to plead such a standard is fatal to any omissions claim founded on the "unreasonable safety hazard" prong.  *See also, e.g.*, *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1170–71 (S.D. Cal. 2024) ("not enough" for plaintiffs to allege that chocolate contained "heavy metals above MADL levels" and that "there can be health issues . . . at low levels of exposure" because plaintiffs needed to "connect the health risks alleged to the levels of Heavy Metals in these Products[,]" which must be "significant enough to be unfit for human consumption or an unreasonable safety hazard").

### 2. The Alleged Presence of Lead Does Not Impair the Central Function of Metamucil.

Plaintiff also fails to allege an omission claim under an alternative theory that the alleged presence of lead in the Products is "material" and "central to the product's function." *Hodsdon*, 891 F.3d at 864.

*First*, Plaintiff has not adequately pled that the alleged presence of trace amounts of lead in the six Products is "material." A fact is material if a reasonable person "would attach importance to its existence or nonexistence in determining whether to purchase the product." *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, 2010 WL 3448531, at *8 (N.D. Cal. Sept. 1, 2010) (quotation omitted). Plaintiff does not allege that she was harmed by the supposed lead in the Products she purchased, nor does she even plead more generally that the alleged amount of lead in the Products is harmful to others. Her glancing reference to Prop 65's limit does not establish materiality, for the reasons discussed above (at 12–13). Without credible allegations of harm or potential harm, Plaintiff has not established that the alleged presence of trace amounts of lead would be material to a reasonable consumer. *See Herrington*, 2010 WL 3448531, at *8 ("Because Herrington and Haley have not averred facts that show that the levels of these substances caused them or their children harm, under the objective test for materiality, the alleged non-disclosures are not actionable.").

*Second*, even had Plaintiff pled materiality, she does not allege that the alleged presence of lead impairs the central function of Metamucil. For an alleged defect to be central to a product's function, it must "render[] those products incapable of use by any consumer." *Hodsdon*, 891 F.3d at 864; *Hammerling*, 615 F. Supp. 3d at 1086 ("The question is not whether a defect 'affects' the product, rather the question is: does the alleged defect prevent the product from 'performing a critical or integral function,' or render the product 'incapable of use' for all users?"). Plaintiff's allegations do not meet this standard. Metamucil is a fiber supplement, and Plaintiff does not dispute that Metamucil contains fiber or that it delivers its advertised benefits, notwithstanding the alleged presence of trace amounts of lead. In short, the alleged presence of lead does not render Metamucil "incapable of use." *Id.*; *see also In re Plum Baby Food Litig.*, 2024 WL 1354447, at *6 (N.D. Cal. Mar. 28, 2024) (dismissing omission claims because "Baby Food continues to function as food if it contains these contaminants"); *Hayden*, 2024 WL 1643696, at *10 ("The alleged presence of cadmium notwithstanding, Plaintiff has not plausibly pled that

1   the Products have ceased to function as a food, or even more specifically as flaxseed."); *In re Theos Dark*

2   *Chocolate Litig.*, 2024 WL 4336631, at *11 (N.D. Cal. Sept. 27, 2024) (dismissing omissions theory

3   because plaintiffs "have not plausibly pled that chocolate containing trace amounts of Heavy Metals ceases

4   to function as food – or ceases to provide any nutritional value").

*Finally*, even had Plaintiff alleged the other elements of the "central function" test, she has not

6   pled any of the required *LiMandri* factors.[15]  Specifically, Plaintiff does not allege a fiduciary relationship

7   between herself and P&G.  Nor could she, because such a relationship can only exist where there is a

8   transaction between the parties or an "anticipated or existing contractual relationship." *Id.*; Compl. ¶ 76

9   (alleging Plaintiff bought Metamucil from retail stores).  Second, Plaintiff could not possibly allege that

10  P&G had "exclusive knowledge" about the alleged presence of lead in Metamucil given her allegation

11  that "Consumer Lab published a report" in March 2021 "concerning the lead content of various psyllium

12  fiber supplements," including a Metamucil Product.  Compl. ¶ 51; *see Hayden* 2024 WL 1643696, at *10

13  (allegations concerning defendant's "supposedly exclusive knowledge of [alleged contaminant] are

14  implausible in light of the publicly accessible nature of ConsumerLab.org's testing").  Next, there are no

15  allegations at all to suggest P&G attempted to "actively conceal" the alleged presence of lead in

16  Metamucil.  Finally, the Complaint similarly lacks any allegations that P&G made a "partial

17  representation" about the alleged presence of lead but omitted other material facts.

18  For all these reasons, Plaintiff has failed to state any claims based on an omissions theory.

19  **F.    Plaintiff's Claims Fail for Additional Reasons.**

20  Each of Plaintiff's claims suffer from further flaws that independently require dismissal.

21  **1.    Plaintiff Cannot Seek Equitable Relief.**

22  Plaintiff seeks equitable relief in the form of restitution and an injunction under the UCL, FAL,

---

[15] The *LiMandri* factors are that (1) "the defendant is in a fiduciary relationship with the plaintiff"; (2) "the defendant had exclusive knowledge of material facts not known to the plaintiff"; (3) "the defendant actively conceals a material fact from the plaintiff"; or (4) "the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

CLRA, and her unjust enrichment claim.[16]  *See* Compl. ¶¶ 115, 124, 133, 146.  The Ninth Circuit has held unequivocally that a plaintiff seeking equitable relief must first "establish that she lacks an adequate remedy at law."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Plaintiff has failed to do so.  She makes cursory allegations that no adequate remedy at law exists because restitution under the FAL "appl[ies] a standard different than that applied to assessing damages under the CLRA or commercial code" and "the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the FAL."  Compl. ¶ 126.  However, the Ninth Circuit squarely rejected this argument in *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 n.2 (9th Cir. 2022), holding that it does not matter whether legal and equitable claims are "interchangeable."  Instead, the *Guzman* court placed "emphasis on the relief that could possibly be afforded under a claim, as opposed to possible hurdles the plaintiff might face in achieving that relief, indicat[ing] that mere differences in proof between the claims does not make a legal remedy inadequate."  *Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *2 (N.D. Cal. Mar. 28, 2024) (quoting *Clevenger v. Welch Foods Inc.*, 2022 WL 18228288, at *5 (C.D. Cal. Dec. 14, 2022)); *see also Hanscom v. Reynolds Consumer Prods. LLC*, 2022 WL 591466, at *3 (N.D. Cal. Jan. 21, 2022) ("Plaintiff alleges that she may be unable to obtain damages for her CLRA and common law claims if she is unable to prove certain elements of those claims, but these allegations do not establish that the damages she seeks are necessarily inadequate or incomplete.").

Even if Plaintiff had plausibly alleged that she lacks an adequate remedy at law, she nonetheless lacks Article III standing to pursue injunctive relief because she fails to allege, as she must, a threat of injury that is "actual and imminent, not conjectural or hypothetical."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  This is because Plaintiff has failed to plausibly allege that she would purchase the Products in the future, so there is no risk of future injury.  For example, Plaintiff alleges that she would purchase Metamucil Products in the future if she could be "assured that they were healthy and

---

[16] To the extent Plaintiff seeks "an order for the disgorgement of [] funds" under her FAL claim, *see* Compl. ¶ 124, courts have held that non-restitutionary disgorgement is not available under any of California's consumer protection statutes.  *See Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1072 (N.D. Cal. 2020).  And where, as here, legal and equitable claims are based on the same alleged conduct and seek the same monetary relief, the legal remedies are adequate.  *See Grundstrom v. Wilco Life Ins. Co.*, 2022 WL 2390992, at *2 (N.D. Cal. July 1, 2022).

safe for consumption," meaning they "no longer contain harmful amounts of the heavy metal."  Compl. ¶¶ 89–90.  But courts regularly reject similar bases for injunctive relief because courts "cannot impose a mandatory injunction requiring a company to alter its products."  *Renn v. Otay Lakes Brewery, LLC*, 2024 WL 331616, at *8 (S.D. Cal. Jan. 29, 2024) (collecting cases).

Nor can Plaintiff manufacture standing by purporting to seek injunctive relief that would require the Product labels to disclose the alleged presence of lead.  *See* Compl. ¶¶ 89–91, 112.  Plaintiff has made clear that she will not purchase products that contain lead, and therefore she would not purchase the Metamucil again even if it was labeled to her satisfaction.  *Id.* ¶¶ 89–90.  Because "Plaintiff cannot plausibly allege [she] will purchase the Products in the future [even] if labeled" as Plaintiff prefers, she lacks Article III standing to seek injunctive relief.  *Renn*, 2024 WL 331616, at *8 (holding plaintiff lacked standing for injunctive relief and that his allegation he would purchase product in future was implausible because his other allegations suggested he still would not purchase product "even if the health and wellness representations were removed").

### 2.    The Implied Warranty Claim Should Be Dismissed.

The implied warranty claim should be dismissed for two independent reasons.  *First*, Plaintiff does not allege that she purchased directly from P&G the two Metamucil Products she supposedly bought.  *See* Compl. ¶ 76 (purchased products from CVS, Target, and Walgreens).  This means the privity that is required to state an implied warranty claim under California law is absent.  *See Bem v. Stryker Corp.*, 2015 WL 6089819, at *2 (N.D. Cal. Oct. 16, 2015) (dismissing implied warranty claim for failure to allege privity).  *Second*, even if privity were not required, Plaintiff fails to plead that the Metamucil Products "lack[] even the most basic degree of fitness for ordinary use," which is also a required element of her implied warranty claim.  *See In re Theos Dark Chocolate Litig.*, 2024 WL 4336631, at *13–14 (dismissing implied warranty claim because plaintiffs had "not plausibly pled that chocolate containing trace amounts of Heavy Metals fails to conform to the standard performance of like products used in the trade, is unfit for its ordinary purpose as a food product[ ] or is not merchantable or fit for use as chocolate") (cleaned up).

### 3. The Unjust Enrichment Claim Fails.

Because Plaintiff has "fail[ed] to sufficiently plead an actionable misrepresentation or omission, [their] restitution claim must be dismissed." *Hammerling*, 615 F. Supp. 3d at 1096; *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *9 (when claims of "unjust enrichment are based on the same conduct on related statutory claims, these claims rise and fall together"); *see also Broussard*, 2024 WL 1540221, at *14 (dismissing unjust enrichment claim in part because plaintiffs failed to plausibly allege any misleading representations). Plaintiff's unjust enrichment claim should also be dismissed because she has an adequate remedy at law in the form of monetary damage. *See supra at* 20–21.

### 4. The Misrepresentation Claims Fail.

Plaintiff's claims for intentional and negligent misrepresentation fail because, as discussed above, Plaintiff has "not identified any misrepresentation or deception on the product's label." *See Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1188 (N.D. Cal. 2021) (dismissing misrepresentation claim along with California statutory consumer protection claims); *Broussard*, 2024 WL 1540221, at *14 (same as to both intentional and negligent misrepresentation claims).

Plaintiff's intentional misrepresentation claim fails for two additional reasons. *First*, Plaintiff does not adequately allege reliance or knowledge of falsity, which are required elements of an intentional misrepresentation claim. *See supra* at 6–8, 19–20; *Lazar v. Super. Ct.,* 909 P.2d 981, 984 (Cal. 1996). *Second*, Plaintiff fails to allege facts that give rise to a strong inference of fraudulent intent. *See Lazar*, 909 P.2d at 984. Instead, Plaintiff relies on the conclusory allegation that "P&G knew that the misrepresentations were misleading, or has acted recklessly." Compl. ¶ 160. Those types of conclusory allegations that a defendant "knew" of allegedly false statements are insufficient to plead fraudulent intent under Rule 9(b). *See Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, 2013 WL 3974537, at *9 (N.D. Cal. July 31, 2013) (dismissing intentional misrepresentation claim because plaintiffs' allegations "fail[ed] to satisfy both the elements of the claim and the heightened pleading standard under Rule 9(b)").

### 5. Plaintiff Lacks Article III Standing To Assert a Claim Under Proposition 65.

The injury in fact requirement for Article III standing requires "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Furthermore, "plaintiffs must demonstrate standing

for each claim that they press . . . and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). Applying those principles, Plaintiff here lacks Article III standing to assert a claim under Proposition 65. "Proposition 65 merely confers a private enforcement right on a plaintiff to seek redress for an injury to the public interest." *Env't Rsch. Ctr. v. Heartland Prods.*, 29 F. Supp. 3d 1281, 1283 (C.D. Cal. 2014). In other words, Prop 65 "does not create any individual legal right. Instead, it permits a private party to seek injunctive relief and penalties for an injury incurred by the State of California." *Id.* This means that Plaintiff here, suing in her personal capacity and seeking damages in the form of a price premium she allegedly paid for Metamucil, does not have an "individual property right at stake in a Proposition 65 action," and accordingly does not have a legally protected interest in this claim sufficient to confer standing. *Keep Am. Safe & Beautiful v. Taylor Made Grp., LLC*, 2024 WL 2853973, at *2 (N.D. Cal. May 7, 2024) (citation omitted). The fact that a prevailing Prop 65 plaintiff may be entitled to a share of any statutory penalties does not change the analysis. *See Consumer Advoc. Grp., Inc. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 693 (2008) (rejecting argument that private enforcers have an individual interest in Prop 65 cases given penalty-sharing provision, reasoning Prop 65 is "intended to create a mechanism for vindicating public rights" and that "[t]his purpose is not altered by the potential for an individual to share in any penalties recovered").

There is an additional and independent problem with Plaintiff's standing: the Court's inability to redress her alleged injury. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (explaining that "irreducible constitutional minimum of standing" requires redressability). As noted, Plaintiff is seeking compensatory damages in the form of the price premium she supposedly paid for Metamucil on account of the alleged misrepresentations. *See, e.g.*, Compl. ¶¶ 84, 86, 88. Even if that was a cognizable injury in fact for purposes of asserting a Prop 65 claim—and it is not, as discussed above—Plaintiff would still lack standing, because this Court could not award any relief under Prop 65 that would redress Plaintiff's alleged economic injury.[17] Prop 65 does not provide for compensatory damages. *See* Cal.

_____

[17] Moreover, and setting aside the other deficiencies in Plaintiff's standing to bring a Prop 65 claim, she has not alleged that she suffered "any concrete injury *because of* [P&G's] alleged failure to provide a [Prop 65] warning label." *Taylor Made*, 2024 WL 2853973, at *1 (emphasis added). This too is fatal to standing.

1   Health & Safety Code § 25249.7(b)(1).  Instead, the statute can only redress injuries "incurred by the State

2   of California," not those suffered by private plaintiffs.  *Heartland Prods.*, 29 F. Supp. 3d at 1283.

3   Accordingly, because the relief available under Prop 65 "does not remedy the injury suffered," Plaintiff

4   has failed to show "the very essence of the redressability requirement" and lacks standing.  *Steel Co. v.*

5   *Citizens for a Better Env't*, 523 U.S. 83, 107 (1998); *see also M.S. v. Brown*, 902 F.3d 1076,1083 (9th Cir.

6   2018) ("[T]here is no redressability if a federal court lacks the power to issue such relief.")

### CONCLUSION

7

8        For the reasons stated, the entire Complaint should be dismissed with prejudice.

9

10  Dated: March 7, 2025                        Respectfully submitted,

11                                              */s/ Cortlin H. Lannin*

12                                              Cortlin H. Lannin (SBN 266488)
                                                COVINGTON & BURLING LLP
13                                              Salesforce Tower
                                                415 Mission Street, Suite 5400
14                                              San Francisco, California 94105
                                                Telephone: (415) 591-6000
15                                              Facsimile: (415) 955-6558
                                                Email: clannin@cov.com
16

17                                              Megan L. Rodgers (SBN 310344)
                                                COVINGTON & BURLING LLP
18                                              3000 Camino El Real
                                                5 Palo Alto Square, 10th Floor
19                                              Palo Alto, California 94306
                                                Telephone: (650) 632-4734
20                                              Facsimile: (650) 632-4800
                                                Email: mrodgers@cov.com
21

22                                              *Attorneys for Defendant*
23                                              *The Procter & Gamble Company*

24

25

26

27

28