CORTLIN H. LANNIN (SBN 266488)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 955-6558
Email: clannin@cov.com

MEGAN L. RODGERS (SBN 310344)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Email: mrodgers@cov.com

*Attorneys for Defendant The Procter & Gamble Company*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TARA AMADO, on behalf of herself, all others similarly situated, and the general public,<br><br>    Plaintiff,<br><br>    v.<br><br>THE PROCTER & GAMBLE CO.,<br><br>    Defendant. | Civil Case No.: 3:23-cv-06308-MMC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     Friday, December 5, 2025<br>Time:     9:00 AM<br>Location: Courtroom 7 - 19th Floor<br>Judge:    Hon. Maxine M. Chesney |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION.................................................................................. 1

STATEMENT OF THE ISSUES TO BE DECIDED ........................................................... 1

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 2

        A.      Plaintiff's Three Prior Failed Complaints Regarding the Labeling of Metamucil ........... 2

        B.      Plaintiff's Second Amended Complaint ......................................................... 4

III.    LEGAL STANDARD .............................................................................................. 5

IV.     ARGUMENT ........................................................................................................... 6

        A.      Plaintiff Lacks Standing to Assert Her Prop 65 Claim and to Seek Any Injunctive
                Relief. ............................................................................................................. 6

        B.      Plaintiff Cannot Use the UCL to Make an End Run Around the Limited Remedies
                Available Under Prop 65. .............................................................................. 10

        C.      Plaintiff Has Not Plausibly Alleged Her Metamucil Products Contained Lead
                Levels Above the Prop 65 MADL. ................................................................ 11

        D.      Plaintiff's Tethered UCL Claim Also Fails.................................................. 12

V.      CONCLUSION ....................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amado v. Procter & Gamble Co.*,
  2023 WL 3898984 (N.D. Cal June 8, 2023) ................................................................. 3

*Ang v. Bimbo Bakeries USA, Inc.*,
  2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ............................................................ 14

*In re Anthem, Inc. Data Breach Litig.*,
  2016 WL 3029783 (N.D. Cal. May 27, 2016) .............................................................. 6

*In re Apple Processor Litig.*,
  2022 WL 2064975 (N.D. Cal. June 8, 2022) .............................................................. 13

*As You Sow v. Sherwin-Williams Co.*,
  1993 WL 560086 (N.D. Cal. Dec. 21, 1993) ................................................................ 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................... 5, 6

*B&G Foods N. Am., Inc. v. Embry*,
  2023 WL 3751991 (E.D. Cal. June 1, 2023) ................................................................ 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 5

*Brown v. Nature's Path Foods, Inc.*,
  2023 WL 2699978 (N.D. Cal. Mar. 29, 2023) ........................................................... 15

*Bruton v. Gerber Prods. Co.*,
  2014 WL 172111 (N.D. Cal. Jan. 15, 2014) .............................................................. 15

*Chiulli v. Am. Honda Motor Co.*,
  690 F. Supp. 3d 1038 (N.D. Cal. 2023).................................................................... 16

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*,
  2021 WL 3878654 (9th Cir. Aug. 31, 2021) ............................................................. 10

*Consumer Advoc. Grp., Inc. v. ExxonMobil Corp.*,
  168 Cal. App. 4th 675 (2008) ...................................................................................... 8

*Consumer Advoc. Grp., Inc. v. Walmart, Inc.*,
  112 Cal. App. 5th 679 (2025)....................................................................................... 7

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018).................................................................................. 9, 10

*Davis v. Fed. Election Comm'n,*
 554 U.S. 724 (2008) ............................................................................................ 6

*DiPirro v. Bondo Corp.,*
 153 Cal. App. 4th 150 (2007) ........................................................................... 11

*Envt'l Rsch. Ctr. v. Heartland Prods.,*
 29 F. Supp. 3d 1281 (C.D. Cal. 2014) ............................................................ 7, 8

*Felice v. Guardian Techs. LLC,*
 2024 WL 1486140 (N.D. Cal. Apr. 4, 2024) ................................................. 9, 14

*Gamez v. Summit Naturals, Inc.,*
 2022 WL 17886027 (C.D. Cal. Oct. 24, 2022) ................................................. 14

*Gomez v. Elite Labor Servs. Weeklys, Ltd.,*
 2023 WL 2214172 (N.D. Cal. Feb. 24, 2023) ................................................... 16

*Hairston v. S. Beach Beverage Co.,*
 2012 WL 1893818 (C.D. Cal. May 18, 2012) ................................................... 14

*Hicks v. L'Oreal U.S.A., Inc.,*
 2024 WL 4252498 (S.D.N.Y. Sept. 19, 2024) ................................................. 12

*Hicks v. PGA Tour, Inc.,*
 165 F. Supp. 3d 898 (N.D. Cal. 2016) .............................................................. 13

*In re Immersion Corp. Sec. Litig.,*
 2011 WL 6303389 (N.D. Cal. Dec. 16, 2011) ................................................... 17

*Kane v. Chobani, Inc.,*
 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ............................................. 14, 15

*Keep Am. Safe & Beautiful v. Taylor Made Grp., LLC,*
 2024 WL 2853973 (N.D. Cal. May 7, 2024) ............................................. 2, 7, 8

*Kumar v. Koester,*
 131 F.4th 746 (9th Cir. 2025) ............................................................................ 6

*Lorentzen v. Kroger Co.,*
 532 F. Supp. 3d 901 (C.D. Cal. 2021) .............................................................. 14

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555 (1992) ......................................................................................... 7, 8

*M.S. v. Brown,*
 902 F.3d 1076 (9th Cir. 2018) ............................................................................ 8

*Manchester v. Sivantos GmbH,*
 2019 WL 3531419 (C.D. Cal. Aug. 2, 2019) ................................................... 12

*McCracken v. KSF Acquisition Corp.*,
  2023 WL 5667869 (C.D. Cal. Apr. 4, 2023) ................................................................. 16

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) ......................................................................................... 6

*Melendres v. Arpaio*,
  784 F.3d 1254 (9th Cir. 2015) ..................................................................................... 15

*Mir v. Fosburg*,
  646 F.2d 342 (9th Cir. 1980) .................................................................................. 6, 16

*Mlejnecky v. Olympus Imaging Am. Inc.*,
  2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ............................................................. 14

*Nacarino v. KSF Acquisition Corp.*,
  642 F. Supp. 3d 1074 (N.D. Cal. 2022) ................................................................ 13, 16

*Nguyen v. Lovesac Co.*,
  2025 WL 950511 (E.D. Cal. Mar. 28, 2025) ............................................................... 16

*Penikila v. Sergeant's Pet Care Prods., LLC*,
  442 F. Supp. 3d 1212 (N.D. Cal. 2020) ...................................................................... 16

*Pons v. Walter Kidde Portable Equip. Inc.*,
  2023 WL 8813526 (N.D. Cal. Dec. 20, 2023) ............................................................. 10

*Prime Surgical Affiliates Inc. v. Aetna Health California, Inc.*,
  2024 WL 1824993 (C.D. Cal. Mar. 4, 2024) ............................................................... 13

*Rojo v. Kliger*,
  52 Cal.3d 65 (1990) ...................................................................................................... 11

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) ......................................................................................... 6

*Scheibe v. ProSupps USA, LLC*,
  141 F.4th 1094 (9th Cir. 2025) .................................................................................... 12

*SEC v. Jarkesy*,
  603 U.S. 109 (2024) ..................................................................................................... 15

*Sharma v. Volkswagen AG*,
  524 F. Supp. 3d 891 (N.D. Cal. 2021) ........................................................................ 16

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011) ..................................................................................................... 16

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ................................................................................. 15, 16

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................................ 6, 7

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ...................................................................................................... 8

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .................................................................................................... 5

*White v. BP Prods. N. Am., Inc.*,
    2024 WL 5247959 (C.D. Cal. Dec. 26, 2024).......................................................... 9, 10

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000).................................................................................... 5

*Zakikhani v. Hyundai Motor Co.*,
    2022 WL 1740034 (C.D. Cal. Jan. 25, 2022)............................................................ 14

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
    601 F. Supp. 3d 625 (C.D. Cal. 2022) ...................................................................... 13

**Statutes**

Cal. Health & Safety Code § 25249.7 ........................................................................ 7, 8

Cal. Health & Safety Code § 25249.12 ...................................................................... 16

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on December 5, 2025, at 9:00 AM, or as soon thereafter as the matter may be heard, before the Honorable Maxine M. Chesney, in Courtroom 7 of the United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, Defendant The Procter & Gamble Company ("P&G") will and hereby does move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) Plaintiff Tara Amado's Second Amended Complaint ("SAC"), ECF No. 65, for lack of standing and failure to state a claim upon which relief may be granted. The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Megan Rodgers ("Rodgers Decl."), documents on file with the Court, and further evidence and argument as the Court may permit.

**STATEMENT OF THE ISSUES TO BE DECIDED**

Whether dismissal of the SAC is warranted where (i) Plaintiff lacks standing to assert a claim under California's Proposition 65 ("Prop 65"), and to seek any injunctive relief; and (ii) Plaintiff has failed to state a claim that P&G violated Prop 65 or the UCL.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

For almost three years, Plaintiff Tara Amado has unsuccessfully tried to attack the labeling of P&G's Metamucil fiber supplement. She started with a claim that these products were deceptively labeled because they included added sugar, a complaint this Court dismissed and that Plaintiff never tried to amend. She then filed the current case, again alleging Metamucil products were deceptively labeled—this time because they supposedly contain "dangerous" amounts of lead. This Court dismissed that complaint on various grounds. In her next try, Plaintiff abandoned her false advertising claims and any pretense the products contained "dangerous" amounts of lead. Instead, she asserted a claim under California's Proposition 65 ("Prop 65") and a UCL claim tethered to it, and for the first time attached test results that happened to completely contradict the results alleged in the complaint. That complaint was dismissed too. Now Plaintiff has filed the Second Amended Complaint ("SAC"), in which she again asserts a claim under Prop 65 and a UCL claim tethered to it.

All of these twists and turns have left us with a strange case.  Plaintiff's alleged injuries in this case are all personal and primarily economic in nature: she wants back at least some of the money she paid for Metamucil.  But her primary claim is under Prop 65, a remedial statute that permits a plaintiff to sue in the "public interest" by stepping into the shoes of the State of California and to seek civil penalties and injunctive relief for an injury incurred by the State and that redound solely to the benefit of the State.  Because Prop 65 does not provide for the money damages she is seeking, Plaintiff has tacked on a claim under the UCL for four years of restitution tethered solely to the alleged violation of Prop 65.  To P&G's knowledge, there has *never* been a case in federal court that proceeded on this posture, and for good reasons.  As discussed below, Plaintiff lacks Article III standing to assert a Prop 65 claim, including for lack of a cognizable injury in fact and because civil penalties will not redress her claimed personal injury.  She also lacks standing to seek injunctive relief under Prop 65 (and the UCL).  And a conclusion that Plaintiff cannot assert a claim under Prop 65 will necessarily doom her derivative claim under the UCL.

Based on this Court's comments at prior hearings, Plaintiff may envision a scenario in which she is permitted to assert a claim under Prop 65 for injunctive relief (but not civil penalties) along with her tethered claim under the UCL for restitution.  In that scenario (which, again, is incompatible with Article III), Plaintiff would be forgoing the civil penalties that benefit California and that she *could* seek in state court in favor of restitution that benefits only her.  Permitting Plaintiff to proceed in this fashion—to use a whittled-down Prop 65 claim as a vehicle for obtaining substantial personal restitution—would subvert the entire purpose of Prop 65: "the protection of the public, not the personal gain of a private plaintiff." *Keep Am. Safe & Beautiful v. Taylor Made Grp., LLC*, 2024 WL 2853973, at *2 (N.D. Cal. May 7, 2024) (quotation omitted).  In the end, this case does not belong in federal court, and a decision to the contrary could open the doors of the federal courthouse to other plaintiffs who use a *personal* injury as a hook to assert a Prop 65 claim that is in effect the basis for a restitution claim.

## II.    BACKGROUND

### A.    Plaintiff's Three Prior Failed Complaints Regarding the Labeling of Metamucil

Three years ago, Plaintiffs Tara Amado and Regina Pellegrino filed a lawsuit against P&G in this Court challenging the labeling of certain Metamucil fiber supplements.  Those plaintiffs alleged that certain structure/function representations on the product labels were false or misleading given the added

sugar in the products. *Amado v. Procter & Gamble Co.*, 2023 WL 3898984, at *2 (N.D. Cal June 8, 2023). This Court dismissed the complaint, concluding that plaintiffs' challenges to those representations under state law were preempted by the FDCA and that plaintiffs had failed to state a claim that P&G misrepresented anything. *Id.* at *4–10. Plaintiffs thereafter voluntarily dismissed their complaint.

Plaintiff Amado brought this action six months later, this time alleging that the labeling of several Metamucil products is false and misleading because they allegedly contain unsafe levels of lead. *See* Compl. ¶ 2, ECF No. 1. P&G moved to dismiss that complaint. ECF No. 39. Following a hearing on P&G's motion in which the Court discussed its reasoning, *see* Rodgers Decl. Ex. 1 (4/18/2025 Hr'g Tr.), this Court dismissed the complaint but granted Plaintiff leave to amend (ECF No. 45). During the hearing, the Court questioned whether Plaintiff had adequately alleged that lead levels in the challenged Metamucil products exceeded the Maximum Allowable Dose Level ("MADL") established by Prop 65. *See* Ex. 1 at 7:2–13:24. The Court also questioned whether Plaintiff had suffered an injury that was redressable through her Prop 65 claim. *See id.* at 22:11–24:19; *see also id.* at 23:2–5 ("You can't get your money back. I think there's a penalty or something that would go to the state. So under those circumstances, is it redressable?").

Plaintiff then filed the First Amended Complaint ("FAC"), which abandoned her false advertising claims and instead asserted only a cause of action under Prop 65 and a UCL claim tethered to the alleged Prop 65 violation. ECF No. 51. Plaintiff's allegation that the products "contain lead in amounts that exceed the Proposition 65 MADL" was premised on "[i]ndependent laboratory testing completed in July 2023 by AGQ Labs," the results of which were purportedly attached to the FAC for the first time. FAC ¶¶ 3, 18 & Ex 1. As P&G observed in its renewed motion to dismiss (ECF No. 54), the test results attached to the FAC did not match the results alleged in the FAC itself and appeared to show that for all but one of the challenged products, the detected lead levels were well *below* the Prop 65 MADL.

This Court granted P&G's renewed motion to dismiss and dismissed the FAC without prejudice. ECF No. 61. During a hearing on P&G's motion, this Court found unsatisfying Plaintiff's explanation for the mismatch between the test results that were attached to and alleged in the FAC. *See* Rodgers Decl. Ex. 2 (8/22/2025 Hr'g Tr.) at 6:9–14 ("Nobody would understand you were saying that. All right. Let me just put it this way: I didn't. And I will extrapolate from that that nobody else would either."); *id.* at 10:6–

11:1 ("Sorry, that's you saying something yourself: That it looks to be different than what you attached. That's all I'm going to say. All right? If you want another shot at fixing it up, fine. If you want to stick with this, I'm going to find you've pled yourself out of a claim.").

The Court also acknowledged the "interesting issue" of whether Plaintiff can bring a Prop 65 claim in federal court with a UCL claim for restitution tethered to the alleged Prop 65 violation. *See id.* at 18:14–23:4. The Court suggested that Plaintiff's counsel "should look as hard as they can for a case that let the plaintiffs stay in federal court on a Prop. 65 claim." *Id.* at 20:9–13. The Court observed that P&G "may be right" that if a statute like Prop 65 is "not available to [a plaintiff] directly," a plaintiff cannot use the UCL to make an "end-run" around that limitation. *Id.* at 22:3–22.

**B.    Plaintiff's Second Amended Complaint**

In response to the Court's order, Plaintiff timely filed the SAC. ECF No. 65. Like the FAC, the SAC asserts a cause of action under Prop 65, along with a UCL claim tethered to that alleged violation of Prop 65. SAC ¶¶ 43–68.

The SAC continues to challenge several varieties of Metamucil products (the "Products"): "Metamucil Sugar Free On-the-Go Orange Flavored, Metamucil Sugar Free Orange Flavored, Metamucil Sugar Free Berry Flavored, Metamucil No Added Sweeteners Unflavored, Metamucil Made with Real Sugar Orange Flavored, Metamucil Made with Real Sugar Unflavored, Metamucil Fiber + Collagen Peptides Orange Flavored, and Metamucil Premium Blend Orange Flavored." *Id.* ¶ 1. Plaintiff alleges that she purchased two of these products, Metamucil Made With Real Sugar and Metamucil On-the-Go!, "starting in approximately late 2017 or early 2018, with her last purchase in early 2022." *Id.* ¶ 21.

Plaintiff continues to allege that the "Products contain lead in amounts that expose consumers to at or above the 0.5 microgram safe harbor MADL, but P&G fails to provide the requisite 'clear and reasonable' warning to California consumers." *Id.* ¶ 4. This allegation is still premised on "[i]ndependent laboratory testing completed in July 2023 by AGQ Labs," which Plaintiff says "demonstrates that the Metamucil Products contain lead at levels such that, when taken as directed by P&G, the daily exposure to any of the Metamucil Products exposes the consumers to more than the 0.5 micrograms (mcg) 'safe harbor' MADL." *Id.* ¶ 19.

1    Like the FAC, Plaintiff purports to attach the test results to the SAC.  Unlike Exhibit 1 to the FAC,

2  however, Exhibit 1 to the SAC includes an "Analytical Results" page for AGQ's testing of certain

3  Metamucil products, whereas Exhibit 1 to the FAC contained only a "Technical Annex" page for each

4  tested product.  *Compare* ECF No. 65-1 *with* ECF No. 51-1.  Based on this testing, Plaintiff alleges that

5  the Products have between 0.34 and 2.27 micrograms of lead per serving which, when multiplied by the

6  maximum daily intake recommended on the Products' labels, could allegedly result in a maximum daily

7  lead intake that exceeds the Prop 65 MADL.  SAC ¶ 20.  The SAC does not allege why Plaintiff did not

8  attach the analytical results to her prior complaint.[1]  And as with Plaintiff's prior complaints, the SAC and

9  the attached test results still do not allege when, where, or how the tested samples were obtained, including

10  whether the tested samples were the same products that Plaintiff purchased.

11    Plaintiff continues to assert claims under the "unlawful" and "unfair" prongs of the UCL, both of

12  which are explicitly tethered to the alleged Prop 65 violation.  SAC ¶¶ 43–58.  Plaintiff seeks restitution

13  and injunctive relief on behalf of herself and a putative class of California consumers.  *Id.* ¶ 69.  She also

14  purports to seek Prop 65 civil penalties on behalf of that same class, *see id.*, even though such penalties

15  accrue to the State of California, not individual consumers.  *See supra* at 2.

16  **III.    LEGAL STANDARD**

17    "[P]laintiffs must demonstrate [Article III] standing for each claim that they press and for each

18  form of relief that they seek."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  When a plaintiff

19  lacks Article III standing, her claims must be dismissed under Rule 12(b)(1) for lack of subject matter

20  jurisdiction.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

21    A complaint must also "state[] a plausible claim for relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679

22  (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Mere "unadorned, the-defendant-

23  unlawfully-harmed-me accusation[s]" or "[t]hreadbare recitals of the elements of a cause of action,

24  supported by mere conclusory statements" are not enough.  *Id.* at 678.  Instead, a plaintiff must allege

25

26

27  _____

28  [1] At the hearing on P&G's prior motion to dismiss, Plaintiff's counsel simply asserted that "[w]e didn't include the test results in Exhibit A" to the FAC.  Ex. 2 at 4:10–12.

1   "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the

2   defendant is liable for the misconduct alleged." *Id.*

3       "[A] district court has broad discretion to grant or deny leave to amend, particularly where the

4   court has already given a plaintiff one or more opportunities to amend his complaint." *In re Anthem, Inc.*

5   *Data Breach Litig.*, 2016 WL 3029783, at *18 (N.D. Cal. May 27, 2016) (quoting *Mir v. Fosburg*, 646

6   F.2d 342, 347 (9th Cir. 1980)); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809–10 (9th Cir.

7   1988) ("Repeated failures to cure deficiencies by amendments previously allowed is another valid reason

8   for a district court to deny a party leave to amend.").  "Denial of leave to amend is not an abuse of

9   discretion where the pleadings before the court demonstrate that further amendment would be futile."

10  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

11  **IV.    ARGUMENT**

12      **A.    Plaintiff Lacks Standing to Assert Her Prop 65 Claim and to Seek Any Injunctive Relief.**

13      As this Court previously observed, even if Plaintiff's testing allegations are plausible, they do not

14  "shortcut everything else. . . . we still have the question of standing." Ex. 2 at 6:13–21.  To establish

15  Article III standing, a plaintiff must demonstrate that "(1) they have suffered or likely will suffer an injury

16  in fact; (2) that the injury likely was caused or will be caused by the defendant; and (3) that judicial relief

17  would likely redress the injury." *Kumar v. Koester*, 131 F.4th 746, 751 (9th Cir. 2025) (quotations

18  omitted).  "Standing is not dispensed in gross," and a "plaintiff must demonstrate standing for each claim

19  he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S.

20  724, 734 (2008) (cleaned up).  For multiple reasons, Plaintiff has failed that familiar test with regards to

21  her Prop 65 claim and her request for injunctive relief under both Prop 65 and the UCL.

22      **1.    Plaintiff Has Not Suffered a Cognizable Injury in Fact for Prop 65 Purposes.**

23      The injury in fact requirement for Article III standing requires a plaintiff to "show that he or she

24  suffered an invasion of a legally protected interest" that is "concrete and particularized" and "actual or

25  imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quotation

26  omitted).  An injury is "particularized" where it "affect[s] the plaintiff in a personal and individual way."

27

28

1    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).  Applying those principles here, Plaintiff

2    has not established an injury in fact sufficient to confer standing to assert her Prop 65 claim.

3         Prop 65 actions may be brought by any person "in the public interest."  Cal. Health & Safety Code

4    § 25249.7(d).  The statute "merely confers a private enforcement right on a plaintiff to seek redress for an

5    injury to the public interest."  *Envt'l Rsch. Ctr. v. Heartland Prods.*, 29 F. Supp. 3d 1281, 1283 (C.D. Cal.

6    2014).  (granting motion to remand plaintiff's Prop 65 claim).  In other words, Prop 65 "does not create

7    any individual legal right.  Instead, it permits a private party to seek injunctive relief and penalties for an

8    injury incurred by the State of California."  *Id.*  As the California Court of Appeal recently reiterated, "[a]n

9    individual may sue under the Act only in the public interest; there is no provision for an individual to sue

10   on [the individual's] own behalf."  *Consumer Advoc. Grp., Inc. v. Walmart, Inc.*, 112 Cal. App. 5th 679,

11   688 (2025).

12        Plaintiff in this case, however, *is* suing on her "own behalf" on the basis of personal injuries she

13   allegedly suffered.  This includes a pure economic injury, *see* SAC ¶ 30 (alleging Plaintiff "lost money as

14   a result of P&G's omission, *i.e.*, Metamucil Product labels that omitted the required Prop 65 warning" and

15   that she "did not receive what [she] paid for when purchasing the Metamucil Products."), as well as an

16   alleged denial of access to information, *see id.* ¶ 32 ("Plaintiff remains deprived of the information to

17   which she is legally entitled and remains at risk of unwitting exposure.").  These alleged injuries are

18   entirely personal and "particularized" to her.  But that does not mean she has Article III standing *to assert

19   a Prop 65 claim*, because a Prop 65 claim is founded on "an injury incurred by the State of California."

20   *Heartland Prods.*, 29 F. Supp. 3d at 1283.  In other words, Plaintiff cannot transmogrify her alleged injury

21   in fact into an injury suffered by the State.  Because it is the State that was injured and the State that would

22   benefit from any relief under Prop 65, Plaintiff lacks a "legally protected interest" in this claim, see

23   *Spokeo*, 578 U.S. at 339 (quotation omitted)—or, as other courts have put it, an "individual legal right,"

24   *Heartland Prods.*, 29 F. Supp. 3d at 1283, or an "individual property right" in a Prop 65 claim, *Taylor

25   Made*, 2024 WL 2853973, at *2 (quotation omitted).

26        Moreover, the fact that a prevailing Prop 65 plaintiff may be entitled to a share of any statutory

27   penalties does not change the analysis.  As the *Taylor Made* court explained, a plaintiff's lack of an

28   individual property right at stake in a Prop 65 action "is not altered by the potential for an individual to

share in any penalties recovered."  2024 WL 2853973, at *2 (quoting *Consumer Advoc. Grp., Inc. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 693 (2008)); *see also As You Sow v. Sherwin-Williams Co.*, 1993 WL 560086, at *2 (N.D. Cal. Dec. 21, 1993) (a Prop 65 plaintiff's "ability to recover a bounty by acting as a private attorney general cannot be transmogrified into an 'injury' in the normal and constitutional senses of the word").[2]

### 2.    Plaintiff Lacks Standing to Seek Prop 65 Civil Penalties, Which Cannot Redress Her Alleged Injuries.

Even if Plaintiff had a cognizable injury in fact under Prop 65—and she does not—there is another problem with Plaintiff's standing: the Court's inability to redress her claimed injuries through Prop 65 civil penalties.  *See Lujan*, 504 U.S. at 560–61 (explaining that "irreducible constitutional minimum of standing" requires redressability).

As discussed above, Plaintiff in this case asserts an economic injury: that she paid more for Metamucil than she would have had she known of the alleged deception.  The only remedies available under Prop 65, however, are civil penalties and injunctive relief; the statute does not provide for the restitution or damages that would redress her economic injury.  *See* Cal. Health & Safety Code § 25249.7(b)(1).  That is because Prop 65 provides for the imposition of civil penalties that serve to redress injuries "incurred by the State of California," not those suffered by private plaintiffs.  *Heartland Prods.*, 29 F. Supp. 3d at 1283; *see also B&G Foods N. Am., Inc. v. Embry*, 2023 WL 3751991, at *9 (E.D. Cal. June 1, 2023) (observing "nothing in Proposition 65 [] suggest[s] it compensates individuals for injuries they suffer").  Plaintiff herself acknowledges that "Prop 65 authorizes only injunctive relief and civil penalties, which are payable to the State of California, and do not compensate or restore money to consumers." SAC ¶ 58.  Accordingly, because the civil penalties available under Prop 65 "do[] not remedy the injury suffered," Plaintiff has failed to show "the very essence of the redressability requirement" and lacks standing to seek that remedy.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998), *abrogated in irrelevant part by Riley v. Bondi*, 145 S. Ct. 2190 (2025); *see also M.S. v. Brown*, 902 F.3d

---

[2] Plaintiff has previously attempted to distinguish these cases by observing that they involved courts remanding Prop 65 actions to state court because the plaintiffs lacked Article III standing.  *See* Opp. to Mot. to Dismiss FAC at 7, ECF No. 56.  But the different posture (motion to remand versus motion to dismiss) is irrelevant to the Article III analysis at issue in this case.

1076, 1083 (9th Cir. 2018) ("[T]here is no redressability if a federal court lacks the power to issue such relief.").  Indeed, this Court has already appeared sympathetic to this argument.  *See* Ex. 2 at 18:21–25 (counsel observing that the Court appeared to be "persuaded that civil penalties aren't available to redress the injury [Plaintiff is] bringing in this case").[3]

### 3. Plaintiff Does Not Have Standing to Seek Injunctive Relief Under Either Prop 65 or the UCL.

Plaintiff also lacks standing to seek injunctive relief under either Prop 65 or the UCL.  To have standing to seek "injunctive relief, which is a prospective remedy, the threat of injury must be actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quotation omitted).  In *Davidson*, the Ninth Circuit concluded that a false advertising plaintiff may have standing to seek injunctive relief where she has plausibly alleged "that she still intended to purchase the product again in the future despite the allegedly fraudulent advertising." *White v. BP Prods. N. Am., Inc.*, 2024 WL 5247959, at *3 (C.D. Cal. Dec. 26, 2024) (discussing *Davidson*).  As this Court has observed, *Davidson* articulated two paths for how a false advertising plaintiff may have standing to seek injunctive relief, both of which require a plausible allegation the plaintiff desires to buy the falsely labeled product in the future.  *Felice v. Guardian Techs. LLC*, 2024 WL 1486140, at *4 (N.D. Cal. Apr. 4, 2024) (Chesney, J.) (explaining that under *Davidson*, a previously deceived consumer may have standing to seek an injunction if the plaintiff "plausibly alleges he/she would want to purchase the product, but that he/she is unable to rely on the labels and so will refrain from purchasing a product he/she wants, or plausibly alleges that he/she would purchase a product in the future, despite the fact it was once marred by false advertising or labeling, as he/she may reasonably, but incorrectly, assume the product was improved" (cleaned up)).  In accord, "courts in this [Ninth] Circuit have repeatedly held that absent a clearly stated intention to purchase a product in the future, a plaintiff does not have standing to seek

---

[3] If the Court were to conclude that Plaintiff does have Article III standing to assert a Prop 65 claim, that standing should extend only to the two products she actually purchased—Metamucil Made With Real Sugar and Metamucil on-the-go!—and not the other varieties challenged in the SAC.  Plaintiff does not sufficiently allege, for example, that the products she purchased are "substantially similar" to the products she did not such that she could challenge the latter. *See infra* at 14–15.

1  injunctive relief for false advertising." *White*, 2024 WL 5247959, at *3 (collecting cases); *see also In re*

2  *Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31,

3  2021) ("Without any stated desire to purchase Coke in the future, [the plaintiffs] do not have standing to

4  pursue injunctive relief.").

5      Here, Plaintiff alleges that she has a right "to a marketplace free from deception, where she may

6  rely on product labels with confidence," this alleged "right continues to be violated each time she is

7  exposed to Metamucil Product labels, which omit the clear and reasonable warnings required by Prop 65,"

8  she is "deprived of the information to which she is legally entitled and remains at risk of unwitting

9  exposure" if P&G is not ordered to add a Prop 65 warning label to the Products, and such an injunction

10  "would redress that ongoing informational and economic injury by ensuring Plaintiff and similarly situated

11  consumers can make informed choices going forward." SAC ¶ 32.  But this allegation omits a key piece:

12  *Plaintiff does not allege that she desires to buy the Metamucil products again in the future*.  Because

13  Plaintiff does not have a "stated desire to purchase [Metamucil Products] in the future," there is no risk of

14  future harm and she "do[es] not have standing to pursue injunctive relief." *In re Coca-Cola Prods.*, 2021

15  WL 3878654, at *2; *see also Pons v. Walter Kidde Portable Equip. Inc.*, 2023 WL 8813526, at *3 (N.D.

16  Cal. Dec. 20, 2023) (Chesney, J.) (dismissing claim for injunctive relief where plaintiffs alleged "they

17  cannot make informed purchasing decisions" absent an injunction but "do not, however, allege they wish

18  to purchase [the challenged devices] in the future").[4]

19      **B.    Plaintiff Cannot Use the UCL to Make an End Run Around the Limited Remedies**
           **Available Under Prop 65.**

20      Based on previous hearings, Plaintiff may contemplate this Court letting her proceed with a Prop

21  65 claim for injunctive relief but not civil penalties, which would serve as the predicate violation for a

22  UCL claim seeking both injunctive relief and four years of restitution.  Even if Plaintiff had standing to

23  assert such claims—and she does not—this configuration would be untenable, as it would transform Prop

24

25  _____

26  [4] At a prior hearing, this Court noted that in *Davidson*—a case involving flushable wipes—the plaintiff
   had standing because "the only way you are going to be able to tell if that wipe is flushable is put it in the
27  toilet and flush the toilet. And then you either had a flood or you didn't." Ex. 2 at 12:6–10.  Implicit in
   that description is that the plaintiff plausibly alleged they intended to purchase the wipes again in the
28  future.  No similar allegation is made here.

65 from a statute intended by the California legislature to serve the public interest into a mechanism for substantial private recovery.

As discussed above, "Proposition 65 is a remedial statute intended to protect the public." *DiPirro v. Bondo Corp.*, 153 Cal. App. 4th 150, 180 (2007) (cleaned up). As the *DiPirro* court explained, the "statutory damages available under the Act in the nature of civil penalties do not grow out of a claim for moneys due and owing or for personal harm or property damages." *Id.* at 182–83. Civil penalties are "designed to deter misconduct and harm, not to compensate the plaintiff for actual damages sustained." *Id.* at 183. If successful in bootstrapping a UCL claim for individual restitution onto her Prop 65 claim, however, Plaintiff would turn Prop 65 into a vehicle for individualized recovery of lost money. This would run afoul of the entire spirit and purpose of Prop 65.

Plaintiff's efforts violate the "general rule" in California that "where a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive." *Rojo v. Kliger*, 52 Cal.3d 65, 79 (1990). Prop 65 provides two remedies—injunctive relief and civil penalties—and not restitution. By seeking restitution through a UCL claim that is exclusively based on Prop 65 violations, Plaintiff is claiming a remedy outside Prop 65's statutorily defined boundaries. It would be inequitable to allow Plaintiff and the putative class to seek four years of restitution for personal injuries based solely on the alleged violation of a statute that does not recognize personal injuries at all, much less provide for individualized damages. The "exclusive remedy" rule does not permit this result.

### C. Plaintiff Has Not Plausibly Alleged Her Metamucil Products Contained Lead Levels Above the Prop 65 MADL.

Plaintiff does not allege sufficient facts making it plausible that, based on the testing attached to the SAC, the Products she purchased contained lead levels in excess of the Prop 65 MADL.[5] Critically, the SAC still does not allege when and from where the tested samples were obtained. This makes it impossible to draw a plausible connection from the tested samples and the products that Plaintiff

---

[5] Notably, for one product (Metamucil Fiber + Collagen Peptides Orange Flavored), Plaintiff's testing shows that there is only 0.34 micrograms of lead per serving—0.16 micrograms *below* the MADL at which a Prop 65 warning is required.

supposedly purchased.  *See, e.g.*, *Hicks v. L'Oreal U.S.A., Inc.*, 2024 WL 4252498, at *10 (S.D.N.Y. Sept. 19, 2024) (plaintiff must allege a "meaningful link exists between the results of testing and a plaintiff's actual purchases to allow the plausible inference of the presence of unlabeled contaminants," including "most significant[ly]" "temporal proximity" between testing and the plaintiff's purchases).

Here, Plaintiff alleges that she purchased two Metamucil products (Metamucil Made With Real Sugar and Metamucil On-the-Go!) in San Bruno, California "starting in approximately late 2017 or early 2018, with her last purchase in early 2022."  SAC ¶ 21.  But the AGQ testing on which the SAC relies occurred almost a year later, in June–July 2023.  Plaintiff alleges no facts that would permit this Court to plausibly infer those tests of Metamucil products acquired from unknown locations are representative of the products she bought anywhere from one to six years prior.

This case is distinguishable from the Ninth Circuit's decision in *Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094 (9th Cir. 2025), which the Court raised at a prior hearing.  The disputed issue in *Scheibe* concerned federal preemption.  Even though the plaintiff's testing of defendant's supplement product had not followed the FDA's required sampling process, the Ninth Circuit held that plaintiff did not need to follow this FDA-mandated sampling process to raise a plausible inference that the supplement was misbranded.  *See id.* at 1100.  The Ninth Circuit did not address the issue raised here: Plaintiff's failure to allege facts that would permit this Court to draw a plausible connection between her test results and her own purchases of the products years prior.

### D.    Plaintiff's Tethered UCL Claim Also Fails.

For multiple independent reasons, Plaintiff's claim under the UCL also fails.

#### 1.    Plaintiff's UCL Claim Fails Along with the Prop 65 Claim to Which It Is Tethered.

Plaintiff's UCL claim is entirely predicated on her untenable claim under Prop 65 and should be dismissed.

*First*, Plaintiff alleges that P&G's conduct was "unlawful" under the UCL because P&G allegedly violated Prop 65.  *See* SAC ¶¶ 46–49.  Because Plaintiff's "unlawful" claim is tethered to a violation of Prop 65, and her claim under Prop 65 fails for the multiple reasons discussed above, the unlawful claim should be dismissed.  *See, e.g.*, *Manchester v. Sivantos GmbH*, 2019 WL 3531419, at *6 (C.D. Cal. Aug.

2, 2019) ("If a plaintiff cannot state a claim under the predicate law, [the UCL] claim also fails." (quotation omitted)); *In re Apple Processor Litig.*, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022) (dismissing unlawful UCL claim that was predicated on same allegations as other failed claims).

*Second*, Plaintiff also fails to state a claim under the UCL's "unfair" prong. While the SAC formulaically recites different standards for "unfairness," they are all based on "P&G's conduct with respect to the labeling, advertising, and sale of the Metamucil Products without the requisite warning under Proposition 65." *See* SAC ¶¶ 50–53. As such, Plaintiff's claim under the "unfair" prong must fail along with the Prop 65 claim on which it is based. *See, e.g.*, *Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 911 (N.D. Cal. 2016) ("Because the conduct the caddies assert is unfair under the UCL overlaps completely with the allegations the Court has held fails to state a claim for breach of contract, misappropriation of likeness, and antitrust violations, the caddies' UCL claim fails as a matter of law too."), *aff'd in relevant part, vacated in part*, 897 F.3d 1109 (9th Cir. 2018); *Prime Surgical Affiliates Inc. v. Aetna Health California, Inc.*, 2024 WL 1824993, at *12 (C.D. Cal. Mar. 4, 2024) ("Because Plaintiff's fourth cause of action for violation of California's UCL is entirely derivative of the other claims that are insufficiently pled in the SAC, the fourth claim must be dismissed too.").

### 2. Plaintiff Does Not Have Standing Under the UCL to Challenge Products She Did Not Purchase.

As discussed above, Plaintiff purchased only two of the products she is challenging in this case: Metamucil Made With Real Sugar and Metamucil On-the-Go!. SAC ¶ 21. Plaintiff lacks statutory standing to assert UCL claims premised on products that she did not purchase and that could not have deceived or injured her.

To assert claims under the UCL, Plaintiff must allege that she has "lost money or property as a result of" the challenged representations or omissions. *Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074, 1080–81 (N.D. Cal. 2022) (quotation omitted). Moreover, the UCL requires "actual reliance." *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 765 (C.D. Cal. 2022) (citation omitted). To establish actual reliance, a plaintiff must allege that "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Id.* (quotation omitted). Thus, her UCL claim requires Plaintiff to allege that she relied on the lack of a Prop 65 warning

to her detriment.  She cannot do so as to products she never purchased.  *See, e.g.*, *Gamez v. Summit Naturals, Inc.*, 2022 WL 17886027, at \*6–7 (C.D. Cal. Oct. 24, 2022) (dismissing UCL claims for lack of statutory standing as to unpurchased products); *Zakikhani v. Hyundai Motor Co.*, 2022 WL 1740034, at \*4 (C.D. Cal. Jan. 25, 2022) (similar); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at \*11 (N.D. Cal. Sept. 19, 2013) (dismissing UCL claims in part because plaintiffs could not show reliance for unpurchased products).[6]  Plaintiff's UCL claims based on the lack of a Prop 65 warning on products she did not purchase should accordingly be dismissed.

Plaintiff has previously argued that that she has standing to assert claims for putative class members who purchased "substantially similar" products to those she purchased.  *See* Opp. to Mot. to Dismiss FAC at 11–12.  But like her prior complaints, the SAC does not contain any factual allegations establishing how the Products she purchased are substantially similar to those she did not but is nonetheless challenging.  Nor can she, given the material differences among the Products, including in their ingredients, serving size, labeling, and the amount of lead they supposedly contain.  Plaintiff's allegations are therefore unlike those in other cases where the purchased and unpurchased products "are alleged to be, in all material respects, essentially the same."  *Felice*, 2024 WL 1486140, at \*5; *see also Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at \*8 (N.D. Cal. Mar. 13, 2014) (analyzing the extent to which the purchased and unpurchased products were alleged to be "substantially similar," and ruling that, "where the actual composition or appearance of the product is legally significant to the claim at issue, the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance").  Where, as here, a plaintiff fails to allege that unpurchased products are

---

[6] *See also Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 905 n.1, 906, 909 (C.D. Cal. 2021) (holding that plaintiff had standing to bring claims regarding Kroger's "Medium Roast Supreme Blend Ground Coffee 29 oz. (Supreme Blend)"—which she purchased—but not the seven other Kroger ground coffee products named in the complaint that she did not purchase); *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at \*5 n.5 (C.D. Cal. May 18, 2012) ("Plaintiff cannot expand the scope of his claims to include a product he did not purchase, such as the B–Energy Strawberry Apricot Lifewater, because Article III and the statutory standing requirements of the UCL and CLRA are narrowly prescribed and do not permit such generalized allegations." (cleaned up)); *Mlejnecky v. Olympus Imaging Am. Inc.*, 2011 WL 1497096, at \*4 (E.D. Cal. Apr. 19, 2011) (dismissing UCL claim for lack of statutory standing because plaintiff was not economically injured by allegedly unfair business practices regarding a style of camera she did not purchase).

substantially similar to the products plaintiff purchased, courts dismiss claims regarding those unpurchased products. *See, e.g.*, *Kane*, 2013 WL 5289253, at *11 (plaintiffs "failed to adequately allege substantial similarity" because "[a]lthough the alleged misrepresentations appear to be similar across all Defendant's products . . . Plaintiffs do not allege facts sufficient to show that the products Plaintiffs did not purchase are 'substantially similar' to those that they did"); *Bruton v. Gerber Prods. Co.*, 2014 WL 172111, at *1, *8 (N.D. Cal. Jan. 15, 2014) (allegation that challenged products "make similar label misrepresentations and violate the same" labeling laws "failed to explain how these categories of products are substantially similar in kind to the Purchased Products").

Nor should this Court defer ruling on this issue until class certification. The "majority of the courts that have carefully analyzed the question" determine standing at the pleading stage rather than "reserve the issue until a motion for class certification." *Brown v. Nature's Path Foods, Inc.*, 2023 WL 2699978, at *4 (N.D. Cal. Mar. 29, 2023) (quotation omitted). This is because "[s]tanding is meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate." *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015).

### 3. Plaintiff Cannot Seek Equitable Relief Under the UCL Because She Has an Adequate Remedy at Law.

Plaintiff seeks restitution under the UCL of the money she paid for Metamucil on account of P&G's alleged deception. *See* SAC ¶¶ 57–58. The Ninth Circuit has held unequivocally that a plaintiff seeking such equitable relief must first "establish that she lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Plaintiff cannot do so, as the civil penalties she seeks under Prop 65 are an adequate legal remedy.[7]

Plaintiff does not appear to dispute that the civil penalties she seeks under Prop 65 are a legal remedy; nor could she argue otherwise, as the Supreme Court has recently confirmed that civil penalties of the type available under Prop 65 are legal, not equitable remedies. *See SEC v. Jarkesy*, 603 U.S. 109, 123–25 (2024). Rather, she alleges that her "legal remedies are inadequate" because "Prop 65 provides

---

[7] To be clear, Plaintiff lacks Article III standing to assert *any* Prop 65 claim and to seek civil penalties under that statute. *See supra* § IV.A. The argument in this section is presented in the alternative, in the event this Court disagrees and finds Plaintiff can seek civil penalties.

no monetary damages remedy" and instead "authorizes only injunctive relief and civil penalties, which are payable to the State of California, and do not compensate or restore money to consumers." SAC ¶ 58. As explained above, however, while Prop 65 civil penalties redound to the State of California, *see supra* at 2, 7–9, private plaintiffs who bring successful Prop 65 enforcement actions receive 25 percent of the civil penalties collected by the state, *see* Cal. Health & Safety Code § 25249.12(d). That amount she can earn via this bounty may not be exactly the same as what she could receive via restitution is of no moment, because "an alleged difference in the amounts Plaintiff may seek in [civil penalties] and restitution does not make" the legal remedy inadequate. *Nguyen v. Lovesac Co.*, 2025 WL 950511, at *7 (E.D. Cal. Mar. 28, 2025) (rejecting similar argument) (citing *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907–08 (N.D. Cal. 2021)); *see also McCracken v. KSF Acquisition Corp.*, 2023 WL 5667869, at *8 (C.D. Cal. Apr. 4, 2023) (dismissing equitable restitution claim and noting that "an adequate legal remedy need not be an identical legal remedy" (quotation omitted)). Indeed, it is likely that her share of a civil penalty in this case would be *more than adequate* to remedy her harms in that she could receive more than she ever paid for Metamucil.[8]

If Prop 65's civil penalties are available to Plaintiff, then that remedy is adequate, and her claim for equitable relief under the UCL must be dismissed. *See Chiulli v. Am. Honda Motor Co.*, 690 F. Supp. 3d 1038, 1062 (N.D. Cal. 2023) (Chesney, J.) (granting motion to dismiss equitable claim under *Sonner*); *Nacarino*, 642 F. Supp. 3d at 1082–83 (Chesney, J.) (same); *Gomez v. Elite Labor Servs. Weeklys, Ltd.*, 2023 WL 2214172, at *8 (N.D. Cal. Feb. 24, 2023) (Chesney, J.) (similar under *Sonner*).

## V.    CONCLUSION

For the reasons stated, the entire SAC—which fails to correct the prior defects identified by P&G and the Court—should be dismissed with prejudice. *See Mir*, 646 F.2d at 347 ("[A] district court has broad discretion to grant or deny leave to amend, particularly where the court has already given a plaintiff

---

[8] At this stage, Plaintiff cannot rely on injuries to others in arguing that certain remedies are inadequate as to *her* harms. Before certification, putative class members are not parties to the litigation, *see Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011), and any claims those unnamed individuals may have as to restitution are not before this Court, *see, e.g.*, *Penikila v. Sergeant's Pet Care Prods., LLC*, 442 F. Supp. 3d 1212, 1213 (N.D. Cal. 2020) (claims of putative class members are not before court at motion to dismiss stage).

one or more opportunities to amend his complaint to allege federal claims."); *In re Immersion Corp. Sec. Litig.*, 2011 WL 6303389, at *11 (N.D. Cal. Dec. 16, 2011) (Chesney, J.) (dismissing with prejudice where plaintiff failed to cure prior deficiencies and state a claim with an amended complaint).

Dated: September 30, 2025          Respectfully submitted,

         */s/ Cortlin H. Lannin*

         Cortlin H. Lannin (SBN 266488)
         COVINGTON & BURLING LLP
         Salesforce Tower
         415 Mission Street, Suite 5400
         San Francisco, California 94105
         Telephone: (415) 591-6000
         Facsimile: (415) 955-6558
         Email: clannin@cov.com

         Megan L. Rodgers (SBN 310344)
         COVINGTON & BURLING LLP
         3000 Camino El Real
         5 Palo Alto Square, 10th Floor
         Palo Alto, California 94306
         Telephone: (650) 632-4734
         Facsimile: (650) 632-4800
         Email: mrodgers@cov.com

         *Attorneys for Defendant*
         *The Procter & Gamble Company*